LISA A. RASMUSSEN, ESQ.
Nevada Bar No. 007491
LAW OFFICE OF LISA RASMUSSEN, ESQ.
616 South 8th Street
Las Vegas, NV 89101
Telephone:  (702) 471-6565
Facsimile:  (702) 471-6540
Lisa@LRasmussenLaw.com

WILLIAM A. BREWER III, ESQ.
Texas State Bar No. 02967035
*Pro Hac Vice to be filed*
MICHAEL J. COLLINS, ESQ.
Texas State Bar No. 00785495
*Pro Hac Vice to be filed*
ROBERT M. MILLIMET, ESQ.
Texas State Bar No. 24025538
*Pro Hac Vice to be filed*
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, Texas  75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015
Email:  wab@bickelbrewer.com
         mjc@bickelbrewer.com
         rrm@bickelbrewer.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### District of Nevada

| | |
|---|---|
| LEONARD C. ADAMS, et al., | ) Case No. 3:11-cv-00210-RCJ-VPC |
| | ) |
| Plaintiffs, | ) **SECOND AMENDED COMPLAINT AND** |
| | ) **JURY DEMAND** |
| v. | ) |
| | ) (Adds and Deletes Plaintiffs only) |
| SILAR ADVISORS, LP, et al., | ) |
| | ) |
| Defendants. | ) |

Plaintiffs, on personal information as to their own actions and on information and belief as to all other matters, for themselves and on behalf of those similarly situated, hereby aver and seek relief against Defendants as set forth below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## PRELIMINARY STATEMENT

This is the follow-on lawsuit by at least 1,188 fractional beneficial interest holders ("direct lenders"), as well as other similarly situated direct lenders represented by Bickel & Brewer, to the action pending before the Honorable Robert C. Jones (the "District Court") that is styled *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.*, Case No. 2:07-cv-00892-RCJ-GWF ("892 Case").  This action is also "related to" the chapter 7 cases of debtors Asset Resolution LLC ("Asset Resolution") and fourteen related special purpose entities (collectively with Asset Resolution, "Debtors") pending before the District Court in the action styled *In re Asset Resolution LLC, et al.*, Case No. BK-S-09-32824-RCJ (the "Bankruptcy Cases").  Plaintiffs are direct lenders in commercial mortgage investment loans (the "Loans") originated and originally serviced by USA Commercial Mortgage Company (collectively, "USACM").  The direct lenders financed the Loans. Defendants were (or are associated with) successors in interest to USACM's loan servicing rights in connection with the Loans.

The plight of the direct lenders is well-known to the District Court.  Beginning first with USACM's filing for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the Honorable Linda B. Riegle) after it was no longer able to perpetuate its fraudulent activities and conceal from the direct lenders that the Loans were in default, and then continuing with the perpetuation and exacerbation of the harm caused by USACM to the direct lenders by Defendants, Plaintiffs have been repeatedly victimized by the avarice of their purported loan servicing professionals and their co-conspirators.  Indeed, many direct lenders are retirees who have lost their life savings as a result of Defendants' loan servicing.  Accordingly, by this action, Plaintiffs seek to recover their extensive financial losses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.

## THE PARTIES

**A.**    **Plaintiffs**

1.    Exhibit A attached hereto lists the named Plaintiffs, all of whom are direct lenders that invested in the Loans.  Plaintiffs reside in numerous states.  Plaintiffs are largely elderly who invested substantial life savings in the Loans.

**B.**    **Defendants**

2.    Defendant Silar Advisors, LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York. Silar wholly owns Asset Resolution.

3.    Defendant Compass Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

4.    Defendant Compass USA SPE, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

5.    Defendant Compass Financial Partners, LLC is a limited liability company that was organized under the laws of the State of Nevada and that had its principal place of business in the State of Nevada.

6.    Defendant Compass Financial Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

7.    Defendant Compass FP Corp. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

8.      Defendant Compass USA Holding, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

9.      Defendant Compass USA, LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

10.     Defendant Compass USA GP, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

11.     Defendants Compass Partners, LLC, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada and Delaware), Compass FP Corp., Compass USA Holding, LLC, Compass USA, LP, and Compass USA GP, LLC are collectively referred to herein as "Compass."

12.     Defendant Leonard Mezei ("Mezei") is a resident of the State of New York and is a principal of Compass.

13.     Defendant David Blatt ("Blatt") is a resident of the State of New York and was a principal of Compass.

14.     Defendant Boris Piskun ("Piskun") is a resident of the State of California and was a principal of Compass.

15.     Defendant Jay Cohen ("Cohen") is a resident of the State of New York and is a principal of Compass.

16.     Defendant Ron Friedman ("Friedman") is a resident of the State of New York and is a principal of Compass.

17.     Defendant Silar Special Opportunities Fund, LP is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

18.     Defendant SMOF A, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York. SMOF A, LLC funded Asset Resolution's operations.

19.     Defendant SSOP, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

20.     Defendants Silar Advisors, LP, Silar Special Opportunities Fund, LP, SMOF A, LLC, and SSOP II, LLC are collectively referred to herein as "Silar."

21.     Defendant Robert Leeds ("Leeds") is a resident of the State of New York, is a principal of Silar, and was a pre-petition principal of Asset Resolution.

22.     Defendant Jay Gracin ("Gracin") is a resident of the State of New York, is a principal of Silar, and was a pre-petition principal of Asset Resolution.

23.     Defendant Hin-King Tai ("Tai") is a resident of the State of New York and is a principal of Silar.

24.     Defendant Cade Liu ("Liu") is a resident of the State of New York.  Liu was a former employee of Compass and later became an employee of Silar.

25.     Defendant Gary Fragin ("Fragin") is a resident of the State of New York.  Fragin was a founder and principal of Silar.

26.     Defendant Mark Olson ("Olson") is a resident of the State of Nevada.  Olson was the Chief Operating Officer and Director of Marketing for USACM, and later became the Director of Investor Relations for Compass.

27.     Defendant Windemere Capital, LLC ("Windemere") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in the State of Nevada.

28.     Defendant Oakbridge Capital Inc. ("Oakbridge") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Delaware.  Mezei is a principal of Oakbridge.

29.     Defendant Economic Growth Group, Inc. ("EGG") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York.  Mezei is the principal of EGG.

30.     Defendant Repotex, Inc. ("Repotex") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York. Mezei is a principal of Repotex.

31.     Defendant Servicing Oversight Solutions, LLC ("SOS") is a limited liability company that was organized under the laws of the State of Connecticut and that had its principal place of business in the State of Connecticut.

32.     Defendant Michael D. Reiner ("Reiner") is a resident of the State of Connecticut and was a principal of SOS.

33.     Defendant Tyson Lomazow ("Lomazow") is a resident of the State of New York. Lomazow served as legal counsel to Compass in connection with the Loans from 2007-2008.

34.     Defendant Great White NV, Inc. ("Great White") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in the State of Nevada.

35.     Defendant Craig Orrock ("Orrock") is a resident of the State of Nevada and is a principal of Great White.

36.     Defendant Citron Investment Group, Inc. ("Citron") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.  Citron was a Florida subservicer for Compass.

37.     Defendant Michael Citron is a resident of the State of Florida and is a principal of Citron.

38.     Defendant Danielle Citron is a resident of the State of Florida and is a principal of Citron.

39.     Michael and Danielle Citron are collectively referred to herein as the "Citron Defendants."

## III.

## JURISDICTION AND VENUE

40.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1334, and 1367.

41.     Venue for this case in this district is proper pursuant to 28 U.S.C. § 1409.

## IV.

## FACTUAL ALLEGATIONS

**A.     Prior Proceedings:   The USACM Bankruptcy, The 892 Case, And The Bankruptcy Cases**

42.     On April 13, 2006, USACM filed for relief under chapter 11 of the Bankruptcy Code.

43.     USACM, which was a licensed mortgage broker under Chapter 645B of the Nevada Revised Statutes, originated and originally serviced the Loans.

44.     Plaintiffs are direct lenders in the Loans.

45.     The Loans were made by USACM on behalf of the direct lenders to third-party borrowers and secured by real property interests.  The Loans are each evidenced by a "Promissory Note Secured By a Deed of Trust" or a "Promissory Note Secured By a Mortgage," which were executed by third-party borrowers in favor of the direct lenders in each of the Loans.  USACM was not a party to the Loans, including the Promissory Notes.  Nevada law expressly governs the Loans.

46.     USACM serviced the Loans pursuant to various Loan Servicing Agreements (the "LSAs") that it entered into separately with each of the direct lenders.  Every direct lender was supposed to execute a single LSA that purported to cover every investment he or she subsequently made with USACM.  Nevada law expressly governed the LSAs, which were binding on all successors in interest.

47.     Pursuant to an auction held on December 6, 2007, and effective February 16, 2007, Compass acquired as the successful auction bidder:  (i) USACM's loan servicing rights in connection with the Loans pursuant to the LSAs; and (ii) certain fractional beneficial interests held by an affiliate of USACM in the Loans (collectively, the "Purchased Assets").  Compass's acquisition of the Purchased Assets was approved by Judge Riegle in a "Confirmation Order" entered on January 8, 2007, which was later affirmed on appeal by the District Court (Judge Jones and the Honorable Philip M. Pro).

48.     On May 21, 2007, as a result of Compass's extensive loan servicing misconduct to the financial detriment of the direct lenders, the 892 Case was commenced.  The 892 Case sought declaratory relief regarding (i) the ability of the direct lenders to terminate Compass (and later Asset Resolution) as their loan servicer under the LSAs and (ii) the loan servicing compensation allegedly owed to their loan servicer under the LSAs and the Loans, as well as damages.

49.     On August 29, 2007, the District Court affirmed the Confirmation Order.  In doing so, the District Court determined, among other things, that the ability of the direct lenders to terminate their loan servicer under the LSAs, as well as the right of the loan servicer under the LSAs to receive default interest and late fees as loan servicing compensation, were matters of contract interpretation, not plan confirmation, and thus the Confirmation Order did not purport to interpret the LSAs to define Compass's contractual rights under the LSAs.  In other words, Compass acquired the LSAs without modification of their terms.

50.     On November 6, 2007, the District Court entered a Preliminary Injunction in the 892 Case that protected Compass from being terminated as the loan servicer under the LSAs, but enabled 51% or more of the direct lenders in each of the Loans to move for termination of their loan servicer. The Preliminary Injunction also required Compass to hold in trust for the direct lenders, and not disburse without "further order of this Court," certain disputed funds (the "Trust Funds").

51.     For much of 2008, a District Court-approved standstill existed in the 892 Case while the parties engaged in a District Court-ordered mediation process and the District Court-appointed receiver analyzed the parties' claims and sought the parties' approval of a proposed class action settlement.  Those settlement efforts were ultimately unsuccessful and the litigation of the 892 Case proceeded anew beginning in January 2009.

52.     In February 2009, when Silar and Asset Resolution sought the approval of the District Court in the 892 Case to move the Trust Funds from one account into loan specific sub-accounts for greater transparency to the direct lenders, they represented that they "understand and acknowledge that funds will not be distributed from these accounts without further order of the Court."

53.     In April 2009, pursuant to Silar's motion, the District Court in the 892 Case acknowledged, but did not approve, the substitution of Asset Resolution for Compass as the loan servicer under the LSAs, but added Silar and Asset Resolution as parties to the Preliminary Injunction over which it had in personam jurisdiction and for whose protection the Preliminary Injunction extended.  The Court added Silar to the Preliminary Injunction because it was concerned that Asset Resolution was "just a shell" being interposed to protect Silar from liability, and to make clear that the termination of the loan servicing rights under the LSAs would also eliminate any interest that Silar had in those rights.

54.     On July 6, 2009, the District Court made summary judgment rulings from the bench in the 892 Case that were adverse to the loan servicer under the LSAs.  Those summary judgment rulings were later memorialized in written orders issued on September 18, 2009, and August 4, 2010.

Specifically, the District Court ruled that, pursuant to the compensation provisions of the LSAs, the loan servicer was not entitled to collect default interest and late charges as servicing compensation in connection with the Loans if the amount ultimately collected was less than the full principal amount of the Loans.  The District Court also ruled that the loan servicer under the LSAs was not entitled to collect default interest and late charges as servicing compensation directly from the direct lenders. The District Court further ruled that, for each of the Loans, the loan servicer under the LSAs was entitled to receive only one accrued annual servicing fee, to be calculated by multiplying the weighted average of the servicing fee percentages specified in the applicable LSAs for one year by the total amount ultimately collected on the Loans.  Finally, the District Court ruled that the loan servicer under the LSAs was the direct lenders' fiduciary when handling any monies it collected on the Loans.

55.     On August 28, 2009, the District Court in the 892 Case approved the conveyance of title to the collateral securing the "Gess" Loan based on a sale price of $8.5 million, and determined that Asset Resolution was entitled to recover a total of only approximately $1.5 million in servicing fees and advances from those sale proceeds, including only $94,000 as a servicing fee.  Asset Resolution had claimed that under the LSAs it was entitled to retain all those sale proceeds (after paying off a tax lien in the amount of approximately $2 million).

56.     On October 14, 2009, Debtors commenced the Bankruptcy Cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

57.     In its accompanying Statement of Financial Affairs, Asset Resolution disclosed under penalty of perjury that, on September 3, 2009, it disbursed approximately $950,460 of those Trust Funds to itself – without further order of the District Court in the 892 Case.

58.     On November 24, 2009, venue of the Bankruptcy Cases was transferred from New York to the District of Nevada.

59.     At an evidentiary hearing held in the Bankruptcy Cases on December 14, 2009, Tai testified that the principals of Silar are the primary owners of SOS and, therefore, SOS is an "affiliate" of Silar because Silar wholly owns Asset Resolution.

60.     On January 5, 2010, the District Court from the bench immediately withdrew the reference to the entirety of the Bankruptcy Cases, and modified the automatic stay to allow the 892 Case to proceed to a final conclusion.  On January 25 and 28, 2010, the District Court issued written orders in the Bankruptcy Cases withdrawing the reference and modifying the automatic stay, respectively.

61.     On January 19, 2010, the District Court ruled from the bench that it was immediately converting the Bankruptcy Cases.  On January 29, 2010, the District Court entered its nunc pro tunc "Conversion Order," pursuant to which the Bankruptcy Cases were converted to chapter 7 cases under the Bankruptcy Code, and William A. Leonard, Jr. was appointed as bankruptcy trustee.

62.     On January 21, 2010, the District Court entered its "Termination Order" in the 892 Case, pursuant to which it concluded that more than 51% of the direct lenders in 29 outstanding Loans had terminated Compass and Asset Resolution as their loan servicers under the LSAs.  The District Court determined that good cause was not needed to terminate Compass and Asset Resolution as the loan servicers under the LSAs because, pursuant to Nevada's "51% Rule," the direct lenders always retained management control of their Loans by being able to designate a new loan servicer upon the approval of at least 51% of the direct lenders in each of the Loans.

63.     On January 25, 2010, the District Court vacated its Preliminary Injunction entered in the 892 Case.  That order was subsequently stayed pending appeal by the Ninth Circuit Court of Appeals.

64.     On February 8, 2010, the District Court entered in the Bankruptcy Cases its "51% Rule Order" specifying how the direct lenders were to implement the 51% Rule under Nevada law to reclaim management control of their outstanding Loans.  The District Court subsequently approved

the assumption of the servicing of 27 outstanding Loans by new servicing agents approved by at least 51% of the direct lenders, and placed the chapter 7 trustee in nominal control of the handful of other outstanding Loans pending the direct lenders' approval of new servicing agents for those few remaining Loans.

65.     On May 25, 2010, the District Court entered in the Bankruptcy Cases its order imposing sanctions against Silar, Leeds, Gracin, and Debtors' general and special bankruptcy counsel for their roles in connection with the improper filing of the Bankruptcy Cases under chapter 11 of the Bankruptcy Code.  The District Court determined that the filing of the Bankruptcy Cases was undertaken in bad faith to escape its jurisdiction over the LSAs, the Loans, and the parties, and was also frivolous.  The District Court imposed sanctions against those parties, and in favor of the direct lenders, in the total amount of $279,615.47, as well as required Debtors' general and special bankruptcy counsel to disgorge to the bankruptcy trustee their respective $300,000 pre-petition retainers.  The District Court's sanctions order was subsequently stayed pending appeal upon those parties depositing into the registry of the District Court separate supersedeas bonds in the amounts of $349,519.34, $208,614.55, and $349,519.34.

66.     On June 9, 2010, the District Court entered additional summary judgment rulings in the 892 Case.  Among other rulings, the District Court determined that USACM, Compass, and Asset Resolution were required under Nevada law to have, but lacked, valid powers of attorney to service the Loans for the direct lenders.  The District Court also concluded that Silar was the title owner of the Purchased Assets and Compass was its loan servicing agent under the LSAs in connection with the Loans.  As a result, and based on the terms of the predominant "Type 4" LSAs, Silar was liable for the loan servicing misconduct undertaken by Compass within the scope of its agency relationship with Silar.  The District Court further concluded that, pursuant to Silar's assignment of its rights and interests in, and obligations under, the Purchased Assets to Asset Resolution, Silar lacked standing to assert any counterclaims against the direct lenders for their

purported interference with the Purchased Assets.  The District Court also determined that Silar and Asset Resolution could not prevail as a matter of law on their contract and tort counterclaims against the direct lenders based on the 51% Rule, Nevada law recognizing that a party may justifiably exercise and act to protect its rights, and the terms of the LSAs, and because Silar and Asset Resolution could not establish that the direct lenders caused their alleged damages.  Finally, the District Court held that the "Plaintiff LLCs" (which had commenced the 892 Case) had lost their standing to sue because they had forfeited their right to transact business in Nevada.

67.     On June 24, 2010, the District Court enforced the Conversion Order, requiring the chapter 7 trustee to disburse the Trust Funds to the direct lenders (and limited others) because, pursuant to the District Court's summary judgment rulings in the 892 Case, the loan servicer under the LSAs was not entitled to those funds as claimed servicing compensation – *i.e.*, default interest and late charges – because the direct lenders had not been repaid, and those funds were insufficient to repay, the entire principal balance for the particular Loans.

68.     On September 13, 2010, the District Court ruled from the bench in the 892 Case that it would not allow the former individual members of the Plaintiff LLCs to be substituted as named party plaintiffs in the 892 Case pursuant to Federal Rule of Civil Procedure 25(c).  Instead, the District Court indicated that those direct lenders would have to pursue their damages claims in a new lawsuit, necessitating this action.

69.     The 892 Case proceeded to a jury trial on November 16, 2010.  On December 14, 2010, a nine-person jury found Silar and/or Asset Resolution liable for breaches of contract, breaches of the implied covenant of good faith and fair dealing in contract and in tort, breaches of fiduciary duties, conversion, and civil conspiracy in connection with their servicing of certain Loans pursuant to the LSAs.  As a result, and based on the Court's pretrial determination that Compass, Blatt, and Piskun were in default and, thus, liable as a matter of law, the jury awarded Plaintiffs a total of approximately $79,000 in compensatory damages, excluding attorneys' fees, and a total of

$5.1 million in punitive damages.  Defendants are collaterally estopped from contesting the jury's findings of liability in connection with the Loans.

70.     Following the jury's verdict, the District Court indicated its intention to publish a declaratory judgment order discussing the ability of the direct lenders to terminate their loan servicers under the LSAs without good cause pursuant to the 51% Rule, the limited loan servicing compensation to which the loan servicers under the LSAs were entitled, the inability of mortgage brokers and loan servicers (such as Compass, Silar, and Asset Resolution) to place their financial interests in priority to those of the direct lenders, the lack of requisite powers of attorney held by the loan servicers under the LSAs, the inability of Silar and Asset Resolution to pursue damages claims against the direct lenders, and Silar's liability for Compass's loan servicing misconduct.

71.     Based on the jury's findings and the District Court's anticipated declaratory judgment order, the District Court is also expected to award substantial attorneys' fees to the prevailing plaintiffs in the 892 Case pursuant to the terms of the LSAs.

**B.     Defendants' Wrongful Loan Servicing Enterprise**

**1.     Compass and Silar form their wrongful loan servicing enterprise.**

72.     Compass and Silar operated their loan servicing enterprise from their offices, which were both located at 333 7th Avenue, Third Floor, New York, New York 10001.  Silar leased its premises from Mezei, who owned that entire office space.  Repotex and EGG also have their offices at that same address.

73.     Silar funded Compass's acquisition of the Purchased Assets pursuant to a certain Master Repurchase Agreement ("MRA") and various related instruments, resulting in Silar obtaining ownership of the Purchased Assets and Compass servicing the Loans on behalf of the direct lenders as the loan servicing agent of Silar, as the District Court determined as a matter of law in the 892 Case.  The MRA was structured and negotiated by Fragin, who had a long history of business dealings and lending relationships with Mezei.

74.     Silar's initial funding of Compass's acquisition of the Purchased Assets was based on:  (i) a "first tier" financing of $38 million, pursuant to which an $18.5 million investment was made by the Gottex ABL Master Fund, another $18.5 million investment was made by the Gottex ABL Cayman Fund, and Silar Advisors, LP contributed $1 million (all of which accrued 18% interest per annum); (ii) a "second tier" financing of $12.5 million, pursuant to which Silar Special Opportunities Fund, LP funded $10 million as "Class A Preferred," with 27.5% compounded monthly interest, and funded another $2.5 million as "Class B Preferred," with 30% compounded monthly interest; and (iii) a "third tier" financing of $1.8 million by Compass USA Holding, LLC.

75.     Pursuant to a Global Paying Agency Agreement, such initial funding was to be repaid in accordance with that three tier financing, such that the first tier would be repaid first and the third tier would be repaid last.  The repayment of the second and third tiers would be to Silar and Compass in accordance with their limited partnership interests in Compass USA, LP.  Silar Special Opportunities Fund, LP and Compass USA Holding, LLC were the limited partners of Compass USA, LP.  SSOP, LLC succeeded to Silar Special Opportunities Fund, LP's interest in Compass USA, LP in or about September 2008.

76.     After its original funding source dropped out in late January 2007, Compass was desperate to secure funding to complete its acquisition of the Purchased Assets and not lose its non-refundable $6 million good faith deposit.  Thus, Compass agreed to the extreme funding and repayment terms offered by Silar.  That arrangement compelled Compass and Silar to undertake their wrongful loan servicing enterprise to realize any profits from the acquisition of the Purchased Assets.

**2.     Compass was a corporate labyrinth directed and overseen by Mezei.**

77.     Compass engaged in its wrongful loan servicing enterprise through a multitude of separate companies.  Specifically, Compass Partners, LLC assigned the Purchased Assets to Compass USA SPE, LLC, an otherwise asset-less corporate shell, but purported to service the Loans

through its sub-servicers Compass Financial Partners, LLC (both Nevada and Delaware) and Compass FP Corp., whose sole member and shareholder, respectively, are Compass Partners, LLC. In addition, Compass Partners, LLC is the manager of Compass USA GP, LLC, which is the general partner of Compass USA, LP, in which Compass USA Holding, LLC was a limited partner.

78.     Compass was operated on a day-to-day basis by two of its principals, Piskun and Blatt.  Cohen and Friedman were also principals of Compass involved in, and Liu and Olson were substantial participants in, the wrongful loan servicing enterprise operated by Compass.

79.     Mezei, however, was the key principal of Compass.  Mezei is the President of Compass Partners, LLC.  Mezei secured the funding from Silar for Compass's acquisition of the Purchased Assets, and executed a personal guaranty in support of such funding.  Mezei was also involved in, directed, and oversaw all significant loan servicing decisions made by Compass.

**3.     Silar takes control from Compass of the operation and management of the loan servicing enterprise, which is directed and overseen by Leeds.**

80.     In late September 2008, while the 892 Case was pending, Silar formed its wholly-owned subsidiary Asset Resolution, and assigned all its rights and interests in, and obligations under, the Purchased Assets, including all its causes of action in connection with the Purchased Assets, to Asset Resolution.  Asset Resolution then purported to foreclose on Compass's interests in the Purchased Assets and assume all the rights and obligations attendant to owning the Purchased Assets, including all the liabilities resulting from the loan servicing enterprise operated and managed by Compass.  Indeed, Asset Resolution asserted that it was entitled to recover, and pursued (and continues to pursue) the recovery of, all loan servicing compensation owed to, and all servicing advances made by, Compass in connection with the Loans.

81.     Silar formed Asset Resolution merely to be an empty corporate shell in which Silar would hold the Purchased Assets.  The purpose of that corporate shell game was so Silar could obtain the benefit of ownership of the Purchased Assets, while purporting to avoid the liabilities

incurred in connection with the Purchased Assets.  Asset Resolution had no employees, and was operated, administered, and controlled by Silar – primarily Leeds, Gracin, and Tai – until January 19, 2010, when the District Court converted the Bankruptcy Cases, which were filed under chapter 11 of the Bankruptcy Code on October 14, 2009, to cases under chapter 7 of the Bankruptcy Code, resulting in the appointment of a bankruptcy trustee.  Thus, until January 19, 2010, Asset Resolution was a mere instrumentality or alter ego of Silar.

82.    Also in late September 2008, because Asset Resolution was merely an empty corporate shell, Silar formed SOS to act as the day-to-day sub-servicer for Asset Resolution in connection with the Loans.  SOS was operated, administered, and controlled by Silar, including Leeds, Gracin, and Tai.  Reiner was the manager of SOS.  Thus, SOS was a mere instrumentality or alter ego of Silar.  SOS was subsequently dissolved and its assets were disbursed to Leeds, Gracin, and Tai.

83.    As President and CEO of Silar, Leeds was involved in, directed, and oversaw all significant loan servicing decisions made by Silar (and Asset Resolution and SOS) in connection with the loan servicing enterprise.

### 4.    Other professionals conspired with Compass and Silar to perpetuate their loan servicing enterprise.

84.    Compass's and Silar's wrongful loan servicing enterprise was assisted by the legal advice of Lomazow, who rendered erroneous legal opinions that purported to justify their misconduct.

85.    Compass's and Silar's wrongful loan servicing enterprise was assisted by Windemere, which is a Nevada-licensed mortgage broker that Compass and Silar (and Asset Resolution and SOS) used to sub-service the Loans in purported compliance with the District Court's Preliminary Injunction in the 892 Case.

86.     As a result of the wrongful loan servicing enterprise, Oakbridge purchased fractional beneficial interests in various Loans at substantial discounts.

87.     In or about June 2008, Repotex purchased the remaining participation interest held by the Gottex ABL Master Fund in the first tier financing of the Purchased Assets for $8,375,000.  EGG funded Repotex's purchase.  Fragin contributed $800,000 to EGG to fund Repotex's purchase.  Those transactions resulted in the disappearance of Mezei's personal guaranty in connection with the Purchased Assets and the foreclosure by Asset Resolution (Silar) on Compass's interests in the Purchased Assets.

88.     After the formation of Asset Resolution, Silar retained and funded Great White and Orrock to engage in actions that were intended to further the wrongful loan servicing enterprise. Great White and Orrock served as Silar's so-called "settlement liaison" and communicator of misinformation to direct lenders in an effort to induce them into selling their fractional beneficial interests in the Loans to Silar at substantial discounts so Silar could reduce its potential litigation liability and have the ability to interfere with resolutions of the Loans by threatening further litigation.

89.     Great White and Orrock performed, and continue to perform, those functions on behalf of Silar because Silar (through Asset Resolution prior to October 14, 2009) paid/pays them to do so, including $50,000 on September 8, 2009.  Indeed, on August 2, 2010, Orrock posted on his blog that "Great White strengthens its financial base with assistance from Silar . . . [I]t would have been impossible for us to continue our work . . . without the financial assistance that Silar has given to the company . . . in keeping the doors open."  Notably, however, on April 14, 2009, Orrock posted on his blog that "[Direct Lenders] have no choice — [Great White] recommends you join the [Bickel & Brewer] litigation group and see the ending of the movie.  My hope, [sic] is no settlement, jury trial, aggressive representation, no personal liability for litigants on our side of the ledger. . . . [T]his

game is just another round of Monopoly when the Silar side is trying to make all the money at the expense of the other – till their broke."

**5.**     **The wrongful loan servicing enterprise seeks to defraud Plaintiffs.**

    **a.**     **Defendants seek to defraud Plaintiffs with respect to the "Standard Property" Loan.**

90.     On February 27, 2006, the Standard Property borrower executed a Promissory Note Secured by Mortgage in the principal amount of $17,750,000 that provided for an interest rate of 12.5% per annum.  Pursuant to section 4 of the Note, all payments on the Note were to be applied first toward the payment of accrued interest.  As of February 16, 2007, the total remaining principal balance of the Standard Property Loan was $9,640,000.  The Loan was resolved in March 2007.

91.     Specifically, on March 20, 2007, the Standard Property borrower resolved the Loan by paying:  (i) the Standard Property direct lenders 100% of their outstanding principal, but no accrued interest; and (ii) Silar over $870,000 as loan servicing compensation (*i.e.*, default interest, late charges, and other fees) that was purportedly owed to the loan servicer under the LSAs.

92.     The Standard Property borrower made that payment to Silar pursuant to a secret "side deal" that was not disclosed in the letter, dated March 7, 2007, that Compass sent through the United States mail to the Standard Property direct lenders in which they were asked to, and did, consent to the repayment of 100% of the outstanding principal, but no accrued interest, in full satisfaction of the Loan.  The intent of the letter was to avoid paying additional collected sums to the Standard Property direct lenders as accrued regular interest as required by section 4 of the Note.

93.     In fact, on May 18, 2007, Compass sent through the United States mail its first loan status report to the direct lenders.  In that report, Compass discussed the Standard Property Loan as one of its "Loan Payoff Successes," stating in full:  "The Borrower paid 100% of the Unpaid Principal Balance with the consent of 100% of the Direct Lenders, as provided by the Loan Agreement and Loan Servicing Agreement.  This settlement also retired a lawsuit filed against the

Direct Lenders by the Borrower."  Again, Compass did not disclose to the Standard Property direct lenders the existence of the secret side deal that resulted in the Standard Property borrower paying over $870,000 to Silar instead of the Standard Property direct lenders as required by section 4 of the Note.

**b.**  **Defendants seek to defraud Plaintiffs with respect to the "Fiesta Oak Valley" Loan.**

94.    USACM originated the Fiesta Oak Valley Loan in June 2004.  As of February 16, 2007, the unpaid principal balance of the Loan was $20,500,000 and accrued regular interest was approximately $6,600,000.

95.    On March 2, 2007, counsel for Vindrauga Corporation, an affiliate of Debt Acquisition Company of America, sent a letter to Compass purporting to terminate Compass as the loan servicer of the Fiesta Oak Valley Loan pursuant to the "Surviving Section 3 Right" set forth in the Bankruptcy Court's Confirmation Order.  The letter advised Compass that more than 51% of the fractional beneficial interest in the Fiesta Oak Valley Loan had elected to substitute Vindrauga for Compass as the loan servicer for the Loan.

96.    On March 23, 2007, Compass sent through the United States mail a letter to the Fiesta Oak Valley direct lenders in which it stated that a third party wanted to purchase their fractional beneficial interests in the Loan in an amount that was 91% of the unpaid principal balance, which was equivalent to a 68% discount because the offer did not include payment for the entire principal balance or any accrued regular interest.  That third party was Oakbridge.

97.    On March 22, 2007, however, the Fiesta Oak Valley borrower had informed Compass that it intended to pay off the Fiesta Oak Valley Loan in full by July 2007.  In an internal e-mail, Compass recognized that the disclosure of that information to the Fiesta Oak Valley direct lenders would make it more difficult to purchase their fractional beneficial interests in the Fiesta Oak Valley

Loan at a substantial discount.  As a result, Compass schemed to misrepresent the status and value of the Fiesta Oak Valley Loan to the Fiesta Oak Valley direct lenders.

98.     On April 4, 2007, Compass sent through the United States mail a loan status report to the Fiesta Oak Valley direct lenders which misrepresented the status and value of the Fiesta Oak Valley Loan and indicated that expensive foreclosure efforts against the borrower would likely need to be initiated.  Specifically, Compass knew that the Fiesta Oak Valley borrower was intending to pay off the Loan in full and that the value of the collateral securing the Loan exceeded $200,000,000.  Compass, however, failed to disclose that information to the Fiesta Oak Valley direct lenders.

99.     As of March 14, 2007, Compass was not a direct lender in the Fiesta Oak Valley Loan.  However, by early May 2007, Compass, Oakbridge, and Mezei had acquired more than 51% of the fractional beneficial interests in the Fiesta Oak Valley Loan, precluding Vindrauga from exercising the Surviving Section 3 Right to terminate Compass as the loan servicer for the Loan. Compass, Oakbridge, and Mezei acquired that fractional beneficial interest in the Fiesta Oak Valley Loan at a substantial discount as a result of Compass's misrepresentations to the Fiesta Oak Valley direct lenders, to their financial detriment.

100.     Silar funded Compass's acquisition of fractional beneficial interests in the Fiesta Oak Valley Loan.  Silar did so after being notified by Compass of the true status and value of the Fiesta Oak Valley Loan.  Silar thereafter purchased the more than 51% fractional beneficial interest in the Fiesta Oak Valley Loan held by Compass, Oakbridge, and Mezei, and then sold that interest for a substantial profit, to the financial detriment of the Fiesta Oak Valley direct lenders.

c.     **Defendants seek to defraud Plaintiffs with respect to the "Shamrock" Loan.**

101.     On March 23, 2007, Compass sent a misleading letter through the United States mail to the Shamrock direct lenders seeking their approval to accept a "third party" offer to purchase the

Shamrock Loan for 88% of the outstanding principal balance and no accrued interest.  That third party was Oakbridge.  That letter was misleading because Compass knew, but did not disclose, that the buyer was willing to pay 100% of the Shamrock direct lenders' outstanding principal balance and all accrued interest, plus certain other fees.  That letter was also misleading because it did not disclose that the collateral securing the Shamrock Loan was worth millions of dollars more than the unpaid principal balance.  Compass had such knowledge because it had negotiated an agreement with the third party pursuant to which the third party would purchase the Shamrock property in a foreclosure sale for the entire value of the Loan, *i.e.*, for the outstanding principal balance and all due and owing accrued interest, default interest, late fees, and other fees.

102.    When only some Shamrock direct lenders accepted the 88% purchase offer, Compass proceeded to foreclose on the Shamrock property to effectuate the sale to the third party.  Silar aided this scheme by providing funds to Compass to remove a tax lien that would have prevented Compass from initiating foreclosure proceedings and effectuating the foreclosure sale to the third party in full satisfaction of the amounts due and owing in connection with the Shamrock Loan.

103.    On February 15, 2008, Compass sent a letter through the United States mail that requested the consent of the Shamrock direct lenders to sell the Shamrock property for $15,319,235.00, as well as approve a proposed *pari passu* disbursement of the sales proceeds between the Shamrock direct lenders and Compass.  The letter stated that if at least 51% of the direct lenders consented to the sale, Compass would place in escrow the disputed sales proceeds for those direct lenders who did not approve the proposed *pari passu* disbursement of the sales proceeds.

104.    In March 2008, after receipt of the sales proceeds, Compass never provided the Shamrock direct lenders with an accounting of the Shamrock sales proceeds, including who accepted the proposed *pari passu* disbursement, how much money was taken by Compass, or on what basis such funds were taken by Compass.  Instead, Compass wrongfully retained possession of approximately $2.3 million from the sale of the Shamrock property to which it was not entitled.

105.     Pursuant to the Shamrock Promissory Note, all payments on the Shamrock Loan were to be applied first to accrued regular interest, then to unpaid collection costs and late charges, and any remaining amount to outstanding principal.  Moreover, the loan servicer under the LSAs was not entitled to any late charges or default interest unless those sums were "collected from the borrower," rather than, like here, from a third party pursuant to a foreclosure sale.

        **d.**    **Defendants seek to defraud Plaintiffs with respect to the "Anchor B" Loan.**

106.     On May 31, 2005, USACM originated a loan in the amount of $5,850,000 to Anchor B, LP.

107.     On January 14, 2008, Compass foreclosed on the Anchor B property on behalf of the Anchor B direct lenders.

108.     In September 2009, through the use of interstate wires, Asset Resolution, by Reiner and SOS, sought, and purported to obtain, the verbal consent of at least 51% of the Anchor B direct lenders to sell the Anchor B property to a third party buyer for $1.9 million.  Because it purported to have the consent of at least 51% of the Anchor B direct lenders, Asset Resolution sold the Anchor B property for $1.9 million on September 30, 2009.

109.     Asset Resolution, however, lacked the consent of at least 51% of the Anchor B direct lenders to sell the Anchor B property.  Three Anchor B direct lenders – who accounted for 6.43% of that purported 51% verbal authorization to sell the Anchor B Property – actually voted against the sale of the Anchor B property several days prior to September 30, 2009.

110.     After the sale of the Anchor B Property was consummated, Asset Resolution improperly claimed all the net sale proceeds in the amount of $457,526.36 as a purported "base servicing fee," and paid $374,102.43 of those proceeds to its then-litigation counsel Greenberg Traurig LLP for "September and October," even though Greenberg Traurig was not the responsible counsel for the Anchor B property.

e.  **Defendants seek to defraud Plaintiffs with respect to the "Gramercy" Loan.**

111.  On June 25, 2004, USACM originated a loan to Gramercy Court, Ltd. that eventually totaled $34,885,500.   On April 1, 2008, Compass, on behalf of the Gramercy direct lenders, foreclosed on the Gramercy property, which is a 220-unit condominium project that is comprised of two five-story buildings each containing 110 condominium/apartment units.

112.  Following the foreclosure of the Gramercy property, Compass and Silar (through Asset Resolution, SOS, and Windemere) wrongfully allowed tax liens to be asserted in the total amount of approximately $2.6 million, mechanic's liens to be asserted in the total amount of approximately $1.7 million, and liability insurance to lapse.   Compass and Silar (through Asset Resolution, SOS, and Windemere) also overstated the amount of those liens and taxes in written correspondence sent through the United States mail to the Gramercy direct lenders, including a letter sent by Silar (through Asset Resolution, SOS, and Windemere) on December 19, 2008.

113.  Although the Gramercy property generated excess cash flow of between approximately $40,000 - $60,000 per month, only one of the two buildings was being leased.  That is because Compass and Silar (through Asset Resolution, SOS, and Windemere) had erroneously informed the Gramercy direct lenders by interstate wire communications that it would require $5 million to get the second building ready to lease, which was cost prohibitive, and therefore advised that the Gramercy direct lenders should sell the Gramercy property.  Specifically, Piskun made such statements on at least three conference calls with the Gramercy direct lenders, which were conducted on September 27, 2007, January 24, 2008, and January 28, 2008.

114.  In fact, the cost to get the second building ready to lease may have been as little as approximately $700,000, which the Gramercy direct lenders discovered for the first time during the Gramercy transfer of loan servicing/sale proceedings held in July and August 2010.   Thus,

Defendants' actions resulted in the Gramercy direct lenders losing years of substantial rental income that would have been realized from the completion of the second building.

115.    In addition, instead of the cash realized from the Gramercy property being paid to the Gramercy direct lenders as rental income or used to pay the property taxes and the mechanic's liens, Defendants have wrongfully taken, and not accounted for, the cash generated by the Gramercy property to the financial detriment of the Gramercy direct lenders.

f.      **Defendants seek to defraud Plaintiffs with respect to the "Trust Funds."**

116.    The Preliminary Injunction entered in the 892 Case required the loan servicers under the LSAs to escrow, and not disburse except upon further order of the District Court, the Trust Funds.   Silar and Asset Resolution subsequently acknowledged that they were bound by that requirement when they sought and successfully obtained in the 892 Case the District Court's approval to move the Trust Funds from one account into specific sub-accounts for the Loans for greater transparency to the direct lenders.

117.    On September 3, 2009, however, Asset Resolution wrongfully paid itself $950,439.32 from the Trust Funds as purported loan servicing compensation to which it was not entitled.   Asset Resolution did so without further order of the District Court, as required by the Preliminary Injunction entered in the 892 Case.   Asset Resolution did not provide any notice that it took those funds until it disclosed those disbursements in its Statement of Financial Affairs, which was filed in conjunction with the commencement of the Bankruptcy Cases on October 14, 2009.

C.    **Defendants' Additional Loan Servicing Misconduct**

1.      **Defendants generally engaged in extensive loan servicing misconduct.**

118.    As described herein, Defendants engaged in extensive loan servicing misconduct, individually and in concert, to enrich themselves to the financial detriment of the direct lenders. Silar is vicariously liable for the loan servicing misconduct described herein that its servicing agent Compass perpetrated within the scope of its agency relationship with Silar.   Silar is also liable for the

loan servicing misconduct described herein that was undertaken by Asset Resolution and SOS as they were mere instrumentalities or alter egos of Silar.  Compass and Silar are also liable for any loan servicing actions taken or not taken by their sub-servicers.

119.    Defendants purported to act as the direct lenders' loan servicers in connection with the Loans even though they lacked the required powers of attorney to do so.  Given the lack of such authority, Defendants wrongfully took actions and incurred obligations and liabilities on behalf of the direct lenders in connection with the Loans.  Defendants' lack of such authority also precludes Defendants from pursuing claims for recovery of purported loan servicing compensation owed to them pursuant to the LSAs in connection with the Loans.

120.    Defendants failed to act in compliance with their fiduciary duties to the direct lenders when handling funds in connection with the Loans.  Among other things, Defendants wrongfully took and retained funds as purported loan servicing compensation to which they were not entitled, and have not properly accounted for funds received in connection with the Loans.

121.    In addition, Defendants failed to act in accordance with their contractual and statutory obligations to obtain the consent of at least 51% of the direct lenders in the Loans to take actions on their behalf in connection with the Loans.  Among other things, Defendants failed to seek such consent in connection with proposed discounted payoffs made by borrowers, the pursuit of foreclosure proceedings, the modification of the terms of the Loans, the sale of foreclosed-upon collateral securing the Loans, and advances made to borrowers and other third parties related to the Loans.

122.    Defendants failed to act in accordance with their contractual and statutory obligations to disclose all proposed discounted payoffs made by the borrowers to the direct lenders, and to accept all proposed discounted payoffs that more than 51% of the direct lenders instructed Defendants to accept on their behalf.  Defendants failed to disclose and accept such proposed

discounted payoffs because they did not include millions of dollars in default interest, late charges, and other fees to which Defendants wrongfully claimed to be entitled.

123.    Defendants failed to evaluate and resolve the defaulted Loans in a timely manner when the direct lenders were enjoined by the Preliminary Injunction from doing so because Defendants intended for the Loans to accrue additional amounts of default interest and late charges to which Defendants wrongfully claimed to be entitled.  Indeed, although Compass paid $8 million for the loan servicing rights under the LSAs on February 16, 2007, Compass claimed to be entitled to more than $120 million in loan servicing compensation in connection with the Loans in an accounting filed with the District Court on November 15, 2007.  As a result, the value of the collateral securing the Loans depreciated substantially when the economy and the commercial real estate market subsequently experienced a significant downturn, causing Plaintiffs to suffer millions of dollars in damages across the portfolio of outstanding Loans.

### 2.    Defendants engaged in loan servicing misconduct in connection with the "Lerin Hills" Loan.

124.    In December 2005, USACM originated a $10,350,000 loan to Lerin Hills, Ltd. that was secured by a second lien on certain real estate.  USACM and the Lerin Hills borrower subsequently negotiated a settlement payoff pursuant to which the borrower agreed to pay $9,552,824.38, which amounted to 93% of the principal balance on the Loan, and USACM (on behalf of the direct lenders for that Loan) agreed to waive repayment of $797,175.62 in principal, $677,860.24 in unrecovered interest, and $5,120,000.00 in an unrecovered exit fee payable to USACM.  All the Lerin Hills direct lenders approved the settlement payoff, and Judge Riegle approved the settlement payoff by order dated December 12, 2006.  USACM notified Compass of the order approving the settlement payoff.

125.    Notwithstanding Judge Riegle's order authorizing USACM to settle the Lerin Hills Loan, no settlement payment was ever received in connection with that Loan.  Instead, Compass

subsequently refused to accept the Lerin Hills borrower's attempts to make the agreed settlement payment in full satisfaction of its obligations under the Lerin Hills Loan.  Compass demanded that the Lerin Hills borrower make a payoff for all sums due and owing on the Lerin Hills Loan in the total amount of $17,306,947.38, which included late fees, default interest, and the $5.12 million exit fee payable to Compass that USACM had previously agreed to waive.  Compass specifically told the Lerin Hills borrower that it did not care about Judge Riegle's order approving the settlement payoff or if the Lerin Hills project "burned" because Compass did not purchase USACM's loan servicing rights for charity but to make money.  Compass also recognized that the Lerin Hills borrower's failure to acquiesce to its demand to pay an exit fee would result in the Lerin Hills direct lenders losing their money.

126.  When the Lerin Hills borrower refused to accede to Compass' settlement payoff demands, Compass moved to foreclose on the Lerin Hills Loan.  Although Compass subsequently withdrew its notice of foreclosure, the damage had already been done.  Specifically, as Compass was aware, the Lerin Hills Loan was a second lien subordinate to a first lien and an intercreditor agreement with Wachovia Bank.  By initiating foreclosure proceedings while the first lien was still outstanding, Compass triggered Wachovia's right to accelerate its own loan and foreclose on the property.  Wachovia then sold its first lien rights to another party, which pursued its foreclosure rights, eliminating all the direct lenders' equity in the property as second lienholders and resulting in a total loss to the Lerin Hills direct lenders.

**3.**   **Defendants engaged in loan servicing misconduct in connection with the "Bay Pompano" Loan.**

127.  In June 2005, USACM originated a $32 million loan to Bay Pompano Beach, LLC. On April 3, 2007, the Bay Pompano borrower made a written settlement proposal to Compass, stating that it would pay the full remaining principal balance, all outstanding accrued ordinary

interest, and an exit fee in the amount of $320,000, but not default interest or late fees.  Compass, however, did not notify the Bay Pompano direct lenders of that settlement proposal.

128.    By certified letter dated April 13, 2007, a Bay Pompano direct lender, on behalf of at least 51% of the direct lenders in that Loan, requested that Compass accept the borrower's settlement proposal of April 3, 2007.  Compass did not respond to that letter.  Instead, by letter dated April 25, 2007, counsel for Compass wrote the Bay Pompano borrower, advising that the amount then due and owing included (i) the principal balance of $14,682,911.51, (ii) ordinary and default interest totaling $2,621,593.40, (iii) late fees totaling $877,526.24, and (iv) exit fees totaling $320,000.00; and demanding that the borrower immediately assign to Compass all rents, income, and profits generated by the collateralized property.

129.    A loan status report for the Bay Pompano Loan, dated June 8, 2007, indicated that, on May 17, 2007, the Bay Pompano borrower purportedly made a settlement offer of $15,689,122.00, and Compass would be requesting that the Bay Pompano direct lenders accept a discounted payoff resulting in them receiving approximately 90% of the principal balance and waiving accrued interest.  Thus, according to that loan status report, Compass purportedly would propose that the Bay Pompano direct lenders accept the Bay Pompano borrower's settlement offer if Compass could retain more than $2 million in fees and default interest.  Compass, however, never conveyed the borrower's settlement offer to the Bay Pompano direct lenders.  Instead, without the consent of the Bay Pompano direct lenders, Compass chose to foreclose on the Bay Pompano Loan because the Bay Pompano borrower purportedly "was not willing to make a full repayment of the loan which left Compass with no choice but to foreclose."  As a result of Compass's wrongful foreclosure action against the Bay Pompano borrower, the direct lenders were damaged.

1
2

4.      **Defendants engaged in loan servicing misconduct in connection with the "Fox Hills" and "Eagle Meadows" Loans.**

3
4

130.     In October 2005 and January 2006, USACM originated loans to Fox Hills 216, LLC

5

and Eagle Meadows Development, respectively, in the total principal amount of between $57 and

6

$58 million.  The Fox Hills and Eagle Meadows Loans were made in connection with the same real

estate development project in Los Banos, California, and to borrowers having the same principal.

7
8

131.     The total amount of principal and accrued interest due and owing on the Fox Hills

9

and Eagle Meadows Loans was $58 million as of November 2006, and $62.3 million as of March

10

2007.  A lien in the amount of $3.3 million against certain property that was paid by Compass

11

increased the total amount due and owing on the Fox Hills and Eagle Meadows Loans to $65.6

12

million.

13

132.     In late December 2006, the principal of the Fox Hills and Eagle Meadows borrowers

14

met with Compass representatives, including Piskun, regarding the two Loans.  At that meeting,

15
16

Compass stated that it was "now in control of the Loans and that all decisions would be made by

17

them and no one else and therefore [the principal of the Fox Hills and Eagle Meadows borrowers]

18

was to talk solely with them about the resolution of the Loans."  Compass also invited the principal

19

of the Fox Hills and Eagle Meadows borrowers to submit a settlement proposal to pay off the two

20

Loans.

21

133.     Pursuant to Compass' invitation, the principal of the Fox Hills and Eagle Meadows

22

borrowers subsequently made four settlement payoff proposals to Compass.  The final payoff

23

proposal to Compass was for $65 million, which the principal of the Fox Hills and Eagle Meadows

24

borrowers believed to be an amount sufficient to pay off the principal balance and all accrued

25
26

interest on the two Loans.

27

134.     Although the principal of the Fox Hills and Eagle Meadows borrowers repeatedly

28

asked Compass for its calculation of the total amount of principal and accrued interest due and

owing on the two Loans, Compass neither provided him with its breakdown of the total amount due and owing on the Loans, nor responded to any of his four loan settlement payoff proposals.

135.    Instead, on or about March 5, 2007, Compass provided the principal of the Fox Hills and Eagle Meadows borrowers with a settlement payoff proposal for the two Loans in the total amount of more than $70 million.  Despite the request of the principal of the Fox Hills and Eagle Meadows borrowers, Compass never provided him with a breakdown of the $70 million figure, including how much of the proposed settlement payoff comprised default interest and late charges.

136.    Upon learning of the $65 million settlement payoff proposal made by the principal of the Fox Hills and Eagle Meadows borrowers, approximately 75% of the Fox Hills and Eagle Meadows direct lenders sent a written demand to Compass to accept the $65 million settlement payoff proposal.

137.    Notwithstanding that directive by more than 51% of the Fox Hills and Eagle Meadows direct lenders, Compass refused to accept the $65 million settlement payoff proposal because that proposal was purportedly $9 million too low to repay the full principal balance of the Fox Hills and Eagle Meadows Loans.  In other words, Compass refused to accept the settlement payoff proposal because it did not include default interest, late charges, and other fees to which Compass wrongly claimed to be entitled.  Compass acknowledged as much to one of the Fox Hills and Eagle Meadows direct lenders, and also confirmed that it was "unwilling to compromise."

138.    Compass's actions caused substantial damages to the Fox Hills and Eagle Meadows direct lenders.

**5.**      **Defendants engaged in loan servicing misconduct in connection with the "Harbor Georgetown" Loan.**

139.    In August 2004, USACM originated a loan in the amount of $8,800,000 to Harbor Georgetown, L.L.C.

140.     In or about March 2008, the Harbor Georgetown direct lenders instructed Compass to accept on their behalf the Harbor Georgetown borrower's proposed settlement payoff in the amount of $7,750,000 in full satisfaction of the Harbor Georgetown Loan.

141.     Compass wrongfully refused to accept that proposed settlement payoff on behalf of the Harbor Georgetown direct lenders because one direct lender refused to consent to the proposed settlement payoff and Compass maintained that 100% approval was required for it to accept the proposed payoff.

142.     As a result of Compass's failure to accept that proposed settlement payoff, the Harbor Georgetown direct lenders subsequently lost approximately $5.2 million when the Harbor Georgetown Loan was sold on April 9, 2010, to a third party for $2,517,569.17.

**6.     Defendants engaged in loan servicing misconduct in connection with the "Castaic" Loans.**

143.     In September 2004, July 2005, and September 2005, USACM originated three related Loans to Castaic Partners, LLC, Castaic Partners II, LLC, and Castaic Partners III, LLC (collectively, "Castaic") in the total amount (including additional borrowings) of more than $32 million.  The three Castaic Loans were personally guaranteed by William Barkett ("Barkett").

144.     In January 2010, Castaic and Barkett sued the Castaic direct lenders, as well as Compass and Silar, for damages caused by Compass, Silar, and Asset Resolution, as agents for the Castaic direct lenders, in connection with the Castaic Loans (the "Castaic Lawsuit").  Castaic and Barkett also sought a declaration that the Castaic Loans and the Barkett personal guarantees are unenforceable.

145.     As a result of the Castaic Lawsuit, the Castaic direct lenders have had to retain legal counsel to pursue and defend their property rights and interests.

146.     The Castaic direct lenders are entitled to reimbursement and/or indemnification for their legal fees and costs incurred in connection with the Castaic Lawsuit, as well as for any damages

for which they are held liable in the Castaic Lawsuit as a result of any unauthorized actions taken by Compass, Silar, and Asset Resolution.

147.    The Castaic direct lenders are also entitled to damages for any losses resulting from the declaratory relief being sought by Castaic and Barkett in the Castaic Lawsuit.

**7.    Defendants engaged in loan servicing misconduct in connection with the wrongful foreclosure of the four "Suttles Loans."**

148.    Without the authorization of at least 51% of the direct lenders, Compass wrongfully pursued foreclosure proceedings in connection with the four Loans made to entities controlled by Tracy D. Suttles, namely, the Anchor B, Gess, Gramercy, and Shamrock Loans.    Compass wrongfully pursued those unauthorized foreclosure actions so it could obtain title to, and realize a substantial return from a pre-arranged sale to a third party of, the valuable Shamrock property.

149.    As a result of those unauthorized foreclosure actions, the Suttles Loans direct lenders were required to pay $1.1 million to settle Suttles's wrongful foreclosure claims.

**8.    Defendants engaged in loan servicing misconduct in connection with other Loans.**

150.    Compass misapplied principal payments made by the "Palm Harbor" and "The Gardens" borrowers to fees allegedly due to Compass as the loan servicer.    By those actions, Compass put those Loans into default, causing the Palm Harbor and The Gardens direct lenders to lose substantial sums to which they were entitled.

151.    Compass retained Citron to be its Florida subservicer with respect to the "Lake Helen Partners" Loan.    Compass, Silar, and Asset Resolution were responsible for all actions taken or not taken by Citron under the LSAs.    In April 2009, after acquiring title to the Lake Helen Partners property upon the completion of foreclosure proceedings, Citron, without the authorization to do so, sold approximately 7.6 acres of the property for $200,000.    The Lake Helen Partners direct lenders have not been paid their fractional share of those sale proceeds.    Citron has disbursed its assets, including the $200,000 payment, to the Citron Defendants.

152.   In furtherance of their efforts to collect loan servicing compensation in priority to, and to the financial detriment of, the direct lenders, Compass, Silar, and Asset Resolution also caused damages, including the destruction of the value of the collateral securing the Loans, to Plaintiffs by their actions or omissions in connection with at least the following Loans (in addition to all those Loans specifically discussed previously):  "60th Street Venture," "Amesbury," "BarUSA," "Binford Medical," "Brookmere," the "Bundy" Loans, "Cabernet Highlands," "Charlevoix," "Clear Creek Plantation," "Collwood," "Comvest," "Cornman Toltec," "Del Valle Livingston," "Hesperia," "HFA Clearlake I," "HFA Clearlake II," "Huntsville," "Margarita Annex," "Marlton Square I," "Marlton Square II," "Mountain House," "Oak Shores II," "Ocean Atlantic $2.75MM," "Ocean Atlantic $9.425MM," "SoCal Land Development," and "Ten-Ninety."

**D.    The Damage Done**

153.   Plaintiffs lost substantial sums as a result of Defendants' wrongful loan servicing enterprise and additional loan servicing misconduct.  Pursuant to Defendants' loan servicing enterprise, Plaintiffs sold their fractional beneficial interests in various Loans at substantial discounts, and were not paid considerable proceeds from the Loans that were wrongfully taken by Defendants as purported loan servicing compensation to which they were not entitled.  Pursuant to Defendants' additional loan servicing misconduct, Plaintiffs lost favorable resolutions of the Loans, incurred substantial liabilities in connection with the Loans, and are left with fractional beneficial interests in Loans that are of marginal, if any, value.

**E.    Class Allegations**

154.   Plaintiffs bring this action against Defendants on behalf of themselves and all other similarly situated direct lenders represented by Bickel & Brewer who invested in the Loans in which Defendants perpetrated the loan servicing misconduct alleged herein.

155.   This action has been brought, and may properly be maintained, as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

156.   Numerosity:  The number of the other similarly situated direct lenders represented by Bickel & Brewer who want to be included in this action could be as many as an additional 1,000 persons.   The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

157.   Common Questions Predominate:  This action involves common questions of law and fact to the potential class because each class member's claim derives from the same loan servicing misconduct perpetrated by Defendants in connection with each of the particular Loans alleged herein.  The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts with respect to a particular Loan will establish the right of each member of the class to recover as to that Loan.  Among the questions of law and fact common to the class are:

a)      Whether Defendants breached various duties that they owed to the direct lenders in connection with the Loans;

b)      Whether Defendants conspired to engage in the loan servicing misconduct alleged herein;

c)      Whether Defendants engaged in a RICO association and engaged in a pattern of activity designed to defraud Plaintiffs and the class;

d)      Whether Defendants engaged in a "Nevada RICO" association and engaged in crimes related to racketeering designed to defraud Plaintiffs and the class;

e)      Whether Plaintiffs and the class are entitled to declaratory and other equitable relief; and

f)      Whether Plaintiffs and the class are entitled to recover compensatory, consequential, treble, and/or punitive damages, plus interest and attorneys' fees.

158.   Typicality:  Plaintiffs' claims are typical of the class because Plaintiffs entered into the same LSAs, and invested in the same Loans, as did the members of the class.  Thus, Plaintiffs and the members of the class sustained the same injuries and damages arising out of Defendants' loan servicing misconduct.

159.   Adequacy:  Plaintiffs will fairly and adequately protect the interests of all members of the class because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the loan servicing misconduct of which they complain.  Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of the members of the class. Plaintiffs have retained highly competent and experienced attorneys to represent their interests and that of the class.  No conflict of interest exists between Plaintiffs and the members of the class because all questions of law and fact regarding the liability of Defendants are common to the members of the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs necessarily will establish Defendants' liability as to the members of the class.  Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the members of the class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the class.

160.   Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendants, result in the impairment of the rights of the members of the class, and dispose of the interests of the members of the class through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

161.   Nexus to Nevada:  The State of Nevada has a special interest in regulating the affairs of corporations that do business here.  Defendants were required to comply with Nevada law because the LSAs and the Loans were expressly governed by Nevada law, they were "mortgage brokers" within the meaning of Nevada law, and the Preliminary Injunction entered by the District Court in the 892 Case required them to employ a Nevada-licensed subservicer.  In addition, the Bankruptcy Cases are pending in the District of Nevada.  Accordingly, a substantial nexus exists between Defendants' unlawful behavior and Nevada such that the Nevada courts should take cognizance of this action on behalf of a class of all other similarly situated direct lenders represented by Bickel & Brewer.

162.   Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## V.

## CAUSES OF ACTION

**A.    Violations Of The Racketeer Influenced And Corrupt Organizations Act ("RICO") Against All Defendants**

163.   Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

164.   Each of Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

**1.    The enterprise.**

165.   Compass and Silar engaged in their wrongful loan servicing enterprise in violation of RICO beginning in March 2007.  Plaintiffs did not discover that enterprise until in and after March

2007.   Specifically, although Compass was the successful bidder for the Purchased Assets on December 7, 2006, Compass did not close on its acquisition of the Purchased Assets until February 16, 2007, and, therefore, Compass and Silar did not formally begin to service the Loans until on and after that date.  Leeds and Mezei were in control of each and every aspect of the loan servicing enterprise, and were assisted by each of the other Defendants.  Defendants are separate and distinct from the loan servicing enterprise.  Thus, Defendants acted as an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that affects interstate commerce.

**2.      Compass and Silar engaged in a pattern of racketeering activity.**

166.    Compass and Silar engaged in a pattern of "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by committing mail fraud (in violation of 18 U.S.C. § 1341) and wire fraud (in violation of 18 U.S.C. § 1343) in connection with their servicing of the Loans.  Compass's and Silar's racketeering activity constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) because they acted with continuity and pursuant to a scheme, with the intention to defraud and avoid lawful obligations to the direct lenders, with the reasonable foreseeability that the mail and wires would be used, and actually used the mail and wires to further the scheme.

167.    In particular, Compass and Silar engaged in a scheme to defraud the direct lenders. The purpose of their scheme was to enrich themselves by acquiring fractional beneficial interests at substantial discounts, and by retaining funds obtained in connection with the Loans to which they were not entitled, all to the financial detriment of the direct lenders.

168.    Defendants regularly communicated with each other through personal meetings, written correspondence, facsimile transmissions, and telephone conferences.  To facilitate those communications, Defendants utilized interstate wires, the United States Postal Service, and interstate carriers.

169.    Compass's and Silar's fraudulent scheme with respect to the direct lenders was perpetrated through the use of the mail and interstate wires, in violation of 18 U.S.C. §§ 1341 and

1343.   For the purpose of executing their fraudulent scheme, Compass and Silar and their subordinates have committed two or more predicate acts that were related, continuous, and ongoing. In particular, Defendants used the United States mail and interstate wires for telephone calls, facsimile transmissions, and other electronic correspondence to defraud and mislead the direct lenders in connection with their unlawful scheme related to the servicing of the Loans.   In connection with their scheme to avoid their lawful obligations to the direct lenders, Defendants made a number of known and material misrepresentations, and omitted to disclose material information, to Plaintiffs.

170.   In addition, Defendants' racketeering activity constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) because their use of the mail and interstate wires to defraud the direct lenders was repeated multiple times.

171.   In violation of 18 U.S.C. § 1962(b), Compass and Silar, through the above pattern of racketeering activity, acquired and maintained control over the loan servicing enterprise, which engaged in interstate commerce.   Their control over the loan servicing enterprise allowed them to use, operate, and transfer assets obtained in connection with the Loans to the financial detriment of Plaintiffs in violation of 18 U.S.C. § 1962(b).

172.   In violation of 18 U.S.C. § 1962(c), Leeds, Mezei, Cohen, Piskun, Blatt, Friedman, Gracin, Tai, Windemere, Oakbridge, Citron, the Citron Defendants, SOS, Reiner, Lomazow, Great White, Orrock, Fragin, Repotex, and EGG, who were employed by or associated with the loan servicing enterprise, have participated in and conducted the affairs of the loan servicing enterprise through the pattern of racketeering activity described above.   The loan servicing enterprise, although controlled by Defendants, is separate and distinct from Defendants.

173.   In addition, Defendants have joined together to defraud the direct lenders and agreed to commit the unlawful acts as part of the pattern of racketeering activity described above. Defendants' activities, as demonstrated by the facts set forth above, establish Defendants' agreement

to knowingly participate in a collective venture toward a common goal, and thereby establish a conspiracy to commit mail fraud and wire fraud for the purpose of unlawfully defrauding Plaintiffs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).  Defendants' activities, therefore, violate 18 U.S.C.§ 1962(d), which prohibits a conspiracy to violate 18 U.S.C. § 1962(c).

### 3.   Plaintiffs' damages.

174.   As stated above, Defendants have engaged in a pattern of racketeering activity in connection with the Loans in violation of 18 U.S.C. § 1962.

175.   As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962, Plaintiffs have suffered and continue to suffer injuries to their property, including their interests in the Loans.

176.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their actual damages, the costs of this action, and their reasonable attorneys' fees.

### B.   Violations Of Nevada's Anti-Racketeering Law ("Nevada RICO") Against All Defendants

177.   Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

### 1.   The enterprise.

178.   Compass and Silar engaged in their wrongful loan servicing enterprise in violation of Nevada RICO beginning in March 2007.  Plaintiffs did not discover that enterprise until in and after March 2007.  Specifically, although Compass was the successful bidder for the Purchased Assets on December 7, 2006, Compass did not close on its acquisition of the Purchased Assets until February 16, 2007, and, therefore, Compass and Silar did not formally begin to service the Loans until on and after that date.  Leeds and Mezei were in control of each and every aspect of the loan servicing enterprise, and were assisted by each of the other Defendants.  Defendants are separate and distinct

from the loan servicing enterprise.  Thus, Defendants acted as an "enterprise" within the meaning of NEV. REV. STAT. § 207.380.

**2.**      **Defendants engaged in at least two crimes related to racketeering.**

179.      Defendants have engaged in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, within the meaning of NEV. REV. STAT. § 207.390.

180.      Pursuant to NEV. REV. STAT. § 207.360, a "crime related to racketeering" includes the commission of, attempt to commit, or conspiracy to commit "[t]aking property from another under circumstances not amounting to robbery," "[e]mbezzlement of money or property valued at $250 or more," or "[o]btaining possession of money or property valued at $250 or more . . . by means of false pretenses."  An embezzlement occurs under NEV. REV. STAT. § 205.300 when any person to whom money or property has been entrusted uses or appropriates the money or property in any manner or for any purpose other than that for which it was entrusted to the person.  A person obtains possession of money or property by false pretenses when he/she has an intent to defraud, makes a false representation, induces reliance on that representation, and defrauds the victim.

181.      In particular, Compass and Silar engaged in a scheme to defraud the direct lenders. The purpose of their scheme was to enrich themselves by acquiring fractional beneficial interests at substantial discounts, and by retaining funds obtained in connection with the Loans to which they were not entitled, all to the financial detriment of the direct lenders.

182.      In violation of NEV. REV. STAT. § 207.400(1)(b), Compass and Silar, through the above crimes related to racketeering, acquired and maintained control over the loan servicing enterprise in connection with the Loans.  Their control over the loan servicing enterprise has allowed them to use, operate, and transfer assets obtained in connection with the Loans to the financial detriment of Plaintiffs.

183.    In violation of NEV. REV. STAT. § 207.400(1)(c), Leeds, Mezei, Cohen, Piskun, Blatt, Friedman, Gracin, Tai, Windemere, Oakbridge, Citron, the Citron Defendants, SOS, Reiner, Lomazow, Great White, Orrock, Fragin, Repotex, and EGG, who were employed by or associated with the loan servicing enterprise, have participated in and conducted the affairs of the loan servicing enterprise through the racketeering activity described above.  The loan servicing enterprise, although controlled by Defendants, is separate and distinct from Defendants.

184.    In addition, Defendants have joined together to defraud the direct lenders and agreed to commit the racketeering activity described above.  Defendants' activities, as demonstrated by the facts set forth above, establish Defendants' agreement to knowingly participate in a collective venture toward a common goal, and thereby establish a conspiracy to commit the racketeering activity described above within the meaning of NEV. REV. STAT. §§ 207.400(1)(b),(c).  Defendants' activities, therefore, violate NEV. REV. STAT. § 207.400(1)(j), which prohibits a conspiracy to violate NEV. REV. STAT. §§ 207.400(1)(b),(c).

### 3.    Plaintiffs' damages.

185.    As stated above, Defendants have engaged in at least two crimes related to racketeering activity in connection with the Loans in violation of NEV. REV. STAT. § 207.400(1).

186.    As a direct and proximate result of Defendants' violations of NEV. REV. STAT. § 207.400(1), Plaintiffs have suffered and continue to suffer injuries to their property, including their interests in the Loans.

187.    Pursuant to NEV. REV. STAT. § 207.400(1), Plaintiffs are entitled to recover threefold their actual damages, the costs of this action, and their reasonable attorneys' fees incurred in the trial and appellate courts.

### C.    Elder Abuse Against All Defendants

188.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

189.    Pursuant to NEV. REV. STAT. §§ 41.1395(1),(4), Defendants are liable to those Plaintiffs over 60 years old that suffered a loss of money or property, caused by Defendants' use of those Plaintiffs' purported powers of attorney, to service the Loans to convert those Plaintiffs' money, assets, or property with the intention of permanently depriving those Plaintiffs of the ownership, use, benefit, or possession of such money, assets, or property.  Defendants' liability is for two times the actual damages incurred by those Plaintiffs over 60 years old.

190.    Pursuant to NEV. REV. STAT. § 41.1395(2), because they acted with recklessness, oppression, fraud, or malice, Defendants are also liable to those Plaintiffs over 60 years old for their attorneys' fees and costs.

**D.    Breach Of Contract Against Compass And Silar**

191.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

192.    Plaintiffs performed all their obligations under the LSAs, and all conditions precedent to the performance of Compass and Silar (and Asset Resolution) under the LSAs were performed and/or occurred.

193.    Compass and Silar (and Asset Resolution) materially breached their obligations under the LSAs by engaging in extensive loan servicing misconduct while lacking valid requisite powers of attorney to act on behalf of the direct lenders.

194.    As Compass was Silar's loan servicing agent under the LSAs pursuant to the MRA and various related instruments, Silar is vicariously liable for Compass's breaches of the LSAs.

195.    As Silar assigned the MRA and various related instruments to Asset Resolution, and because Asset Resolution assumed all Compass's rights and obligations under the LSAs, Asset Resolution is liable for its own, as well as Compass's, breaches of the LSAs.  And as Silar assigned its rights and obligations in the Purchased Assets to Asset Resolution while the 892 Case was pending, Silar is liable for Asset Resolution's breaches.

196.    As a result of the breaches by Compass and Silar (and Asset Resolution), Plaintiffs have been damaged in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial.

**E.    Breach Of The Implied Covenant Of Good Faith And Fair Dealing Against Compass, Silar, And Their Principals**

197.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

198.    Under Nevada law, Compass and Silar (and Asset Resolution) owed Plaintiffs an implied duty of good faith and fair dealing under the LSAs.

199.    Compass and Silar (and Asset Resolution) materially breached their implied duty of good faith and fair dealing under the LSAs by engaging in extensive loan servicing misconduct while lacking valid requisite powers of attorney to act on behalf of the direct lenders.

200.    As Compass was Silar's loan servicing agent under the LSAs pursuant to the MRA and various related instruments, Silar is vicariously liable for Compass's breaches of its implied duty of good faith and fair dealing under the LSAs.

201.    As Silar assigned the MRA and various related instruments to Asset Resolution, and because Asset Resolution assumed all Compass's rights and obligations under the LSAs, Asset Resolution is liable for its own, as well as Compass's, breaches of their implied duty of good faith and fair dealing under the LSAs.  And as Silar assigned its rights and obligations in the Purchased Assets to Asset Resolution while the 892 Case was pending, Silar is liable for Asset Resolution's breaches.

202.    In addition, because Compass and Silar (and Asset Resolution) had a fiduciary relationship with the direct lenders when handling funds on account of the direct lenders, they also tortiously breached the implied covenant of good faith and fair dealing in the LSAs by engaging in grievous and perfidious misconduct.  Pursuant to that duty, Compass and Silar (and Asset Resolution) could not elevate their interests above the interests of the direct lenders for whom they

were servicing the Loans pursuant to the LSAs.  For example, Compass and Silar (and Asset Resolution) could not seek to retain default interest and late charges as loan servicing compensation from collected funds in derogation of the right of the direct lenders to be repaid first their principal and all accrued regular interest due and owing under the Loans.

203.    The principals of Compass and Silar (and Asset Resolution) are also personally liable for such tortious actions.

204.    As a result of the breaches by Compass and Silar (and Asset Resolution), Plaintiffs have been damaged in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial.

**F.    Breach Of Fiduciary Duty Against Compass, Silar, And Their Principals**

205.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

206.    Compass and Silar (and Asset Resolution) owed fiduciary duties to Plaintiffs when handling any monies they collected on the Loans on behalf of the direct lenders.

207.    Compass and Silar (and Asset Resolution) breached their fiduciary duties to Plaintiffs by wrongfully taking and receiving funds as purported loan servicing compensation to which they were not entitled, and by not properly accounting for funds received in connection with the Loans.

208.    As Compass was Silar's loan servicing agent under the LSAs pursuant to the MRA and various related instruments, Silar is vicariously liable for Compass's breaches of fiduciary duties.

209.    As Silar assigned the MRA and various related instruments to Asset Resolution, and because Asset Resolution assumed all Compass's rights and obligations under the LSAs, Asset Resolution is liable for its own, as well as Compass's, breaches of fiduciary duties.  And as Silar assigned its rights and obligations in the Purchased Assets to Asset Resolution while the 892 Case was pending, Silar is liable for Asset Resolution's breaches.

210.    The principals of Compass and Silar (and Asset Resolution) are also personally liable for such tortious actions.

211.    As a result of the breaches by Compass and Silar (and Asset Resolution), Plaintiffs have been damaged in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial.

212.    As a result of Compass's and Silar's (and Asset Resolution's) actions, Plaintiffs are also entitled to an award of punitive damages in an amount to be determined at trial.

**G.    Conversion Against All Defendants**

213.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

214.    Defendants wrongfully and knowingly exerted dominion and control over funds obtained in connection with the Loans that were supposed to be paid to the direct lenders.

215.    Defendants' wrongful taking of such funds was inconsistent with, or in derogation, exclusion, or defiance of Plaintiffs' rights to possession of those funds.

216.    As a result of Defendants' conversion of those funds, Plaintiffs have suffered damages in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial.

217.    As a result of Defendants' actions, Plaintiffs are also entitled to an award of punitive damages in an amount to be determined at trial.

**H.    Civil Conspiracy Against All Defendants**

218.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

219.    Defendants acted in concert with the intention of unlawfully enriching themselves to the financial detriment of the direct lenders.

220.    As a result of Defendants' actions, Plaintiffs have been damaged in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial.

221.    As a result of Defendants' actions, Plaintiffs are also entitled to an award of punitive damages in an amount to be determined at trial.

**I.    Alter Ego Against Silar**

222.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

223.    Asset Resolution is wholly owned by Silar, had no employees, and was formed merely as a corporate shell to be, and that was, operated as a single economic entity by Silar, including specifically Leeds, Gracin, and Tai.

224.    SOS was an affiliate of Silar that was formed merely as a corporate shell to be, and that was, operated as a single economic entity by Silar, including specifically Leeds, Gracin, and Tai.

225.    Silar wrongfully and knowingly used Asset Resolution as a mere instrumentality or alter ego to effectuate an injustice on the direct lenders.  Silar improperly sought to use Asset Resolution as a shield against the direct lenders' damages claims while purporting to obtain all the benefits of ownership of the Purchased Assets.

226.    Silar wrongfully and knowingly used SOS as a mere instrumentality or alter ego to effectuate an injustice on the direct lenders.

227.    As a result of its elaborate shell game with Asset Resolution and SOS, Silar is liable to Plaintiffs for the loan servicing misconduct that it perpetrated by and through Asset Resolution and SOS.

228.    As a result of Silar's actions, Plaintiffs are entitled to an award of damages in an amount to be determined at trial.

**J.    Declaratory Judgment Against Compass And Silar**

229.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

230.    Defendants are collaterally estopped from challenging the prior rulings made by the District Court in the 892 Case in connection with the Loans, the LSAs, the 51% Rule, the loan servicing compensation to which the loan servicer under the LSAs is entitled, the loan servicers

under the LSAs being "mortgage brokers" under Nevada law, the lack of requisite powers of attorney held by the loan servicers under the LSAs, the inability of the loan servicers under the LSAs to pursue damages claims against the direct lenders, and Silar's liability for Compass's loan servicing misconduct.

231.    Plaintiffs are entitled to a declaratory judgment that confirms that the declaratory relief recognized by the District Court in the 892 Case also applies to Plaintiffs herein, and that Defendants are collaterally estopped from challenging such declaratory relief.

## K.    Constructive Trust Against All Defendants

232.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

233.    Defendants have wrongfully and inequitably taken and retained funds obtained in connection with the Loans to which they are not entitled.  Because it would be inequitable for Defendants to retain those funds, the imposition of a constructive trust related to those funds is essential to effectuate justice and to ensure the protection of Plaintiffs' rights in and to those funds.

## L.    Attorneys' Fees Against Compass And Silar

234.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs.

235.    Pursuant to section 15 of the predominant "Type 4" LSAs, Plaintiffs are entitled to recover their costs, expenses, and attorneys' fees incurred in this action and on appeal for prevailing on their claims to enforce provisions of the LSAs.

## VI.

## DEMAND FOR JURY TRIAL

236.    Plaintiffs demand a jury trial on all issues so triable.

# VII.

## REQUEST FOR RELIEF

237.    In light of the foregoing, Plaintiffs respectfully request that the Court enter judgment for Plaintiffs and against Defendants, awarding Plaintiffs and all others similarly situated the following relief:

a.    A declaration confirming that the declaratory relief recognized by the District Court in the 892 Case also applies to Plaintiffs and all members of the class, and that Defendants are collaterally estopped from challenging such declaratory relief;

b.    Actual, compensatory, consequential, double, and treble damages in accordance with their fractional beneficial interests in the Loans in an amount to be determined at trial;

c.    Punitive damages in an amount to be determined at trial;

d.    Costs of Court;

e.    Reasonable attorneys' fees and costs incurred by Plaintiffs herein and on any appeal;

f.    Pre- and post-judgment interest at the highest lawful rates;

g.    The imposition of a constructive trust on funds improperly retained by Defendants to which they are not entitled; and

h.    Such other and further relief to which Plaintiffs and the members of the class may be entitled and which this Court deems just and proper.

Dated:  April 13, 2011.

BICKEL & BREWER

LAW OFFICE OF LISA RASMUSSEN, ESQ.

*s/ Lisa Rasmussen*

By:    _____
       LISA RASMUSSEN, ESQ.

**Exhibit A**

1.      Jackie Adams

2.      John F. Adams

3.      Leonard C. Adams, individually and/or on behalf of the Leonard Adams Revocable Trust

4.      Denise M. Adams, individually and/or on behalf of the Leonard Adams Revocable Trust

5.      Michael J. Adams

6.      Kenneth Addes, individually and/or on behalf of the Kenneth Addes IRA and the Addes Trust

7.      Victoria Addes, individually and/or on behalf of the Addes Trust

8.      Suzanne Ahlert, individually and/or on behalf of the Labossiere Family Trust Dated 3/20/98

9.      Michel F. Aiello, individually and/or on behalf of the Michel F. Aiello and Patricia A. Aiello Trust Dated 10/4/94

10.     Patricia A. Aiello, individually and/or on behalf of the Michel F. Aiello and Patricia A. Aiello Trust Dated 10/4/94

11.     Charles Jeremy Ainsworth

12.     Adib M. Al-Awar, individually and/or on behalf of the Al-Awar Living Trust dated 04/05/01

13.     Ellen A. Al-Awar, individually and/or on behalf of the Al-Awar Living Trust dated 04/05/01

14.     David J. Albiol

15.     Marcia C. Albiol

16.     Henry C. Albiol

17.     Dr. Florence Alexander, individually and/or on behalf of the Stanley Alexander Trust

18.     Dr. Stanley Alexander, individually and/or on behalf of the Stanley Alexander Trust

19.     Donna L. Allgeier, individually and/or on behalf of the R.L. Allgeier Family Trust dated 10/4/97

20.     Robert L. Allgeier, individually and/or on behalf of the R.L. Allgeier Family Trust dated 10/4/97

21.     Karen R. Allison

22.     Barbara A. Altman, individually and/or on behalf of the Altman Living Trust dated 11/4/04

23.     Daniel C. Altman, individually and/or on behalf of the Altman Living Trust dated 11/4/04

24.     Steven C. Altman

25.     Agnes Alves, individually and/or on behalf of AIG Limited, a Nevada Limited Partnership

26.     Arnold Alves, individually and/or on behalf of AIG Limited, a Nevada Limited Partnership

27.     August J. Amaral, individually and/or on behalf of the August J. Amaral, Inc., a Nevada corporation

28.     Barbara Andersen

29.     Kes G. Andersen

30.     Ruth Andersen

31.     Wendell Andersen

32.     Lynda Gay Anderson, individually and/or on behalf of the Lynda Gay Anderson Trust dated 7/7/04

33.    Robert P. Anderson, individually and/or on behalf of the Robert P. Anderson Revocable Living Trust

34.    Roberta J. Anderson, individually and/or on behalf of the Robert P. Anderson Revocable Living Trust

35.    Albert D. Andrade

36.    John P. Aquino

37.    Lisa Aquino

38.    Donna Arbogast, individually and/or on behalf of the Arbogast Family Trust

39.    Rodney J. Arbogast, individually and/or on behalf of the Arbogast Family Trust

40.    Suzanne L. Arbogast

41.    Guy Archer

42.    Albert M. Arechiga

43.    Richard Armijo, individually and/or on behalf of the Armijo Family Trust dated 8/19/1999

44.    Sanayha Armijo, individually and/or on behalf of the Armijo Family Trust dated 8/19/1999

45.    Edwin E. Arnold, individually and/or on behalf of the Edwin E. Arnold IRA

46.    Allan Arthur, individually and/or on behalf of X-Factor, Inc., a Nevada corporation

47.    Darlene Ashdown

48.    Mary E. Asselin, individually and/or on behalf of the 1994 Robert Asselin and Mary Asselin Family Trust

49.    Robert J. Asselin, individually and/or on behalf of the 1994 Robert Asselin and Mary Asselin Family Trust

50.    Michael Au

51.    Eugene Auffert

52.   Maria Teresa Auffert

53.   James B. Avanzino

54.   Cindy Avena, individually and/or on behalf of the Avena Living Trust dated 3/28/84

55.   Thomas Avena, individually and/or on behalf of the Avena Living Trust dated 3/28/84

56.   Loretta D. Backes, individually and/or on behalf of the Backes Family Trust dated 8/8/88

57.   Paul P. Backes, individually and/or on behalf of the Backes Family Trust dated 8/8/88

58.   Peter L. Backes, individually and/or on behalf of the Peter L. Backes Trust

59.   David Bailey

60.   Sigfried Baker

61.   Don L. Barnes

62.   Miriam M. T. Barnes

63.   James W. Barnes, individually and/or on behalf of the JWB Trust Agreement dated 8/1/97

64.   Clark Baron, individually and/or on behalf of the Baron Family Trust

65.   Joyce Baron, individually and/or on behalf of the Baron Family Trust

66.   Clark R. Bartkowski, individually and/or on behalf of the Bartkowski Family Trust dated 8/25/1984

67.   Jean P. Bartkowski, individually and/or on behalf of the Bartkowski Family Trust dated 8/25/1984

68.   Jed Barish, individually and/or on behalf of Simmtex, Inc., a Nevada Corporation

69.   David Barker

70.   Lisa Barker

71.   Gary R. Barton

72.    Mavis J. Barton

73.    Joseph Basko, individually and/or on behalf of the Basko Revocable Trust Dated 7/21/93

74.    Irene K. Bass, individually and/or on behalf of the C.K. Khury and Irene K. Bass Family Trust

75.    Joseph F. Bellesorte

76.    Diane L. Bennett

77.    Marjorie Y. Berlin

78.    Donald M. Berman, individually and/or on behalf of the Donald M. and Janice I. Berman 1996 Revocable Trust

79.    Janice I. Berman, individually and/or on behalf of the Donald M. and Janice I. Berman 1996 Revocable Trust

80.    Jean J. Berthelot, individually and/or on behalf of the Berthelot Living Trust dated 4/9/03

81.    William M. Bettencourt, Jr., individually and/or on behalf of the William M. Bettencourt IRA and the Bettencourt Family Living Trust

82.    Joan E. Bettencourt, individually and/or on behalf of the Joan Bettencourt IRA and the Bettencourt Family Living Trust

83.    Jay Betz, individually and/or on behalf of the Betz Family Trust

84.    Joy Betz, individually and/or on behalf of the Betz Family Trust

85.    Anthony Bilotto, individually and/or on behalf of the  Anthony Bilotto Trust dated 01/16/03

86.    Gerald L. Bittner, Sr., individually and/or on behalf of the Gerald L. Bittner Sr. DDS, Inc. Profit Sharing Plan and Trust and Gerald L. Bittner, Sr. DDS Profit Sharing Trust

87.    Susan I. Bittner

88.     Karen G. Blachly

89.     Carolyn N. Blackman, individually and/or on behalf of the Jerry L. Blackman, Sr. and Carolyn N. Blackman Living Trust dated 11/26/01

90.     Jerry L. Blackman, Sr., individually and/or on behalf of the Jerry L. Blackman, Sr. and Carolyn N. Blackman Living Trust dated 11/26/01

91.     Daryl L. Blanck, individually and/or on behalf of the Restated Trust and Daryl Blanck and Yvonne Blanck Trust dated 3/23/94

92.     Yvonee M. Blanck, individually and/or on behalf of the Restated Trust and Daryl Blanck and Yvonne Blanck Trust dated 3/23/94

93.     Michael S. Blau

94.     Shamiran Blau

95.     Charma N. Block

96.     Jerome L. Block

97.     David M. Blood

98.     Judy A. Blood, individually and/or on behalf of the Blood Family Trust dated 5/18/99

99.     Russell M. Blood, individually and/or on behalf of the Blood Family Trust dated 5/18/99

100.    Carrie Boak

101.    Harkley E. Boak

102.    Cynthia Reed Boegel

103.    Dennis W. Boegel

104.    Betty Boese

105.    John S. Borkoski, individually and/or on behalf of the Payette Lakes Consulting LLC 401k

106.   Kathleen K. Borkoski, individually and/or on behalf of the Kali Gene Borkoski Trust dated 12/21/89

107.   Charles E. Borom

108.   Lanna G. Borom

109.   Alice D. Boyce

110.   William Boyce II

111.   Richard A. Bradbury, individually and/or on behalf of the Bradbury Retirement Plan and Trust dated 5/26/99

112.   Sarah S. Bradbury, individually and/or on behalf of the Bradbury Retirement Plan and Trust dated 5/26/99

113.   Christine Brager

114.   Anne L. Brant, individually and/or on behalf of the and the Anne L. Brant Survivor's Trust Dated 5/22/87 and the Raymond F. Brant and Anne L. Brant Trust Dated 12/22/92

115.   Raymond F. Brant, individually and/or on behalf of the Raymond F. Brant and Anne L. Brant Trust Dated 12/22/92 and the Anne L. Brant Survivor's Trust Dated 5/22/87

116.   Larry R. Brasuell, individually and/or on behalf of the Larry R. and Susan L. Brasuell 1996 Living Trust Dated 7/22/96

117.   Susan L. Brasuell, individually and/or on behalf of the Larry R. and Susan L. Brasuell 1996 Living Trust Dated 7/22/96

118.   Nancy Brauer, individually and/or on behalf of the Nancy Brauer IRA

119.   Michael Braunstein, individually and/or on behalf of M&M Imports Retirement Plan Trust

120.   Glen J. Brecht, individually and/or on behalf of the Glen J. Brecht Trust dated 1/24/86

121.    Janine K. Brecht, individually and/or on behalf of the Glen J. Brecht Trust dated 1/24/86

122.    Janet L. Brecht, individually and/or on behalf of the Marshall J. Brecht Trust dated 2/5/86

123.    Marshall J. Brecht, individually and/or on behalf of the Marshall J. Brecht Trust dated 2/5/86

124.    Katharine Bredesen, individually and/or on behalf of the Mark Bredesen and Katharine Bredesen Living Trust

125.    Mark Bredesen, individually and/or on behalf of the Mark Bredesen and Katharine Bredesen Living Trust

126.    Donald W. Brehm

127.    Hannah Brehmer

128.    Marilyn Brenner

129.    Michael Brenner

130.    Michael T. Bridges, individually and/or on behalf of the Bridges Family Trust

131.    Cindy Brines, individually and/or on behalf of the Michael R. Brines and Cindy G. Brines Revocable Living Family Trust Dated 11/4/94

132.    Michael Brines, individually and/or on behalf of the R. Brines and Cindy G. Brines Revocable Living Family Trust Dated 11/4/94

133.    Donald E. Briney, individually and/or on behalf of the Briney Family Exemption Trust (dated 11/5/82)

134.    Penny L. Brock, individually and/or on behalf of the Brock Family Trust dated 5/25/95

135.    Doreen C. Brooks, individually and/or on behalf of the Brooks Living Trust dated 6/30/97

136.   Howard D. Brooks, individually and/or on behalf of the Brooks Living Trust dated 6/30/97

137.   John P. Brouwers, individually and/or on behalf of the Brouwers Family Trust dated 1/11/1995

138.   John W. Brouwers, individually and/or on behalf of the John W. Brouwers, M.D. Sep IRA

139.   Robert A. Bryant, Sr., individually and/or on behalf of the Robert Alan Bryant Sr. Revocable Trust Under Agreement dated 9/25/03

140.   Bruce D. Bryen

141.   Eleanor Buck, individually and/or on behalf of the W.E. Buck Family Trust dated 7/02/87, Spanish Springs Mini-Storage, a Nevada General Partnership, and Sunrise Mini-Storage

142.   William E. Buck, individually and/or on behalf of the W.E. Buck Family Trust dated 7/02/87, Spanish Springs Mini-Storage, a Nevada General Partnership, and Sunrise Mini-Storage

143.   Nancy A. Buechner, individually and/or on behalf of the Buechner Family Trust dated 3/30/99

144.   William R. Buechner, individually and/or on behalf of the Buechner Family Trust dated 3/30/99

145.   Cynthia D. Burdige, individually and/or on behalf of the Cynthia D. Burdige Trust Dated 4/13/00

146.   Donald D. Burger

147.   Peggy T. Burger

148.   Ed Burgess, individually and/or on behalf of the Edward Burgess IRA

149.   Joselita Tan Burgos

150.   Robert E. Burnett, Jr.

151.   Alyce E. Cadwallader, individually and/or on behalf of the Cadwallader 2001 Trust

152.   David S. Cadwallader, individually and/or on behalf of the Cadwallader 2001 Trust

153.   Keith J. Cale, individually and/or on behalf of the Cale Family Trust Dated 11/16/88

154.   Valerie Callahan

155.   Judith Candelario

156.   Donna M. Cangelosi, individually and/or on behalf of the Donna M. Cangelosi Family Trust

157.   Margaret M. Cangelosi, individually and/or on behalf of the Margaret M. Cangelosi Family Trust

158.   William A. Carone, individually and/or on behalf of the William A. Carone IRA

159.   Anne M. Carpenter

160.   Michael R. Carpenter

161.   Doyne J. Carson, individually and/or on behalf of the Carson Family Trust dated 11/19/04

162.   Elsie L. Carson, individually and/or on behalf of the Carson Family Trust dated 11/19/04

163.   Leslie A. Carter, individually and/or on behalf of the Ronald R. Carter and Leslie A. Carter Revocable Trust

164.   Ronald R. Carter, individually and/or on behalf of the Ronald R. Carter & Leslie A. Carter Revocable Trust

165.   Jairo A. Castillo

166.   Tito A. Castillo

167.   Sandra Castro

168.   Mary Ann Catalanello, individually and/or on behalf of the Catalanello Trust Dated 2/1/99

169.   Ralph F. Catalanello, individually and/or on behalf of the Catalanello Trust Dated 2/1/99

170.   Jacqueline Cauchois, individually and/or on behalf of the M & J Cauchois Family Trust dated 2/25/93

171.   Maurice Cauchois, individually and/or on behalf of the M & J Cauchois Family Trust dated 2/25/93

172.   Stefan R. Cavin, individually and/or on behalf of the Stefan R. Cavin Revocable Living Trust Dated 5/26/04

173.   Karen Rae Cazier, individually and/or on behalf of the Ronald Norman Casier and Karen Rae Casier Family Trust Dated 3/9/00

174.   Ronald Norman Cazier, individually and/or on behalf of the Ronald Norman Casier and Karen Rae Casier Family Trust Dated 3/9/00

175.   Barbara A. Cecil, individually and/or on behalf of the Walk The Land, LLC 401k Plan and Barbara A. Cecil IRA

176.   Robert J. Centanni, Sr.

177.   Susan R. Centanni

178.   Leona M. Chapman, individually and/or on behalf of the Chapman Trust #1015932

179.   Tony Chaudhry, individually and/or on behalf of Joy Investment, Inc., a Nevada corporation

180.   Paul G. Chelew

181.   Joann Chiappetta, individually and/or on behalf of the Chiappetta Trust dated 4/1/03

182.   Pat Chiappetta, individually and/or on behalf of the Chiappetta Trust dated 4/1/03

183.   John T. Chirgwin

184.   Kerri J. Chun, individually and/or on behalf of the Chun Living Trust Dated 2/17/98

185.   Vernon K. Chun, individually and/or on behalf of the Chun Living Trust Dated 2/17/98

186.   Barbara M. Chylak, individually and/or on behalf of the 1995 Tobe Eugene Stricklin and Barbara Stricklin Revocable Trust dated 4/11/95

187.   Robert T. Chylak, individually and/or on behalf of the Robert T. Chylak and Barbara M. Chylak Family Trust dated 10/30/90

188.   Billie R. Cislaghi, individually and/or on behalf of the Billie R. Cislaghi Trust

189.   Curtis Clark, individually and/or on behalf of the Curtis Clark IRA

190.   Jack R. Clark

191.   Rosanne L. Clark

192.   Doreen S. Clendening, individually and/or on behalf of the Clendening Family Trust dated 10/08/2004

193.   John P. Clendening, individually and/or on behalf of the Clendening Family Trust dated 10/08/2004

194.   Dolores J. Climo, individually and/or on behalf of the Climo Family Trust dated 2/6/92

195.   James D. Climo, individually and/or on behalf of the Climo Family Trust dated 2/6/92

196.   Dena Cochran, individually and/or on behalf of the Billy Shope, Jr. Family Limited Partnership

197.   George S. Cohan, individually and/or on behalf of the George S. Cohan and Natalie H. Cohan Family Trust dated 4/1/03

198.   Natalie H. Cohan, individually and/or on behalf of the George S. Cohan and Natalie H. Cohan Family Trust dated 4/1/03

199.   Allen Cohen

200. Nelson L. Cohen, individually and/or on behalf of the Nelson L. Cohen IRA

201. Margaret H. Cohn

202. Peter C. Cohn

203. Anita J. Colamonico

204. Steve M. Colamonico

205. Larry Colborn, individually and/or on behalf of the Colborn Revocable Living Trust dated 8/6/90

206. Loretta Colborn, individually and/or on behalf of the Colborn Revocable Living Trust dated 8/6/90

207. Shirley M. Collins, individually and/or on behalf of the Collins Family Trust dated 1/29/93

208. David J. Conklin

209. Howard Connell

210. Lorene Connell

211. Daniel O. Conner, individually and/or on behalf of the Daniel Conner IRA

212. Doreen C. Conrad

213. Terrence D. Conrad

214. Thomas Raymond Conway

215. Victoria C.E. Conway

216. Harold Corcoran

217. Joyce Corcoran

218. Joseph L. Costello, individually and/or on behalf of 1823 Corporation, a California corporation

219. Maria Cotch

220. Karen Cottrell

221.   Kevon Cottrell

222.   Melanie Cowan

223.   Robert J. Cowen, individually and/or on behalf of the Robert J. Cowen Trust Dated 11/7/97

224.   Frankye D. Craig, individually and/or on behalf of the Craig Living Trust dated 08/10/00

225.   Howard L. Craig, individually and/or on behalf of the Craig Living Trust dated 08/10/00

226.   Gareth A. R. Craner, individually and/or on behalf of the Craner Family Trust under Agreement Dated 2/23/99 and the Gareth A.R. Craner Trust Dated 6/1/02

227.   Peter C. Cranston, individually and/or on behalf of the Peter C. Cranston IRA

228.   Christine Craven

229.   Lee Craven

230.   Arline L. Cronk, individually and/or on behalf of the Arline L. Cronk and Edward H. Davies Living Trust Dated 6/27/03

231.   Charles Duke Cummins

232.   April May Cummins

233.   Charles D. Cunningham, individually and/or on behalf of the Charles D. Cunningham IRA

234.   Susan M. Cunningham

235.   Shirley Cupp-Doe, individually and/or on behalf of the Ronald G. Doe Marital Trust dated 1/6/95

236.   Fernando Cuza

237.   Kristi Cuza

238.   Maureen Da Costa

239.   Richard N. Dahlke

240.   Robert J. D'Ambrosio, individually and/or on behalf of the Robert J. D'Ambrosio IRA

241.   Klint Thomas Danna, individually and/or on behalf of the Danna Trust Agreement of 1990

242.   Patricia Danna, individually and/or on behalf of the Danna Trust Agreement of 1990

243.   Cathy A. Daniel, individually and/or on behalf of the Daniel Living Trust as Amended Dated 1/9/98

244.   Deborah A. Daniel

245.   Denise M. Daniel

246.   Gregory Scott Daniel

247.   Leslie S. Daniel

248.   Mark A. Daniel, individually and/or on behalf of the Daniel Living Trust as Amended Dated 1/9/98

249.   Andrew Dauscher

250.   Ellen D. Dauscher

251.   Frank Davenport

252.   O.H. Davenport

253.   Chesley R. Davies

254.   Edward H. Davies, individually and/or on behalf of the Arline L. Cronk and Edward H. Davies Living Trust Dated 6/27/03

255.   Mary E. Davies

256.   Frederick J. Davis

257.   Joseph Davis, individually and/or on behalf of the Davis Family Trust

258.   Martin A. Davis, individually and/or on behalf of the Davis Family 2000 Trust

259.    Nancy R. Davis, individually and/or on behalf of the Nancy R. Davis Defined Benefit Plan

260.    Patrick Davis, individually and/or on behalf of the Patrick M. Davis IRA and S & P Davis Limited Partnership, a Texas Partnership

261.    Susan Davis, individually and/or on behalf of the S & P Davis Limited Partnership, a Texas Partnership and Susan Davis IRA

262.    Virginia L. Davis, individually and/or on behalf of the Davis Family 2000 Trust

263.    Tracy A. Deberry

264.    Rena DeHart, individually and/or on behalf of the Rena DeHart IRA, the A. Robert DeHart Trust C Dated 1/21/93, and Dehart/Hooks, LP, a Nevada Limited Partnership

265.    Peter Deluca

266.    Gary Deppe, individually and/or on behalf of the Gary Deppe IRA

267.    Ann R. Dery

268.    James D. Dery

269.    Dwayne H. Deutscher

270.    Michelle T. Deutscher

271.    Debra L. Deverill, individually and/or on behalf of Nevada Freedom Corp. PSP Dated 10/1/90 Amended 9/1/95

272.    Duane U. Deverill, individually and/or on behalf of Nevada Freedom Corp. PSP Dated 10/1/90 Amended 9/1/95, Duane U. Deverill Family Trust

273.    Cynthia V. Devito

274.    Dennis A. Devito

275.    Anne F. Di Salvo

276.    Tamara Dias, individually and/or on behalf of the Separate Property Trust of Tamara Dias Dated 12/4/00

277.    Eric C. Disbrow, M.D., individually and/or on behalf of the Eric Disbrow Profit Sharing Plan

278.    Marion B. Dittman

279.    Leah K. Dobyne, individually and/or on behalf of the Leah Dobyne IRA and Dobyne Living Trust

280.    Robert S. Dobyne, individually and/or on behalf of the Dobyne Living Trust

281.    Elizabeth Dokken-Baxter, individually and/or on behalf of the Elizabeth P. Dokken Trust Dated 1/27/93

282.    Carrie Donahue, individually and/or on behalf of the Glenn and Carrie Donahue Living Trust Dated 4/30/94

283.    Glenn M. Donahue, individually and/or on behalf of the Glenn and Carrie Donahue Living Trust Dated 4/30/94

284.    Michael Donahue

285.    Mieko Donovan

286.    Richard Donovan

287.    Joseph Donnolo, individually and/or on behalf of the Donnolo Family Trust Dated 8/24/88

288.    Loretta Donnolo, individually and/or on behalf of the Donnolo Family Trust Dated 8/24/88

289.    D. Joseph Doucet, individually and/or on behalf of the D. Joseph and Louise M. Doucet 1989 Trust Dated 3/30/89

290.    Louise M. Doucet, individually and/or on behalf of the D. Joseph and Louise M. Doucet 1989 Trust Dated 3/30/89

291.    David B. Doutt, Sr.

292.    Johnine M. Doutt

293.    William A. Downey

294.    Jill M. Doyle, individually and/or on behalf of the Doyle Family Trust Dated 9/23/99

295.    Patrick J. Doyle, individually and/or on behalf of the Doyle Family Trust Dated 9/23/99

296.    Daniel T. Drubin, individually and/or on behalf of the Daniel T. Drubin IRA and Daniel T. Drubin Sep IRA

297.    Laura Drubin

298.    Donald Dunbar, individually and/or on behalf of the Donald Dunbar IRA

299.    Alan S. Duncan, individually and/or on behalf of the Alan S. and Carolyn A. Duncan Declaration of Trust Dated 9/3/98

300.    Carolyn A. Duncan, individually and/or on behalf of the Alan S. and Carolyn A. Duncan Declaration of Trust Dated 9/3/98

301.    Charles B. Dunn, IV, individually and/or on behalf of the Charles B. Dunn, IV Trust dated 4/4/00 and Charles B. Dunn, IV Trust dated 8/12/05

302.    Ford S. Dunton

303.    Penny Dupin

304.    William Dupin

305.    Ellen V. Dustman

306.    Cynthia Deann Dutt, individually and/or on behalf of the C. Deann Dutt Trust and the Wayne A. Dutt Trust

307.    Wayne A. Dutt, individually and/or on behalf of the C. Deann Dutt Trust and the Wayne A. Dutt Trust

308.    Jack L. Dysart

309.    Carol A. Eastland, individually and/or on behalf of the Eastland Family Joint Living Trust Dated 1/18/00

310. William C. Eastland, individually and/or on behalf of the Eastland Family Joint Living Trust Dated 1/18/00

311. Monica C. Ebaugh

312. Karen Eberlin

313. Raymond J. Eberlin

314. Robert Roy Ecker

315. Carol A. Eller

316. Jonathan M. Eller, individually and/or on behalf of the Jonathan M. Eller Inc., a California Corporation

317. Cynthia Elowitz

318. Scott J. Elowitz

319. Dr. David R. Enrico

320. Dr. Bonny K. Enrico

321. Harold Epstein, individually and/or on behalf of the Harold Epstein Revocable Living Trust Dated 2/14/91

322. Dolores Y. Erickson

323. Eric T. Erickson

324. Ruth A. Errington, individually and/or on behalf of the Ruth A. Errington Living Trust Dated 11/22/04

325. William F. Errington

326. Cindy Essaff, individually and/or on behalf of the Essaff Family Trust dated 6/18/02

327. Robert Essaff, individually and/or on behalf of the Essaff Family Trust dated 6/18/02

328. Melinda Estevez

329. Richard D. Estevez

330. John P. Everett

331. James F. Eves, individually and/or on behalf of the James F. Eves IRA

332. Denise F. Fager, individually and/or on behalf of the Denise F. Fager Revocable Trust Under Agreement dated 2/28/03

333. Byrne E. Falke, Sr., individually and/or on behalf of Village Hardware Pension Trust and the Byrne E. Falke Living Trust

334. Bruce Falkenborg, individually and/or on behalf of Sierra West, Inc., a Nevada corporation

335. Marguerite Falkenborg, individually and/or on behalf of the Marguerite Falkenborg 2000 Trust Dated 6/20/00 and Falkenborg Family LLC

336. Brenda Falvai-Powers

337. Emily T. Farrah, individually and/or on behalf of the Farrah Family Trust Dated 9/18/03

338. Joseph A. Farrah, individually and/or on behalf of the Farrah Family Trust Dated 9/18/03 and the Julia Farrah Revocable Trust Dated 10/8/92

339. Michael R. Farrah, individually and/or on behalf of the Julia Farrah Revocable Trust Dated 10/8/92

340. Nicholas Farrah, individually and/or on behalf of the Julia Farrah Revocable Trust Dated 10/8/92

341. Carol M. Favro, individually and/or on behalf of the Favro Trust Dated 9/14/00

342. William H. Favro, individually and/or on behalf of the Favro Trust Dated 9/14/00

343. Angela B. Fenlon

344. Patrick F. Fenlon

345. Patricia Ferguson, individually and/or on behalf of the Ferguson Living Trust Dated 6/28/00

346. Christopher J. Fernandes

347.   Dionisio A. Fernandes

348.   Fiola F. Fernandes

349.   Jason D. Fernandes

350.   Melissa A. Fernandes

351.   Larry Fernandez, individually and/or on behalf of the Fernandez Family Trust Dated 6/20/84

352.   Evelyn C. Ferrera

353.   R. David Ferrera, individually and/or on behalf of the R. David Ferrera IRA and the Sacramento Research Medical Group Defined Benefit Pension Plan

354.   Arlene J. Fine, individually and/or on behalf of the Arlene J. Fine IRA

355.   Lewis H. Fine, individually and/or on behalf of the Lewis H. Fine IRA

356.   Karen B. Finkel, individually and/or on behalf of the Finkel Family Trust Dated 7/26/05

357.   Ronald G. Finkel, individually and/or on behalf of the Finkel Family Trust Dated 7/26/05

358.   Richard T. Fiory, individually and/or on behalf of Topflight Specs Profit Sharing Plan, and the Richard T. Fiory Revocable Trust Dated 5/30/01

359.   M. Evelyn Fisher

360.   John L. Fisher

361.   Sharon R. Fitzgerald

362.   William B. Fitzgerald

363.   Betty R. Flood, individually and/or on behalf of the Flood Family Trust Dated 12/24/85

364.   Donald T. Flood, individually and/or on behalf of the Flood Family Trust Dated 12/24/85

365.    Tad Folendorf

366.    Timothy Folendorf, individually and/or on behalf of the Timothy Folendorf Trust Dated 3/21/00

367.    Allen Forbes

368.    Dianne E. Foreman, individually and/or on behalf of the Edwin and Dianne Foreman Trust

369.    Edwin L. Foreman, individually and/or on behalf of the Edwin and Dianne Foreman Trust

370.    Fred J. Foxcroft, individually and/or on behalf of the Foxcroft Living Trust Dated 1/10/02

371.    Roberta Foxcroft, individually and/or on behalf of the Foxcroft Living Trust Dated 1/10/02

372.    John V. Fragola

373.    Karen Frankel

374.    Stephen Frankel

375.    Edward C. Fraser, individually and/or on behalf of the Edward C. Fraser IRA and Fraser Atwater Properties, LLC

376.    Marjorie E. Fraser

377.    John R. Frederickson, individually and/or on behalf of the Frederickson Trust Dated 10/2/03

378.    Michelle L. Frederickson, individually and/or on behalf of the Frederickson Trust Dated 10/2/03

379.    Eric B. Freedus

380.    Linda P. Freedus

381.    Barbara Frey, individually and/or on behalf of the Frey Family Trust

382. Donald Frey, individually and/or on behalf of the Frey Family Trust

383. Alan B. Friedman

384. Robert G. Fuller, individually and/or on behalf of the Robert G. Fuller IRA and the RGF Revocable Trust

385. Theodore J. Fuller, individually and/or on behalf of the Fuller Family Foundation and the Fuller Family Trust Dated 5/29/97

386. Joan L. Fuller, individually and/or on behalf of the Fuller Family Trust Dated 5/29/97

387. Glenn W. Gaboury

388. Sharon M. Gaboury

389. Darlene C. Gage, individually and/or on behalf of Norscot Financial Corp. and the Dakota Trust Dated 9/16/96

390. Jerry L. Gage, individually and/or on behalf of Norscot Financial Corp. and the Dakota Trust Dated 9/16/96

391. Paul L. Garcell, individually and/or on behalf of What's On LP

392. Blair F. Garth

393. Frederick D. Garth

394. Alex G. Gassiot, individually and/or on behalf of the APG Trust Dated 7/5/00

395. Joan B. Gassiot, individually and/or on behalf of the Joan B. Gassiot 1987 Trust Dated 8/7/87 and the Joan B. Gassiot IRA

396. Edmund G. Gaylord

397. Aylene Geringer

398. Peter Gilbert, individually and/or on behalf of the Botton Living Trust Dated 11/17/00

399. Nancy R. Gilmour, individually and/or on behalf of the Nancy R. Gilmour IRA

400. Richard W. Gilmour, individually and/or on behalf of the Richard W. Gilmour IRA

401.    Marvin W. Gittelman

402.    Toby E. Gittelman

403.    Gale Gladstone-Katz, individually and/or on behalf of the Gale Gladstone-Katz Revocable Living Trust Dated 12/10/03

404.    Cynthia J. Godfrey, individually and/or on behalf of the William R. and Cynthia J. Godfrey Living Trust

405.    William R. Godfrey, individually and/or on behalf of the William R. and Cynthia J. Godfrey Living Trust

406.    Alicia Goffstein, individually and/or on behalf of the Robert and Alicia Goffstein Trust Dated 2/25/92

407.    Robert Goffstein, individually and/or on behalf of the Robert and Alicia Goffstein Trust Dated 2/25/92

408.    Nancy Golden

409.    Jack Goldenthal

410.    Sylvia Goldenthal

411.    Barry J. Goldstein

412.    Patricia B. Goldstein

413.    Martin Gonska, individually and/or on behalf of the Gonska Foundation, LLC, a Nevada Limited Liability Company

414.    James Paul Goode, individually and/or on behalf of the James Paul Goode IRA

415.    Rachelle A. Goodness, individually and/or on behalf of the Goodness Living Trust Dated 6/28/00

416.    Lynelle L. Goodreau

417.    Michael J. Goodwin

418.    Florence Goulding

419.     Kenneth Jerry Goulding

420.     Paul D. Graf

421.     Margaret A. Graf

422.     Celia Allen-Graham, individually and/or on behalf of the Graham Family Trust Dated 10/26/78

423.     Robin B. Graham, individually and/or on behalf of the Graham Family Trust Dated 10/26/78 and the Graham Family Marital Trust B Dated 2/13/97

424.     Betty Grant

425.     Gail A. Gray, individually and/or on behalf of the Robert W. and Gail A. Gray Revocable Trust

426.     Robert W. Gray, individually and/or on behalf of the Robert W. and Gail A. Gray Revocable Trust

427.     Michael H. Greeley, individually and/or on behalf of the Michael Greeley Trust Dated 7/27/00

428.     Bernard Greenblatt, individually and/or on behalf of the Bernard Greenblatt Living Trust Dated 7/15/96

429.     Vincent N. Greene

430.     Eunice A. Greene, individually and/or on behalf of the Greene Family Trust Dated 4/25/90

431.     Nelson R. Greene, individually and/or on behalf of the Greene Family Trust Dated 4/25/90

432.     Clarence J. Greenwald, individually and/or on behalf of the Clarence J. Greenwald IRA and The Greenwald Living Trust Dated 5/8/90

433.     Gertrude R. Greenwald, individually and/or on behalf of the Greenwald Living Trust Dated 5/8/90

434. Raymond T. Grenier, Jr., individually and/or on behalf of the Raymond T. Grenier, Jr. Trust Dated 2/10/93

435. Carter L. Grenz

436. Alan Groh, individually and/or on behalf of the Alan B. Groh IRA

437. Norma Lamb-Groves, individually and/or on behalf of the Norma Lamb-Groves Trust Dated 2/18/03

438. Wynn A. Gunderson

439. Lorraine J. Gunderson

440. Toby A. Gunning

441. Barbara L. Gunther

442. Brenda G. Hadjigeorgalis

443. Michael Hadjigeorgalis

444. George W. Hall, individually and/or on behalf of the George W. Hall and Susan P. Hall Revocable Family Trust

445. Susan P. Hall, individually and/or on behalf of the George W. Hall and Susan P. Hall Revocable Family Trust

446. Joanne Halvorson

447. Suzanne M. Halvorson, individually and/or on behalf of the Suzanne M. Halvorson Trust Dated 3/21/03

448. Thomas L. Halvorson

449. Charles Hamm

450. Darlene Hammond, individually and/or on behalf of the Dar Living Trust Dated 2/12/03

451. Kris J. Hamper

452.	Gloria W. Handelman, individually and/or on behalf of the Handelman Charitable Remainder Unitrust Dated 5/3/97

453.	Jim Handelman

454.	William L. Hane, individually and/or on behalf of Mesa LLC, a Nevada Limited Liability Company

455.	Stan A. Hanes, individually and/or on behalf of the Stan A. Hanes and Vicki M. Hanes Revocable Trust Dated 9/15/03 and the S.A. Hanes Profit Sharing Plan

456.	Vicki M. Hanes, individually and/or on behalf of the Stan A. Hanes and Vicki M. Hanes Revocable Trust Dated 9/15/03

457.	Donna J. Hansen, individually and/or on behalf of the Hansen Family Trust Dated 6/6/89

458.	Kenneth L. Hansen, individually and/or on behalf of the Hansen Family Trust Dated 6/6/89

459.	Paul Hargis

460.	Susan Gail Hargis

461.	Gayle Harkins, individually and/or on behalf of the Lisek Family Trust

462.	Jennifer J. Harmon

463.	Dwight W. Harouff, individually and/or on behalf of Gold Plated LLC and the Harouff Charitable Remainder Trust Dated 9/5/96

464.	Mary Ann Harouff, individually and/or on behalf of the Harouff Charitable Remainder Trust Dated 9/5/96

465.	Beverly J. Harrington

466.	Suze Harrington

467.	Thomas T. Harrington

468.    Marguerite Harrison, individually and/or on behalf of the Harrison Family Trust Dated 7/27/99

469.    Thomas B. Harrison, individually and/or on behalf of the Harrison Family Trust Dated 7/27/99

470.    Kay J. Hart

471.    Marisa D. Harvey

472.    Jerome L. Harvey, Jr.

473.    Kevin J. Haselhorst

474.    John D. Hathcock

475.    Susan K. Hathcock

476.    Curtis Hattstrom, individually and/or on behalf of the Curtis Hattstrom IRA

477.    Virginia Hattstrom

478.    Bette Hauserman

479.    Earl Hauserman, individually and/or on behalf of the Earl Hauserman IRA

480.    Edwin L. Hausler, Jr., individually and/or on behalf of the Edwin Lowell Hausler, Jr., Living Trust Dated 1/3/92

481.    Glenda G. Haynes

482.    Leo L. Haynes

483.    Roland Hearn, individually and/or on behalf of the Roland J. Hearn and Risa V.S. Hearn Living Trust Dated 2/19/93

484.    Risa V.S. Hearn, individually and/or on behalf of the Roland J. Hearn and Risa V.S. Hearn Living Trust Dated 2/19/93

485.    James F. Heaton, individually and/or on behalf of the Heaton Family Trust Dated 12/4/95

486.    Nadine Heaton, individually and/or on behalf of the Heaton Family Trust Dated 12/4/95

487.    Rose O. Hecker

488.    Barbara Heffner, individually and/or on behalf of the Heffner Family Trust Dated 9/10/02

489.    Mike Heffner, individually and/or on behalf of the Heffner Family Trust Dated 9/10/02

490.    Jocelyne Helzer, individually and/or on behalf of the Jocelyne Helzer IRA

491.    Jay E. Henman, individually and/or on behalf of the Jay E. Henman Retirement Plan

492.    Judith J. Hennen

493.    Virgil P. Hennen

494.    Oliver Henry

495.    Allen Herd, individually and/or on behalf of the Herd Family Trust Dated 4/23/90

496.    Marilyn Herd, individually and/or on behalf of the Herd Family Trust Dated 4/23/90

497.    Allan R. Herndobler

498.    Sue Herndobler

499.    Brian K. Herndon, individually and/or on behalf of the Herndon Family Trust Dated 5/29/97

500.    Sharon L. Herndon, individually and/or on behalf of the Herndon Family Trust Dated 5/29/97

501.    Donald A. Herrmann

502.    Nancy E. Herrmann

503.    Donald L. Hess

504.    Judith A. Heyboer

505.   Philip Higerd, individually and/or on behalf of the Philip Higerd Family Trust Dated 5/30/03

506.   Brenda J. High, individually and/or on behalf of the Brenda High IRA

507.   Edward O. High

508.   Hamilton M. High, individually and/or on behalf of the Hamilton High IRA

509.   Marilyn Hilborn, individually and/or on behalf of the Marilyn Hilborn Trust Dated 11/18/93

510.   Robert W. Hill

511.   Christopher W. Hine, individually and/or on behalf of the Hine Family Trust Dated March 26, 2003

512.   Nancy D. Hine, individually and/or on behalf of the Hine Family Trust Dated March 26, 2003

513.   Jay P. Hingst, individually and/or on behalf of the Jay P. Hingst IRA

514.   Gail M. Hock

515.   Gail Hodes, individually and/or on behalf of the Gail Hodes Living Trust Dated 9/10/03

516.   Cheryl Hoff

517.   Richard K. Hoff

518.   John A. Hoglund, individually and/or on behalf of the John A. Hoglund IRA

519.   Patricia O. Hoglund

520.   Nienke Hohmann

521.   Marsha Holeyfield, individually and/or on behalf of the Holeyfield Family Trust Dated 1/12/01

522.   Richard Holeyfield, individually and/or on behalf of the Holeyfield Family Trust Dated 1/12/01

523.   Fred J. Holland, individually and/or on behalf of the Holland Family Trust Dated 1993

524.   Marjorie Holland, individually and/or on behalf of the Holland Family Trust Dated 1993

525.   Sandra I. Hollander, individually and/or on behalf of the Sandra I. Hollander Revocable Trust

526.   Lisa M. Hollifield

527.   Delwin C. Holt

528.   Basil Honikman

529.   Jane I. Honikman, individually and/or on behalf of the Honikman 1992 Trust Dated 12/28/92

530.   Linda Honikman

531.   Terence C. Honikman, individually and/or on behalf of the Honikman 1992 Trust Dated 12/28/92

532.   William T. Hoover

533.   Angela J. Howard

534.   Lisa Beth Howell

535.   Philip Stephen Howell

536.   Earl Howsley, Jr.

537.   Cathryn J. Hulse, individually and/or on behalf of the Hulse Family Trust

538.   Rodney C. Hulse, individually and/or on behalf of the Hulse Family Trust

539.   Todd Humphry, individually and/or on behalf of Action Sports Alliance USA, Inc.

540.   Richard Ianni

541.   Yelana V. Ilchuk

542.    John A. Ippolito, individually and/or on behalf of the Ippolito Family Trust Dated 8/31/89

543.    Patricia M. Ippolito, individually and/or on behalf of the Ippolito Family Trust Dated 8/31/89

544.    Stephen C. Irwin

545.    Evelyn Ives, individually and/or on behalf of the Melvin J. Ives and Evelyn A. Ives Bypass Trust Dated 1/6/93

546.    Melvin J. Ives, individually and/or on behalf of the Melvin J. Ives and Evelyn A. Ives Bypass Trust Dated 1/6/93

547.    Janice Janis, individually and/or on behalf of the Janice Janis Living Trust Dated 2/3/99

548.    Charles A. Jensen, individually and/or on behalf of the Ronald G. Doe Marital Trust Dated 1/6/95

549.    Jon P. Jensen

550.    Tamara L. Jensen

551.    Albert G. Johnson, Jr., individually and/or on behalf of the Johnson Family Trust Dated 2/17/98

552.    Arthur V. Johnson, individually and/or on behalf of the Johnson Family Trust Dated 2/18/04

553.    Jerry R. Johnson, individually and/or on behalf of the Jerry R. Johnson IRA

554.    Larry W. Johnson

555.    Marylin Johnson

556.    Norma J. Johnson, individually and/or on behalf of the Johnson Family Trust Dated 2/17/98

557.    Richard A. Johnson

558. Ronald A. Johnson

559. Susan A. Johnson, individually and/or on behalf of the Johnson Family Trust Dated 2/18/04

560. Delbert T. Johnston, Jr., individually and/or on behalf of the Johnston Estate Revocable Trust Dated 5/17/94

561. Diane E. Johnston, individually and/or on behalf of the Johnston Trust Dated 9/7/85

562. Phyllis Johnson

563. Rebecca J. Johnston, individually and/or on behalf of the Johnston Estate Revocable Trust Dated 5/17/94

564. Rodney L. Johnston, individually and/or on behalf of the Johnston Trust Dated 9/7/85

565. Deborah F. Josifko, individually and/or on behalf of the Josifko Family Living Trust

566. Mark R. Josifko, individually and/or on behalf of Fisko Ventures, LLC and the Josifko Family Living Trust

567. Staci Kaiser

568. Brigitte Kaneda, individually and/or on behalf of the Kaneda Living Trust Dated 4/3/02 and the Kaneda Living Trust Dated 5/30/02

569. Ken Kaneda, individually and/or on behalf of the Kaneda Living Trust Dated 4/3/02 and the Kaneda Living Trust Dated 5/30/02

570. Marge Karney

571. Jeffrey Craig Karr, individually and/or on behalf of the Phyllis Marina Karr Living Trust Dated 8/8/05

572. Phyllis Marina Karr, individually and/or on behalf of the Phyllis Marina Karr Living Trust Dated 8/8/05

573. Arthur E. Kebble, individually and/or on behalf of the Arthur E. Kebble and Thelma M. Kebble Family Trust Dated 5/1/95

574.   Thelma M. Kebble, individually and/or on behalf of the Arthur E. Kebble and Thelma M. Kebble Family Trust Dated 5/1/95

575.   John Keith, individually and/or on behalf of the John and Kathleen Keith Living Trust Dated 8/19/02

576.   Kathleen Keith, individually and/or on behalf of the John and Kathleen Keith Living Trust Dated 8/19/02

577.   Ana W. Kelley, individually and/or on behalf of the Kelley Family Trust Dated 10/10/91

578.   David G. Kelley, individually and/or on behalf of the Kelley Family Trust Dated 10/10/91

579.   Carol A. Kelly

580.   Frank Kern

581.   Carol Kesler, individually and/or on behalf of KM Financials, LLC, a Utah Corporation and the Carol Mortensen Family Trust Dated 9/9/90

582.   Lindsey Kesler, Jr., individually and/or on behalf of the Lindsey H. Kesler, Jr. IRA and the Lindsey H. Kesler Family Revocable Trust

583.   Thomas Kewell, individually and/or on behalf of Clawiter Associates, LLC, a California Limited Liability Company

584.   C. K. Khury, individually and/or on behalf of the C.K. Khury and Irene K. Bass Family Trust

585.   Richard Kim

586.   Will Klaus, individually and/or on behalf of Freedom Properties, Inc.

587.   Christine Klay, individually and/or on behalf of the Klay Living Trust Dated 7/11/90

588.   Othmar Klay, individually and/or on behalf of the Klay Living Trust Dated 7/11/90

589.   James T. Klega, individually and/or on behalf of the James and Shirley Klega Trust

590.    Shirley Klega, individually and/or on behalf of the James and Shirley Klega Trust

591.    James R. Kloepfer, individually and/or on behalf of the Kloepfer Trust Dated 11/27/00

592.    Nancy Ann Kloepfer, individually and/or on behalf of the Kloepfer Trust Dated 11/27/00

593.    Anna S. Knobel, individually and/or on behalf of the 1996 Knobel Trust Dated 9/5/96

594.    David W. Knobel, individually and/or on behalf of the 1996 Knobel Trust Dated 9/5/96

595.    Christina Knoles

596.    G. Robert Knoles

597.    Marcia J. Knox, individually and/or on behalf of the Marcia J. Knox Living Trust Dated 8/16/04

598.    Louise Alport Kolberg, individually and/or on behalf of the Louise A. Kolberg Revocable Trust

599.    Colette Kopf

600.    Klaus Kopf

601.    Harvey A. Kornhaber

602.    Dorothea K. Kraft

603.    Al Kraus

604.    Katrina Kraus

605.    Arthur L. Kriss, individually and/or on behalf of the Arthur L. Kriss IRA

606.    Colita Kwiatkowski, individually and/or on behalf of the Kwiatkowski Revocable Trust

607.    Donald H. Kwiatkowski

608.    Paul Kwiatkowski, individually and/or on behalf of the Kwiatkowski Revocable Trust

609.   Sandra L. Kwiatkowski

610.   Wendy Kwong

611.   Patrice Labossiere, individually and/or on behalf of the Labossiere Family Trust Dated 3/20/87

612.   Dina Ladd

613.   Catherine D. Lafayette

614.   Joseph B. Lafayette

615.   Jack D. LaFlesch, individually and/or on behalf of the Jack D. LaFlesch IRA

616.   Gladys Lanzas

617.   Jose M. Lanzas

618.   Dolores Larson

619.   Gary Larson

620.   Ruth Ann Larson, individually and/or on behalf of the Larson Family Trust Dated 6/19/94

621.   Sidney L. Larson, individually and/or on behalf of the Larson Family Trust Dated 6/19/94

622.   Arla M. Lawrence, individually and/or on behalf of the James F. Lawrence and Arla Lawrence Revocable Trust Dated 1/19/04

623.   James F. Lawrence, individually and/or on behalf of the James F. Lawrence and Arla Lawrence Revocable Trust Dated 1/19/04

624.   Sharon S. Lazar

625.   Gene A. Leblanc, individually and/or on behalf of the Gene and Linda Leblanc Family Trust Dated 8/20/99

626.   Linda Leblanc, individually and/or on behalf of the Gene and Linda Leblanc Family Trust Dated 8/20/99

627.    Jon J. Lee

628.    Tracy Lee

629.    Janet L. Leedham, individually and/or on behalf of the Janet L. Leedham Revocable Trust Dated 12/21/98

630.    Milton H. Lees, III

631.    Carol Lefcourt, individually and/or on behalf of Carol Edward Associates

632.    James W. Lehr

633.    Julie Ann Lehr

634.    Kathleen F. Lehrmann, individually and/or on behalf of the Lehrmann Family Trust Dated 4/19/96

635.    Larry D. Lehrmann, individually and/or on behalf of the Lehrmann Family Trust Dated 4/19/96

636.    Carol Leiby, individually and/or on behalf of the Leiby Family 1992 Trust Dated 7/8/92

637.    Richard Leiby, individually and/or on behalf of the Leiby Family 1992 Trust Dated 7/8/92

638.    Bruce R. Lemar

639.    William H. Lenhart, individually and/or on behalf of the William H. Lenhart Living Trust

640.    Jorg U. Lenk, individually and/or on behalf of the Jorg U. Lenk IRA

641.    Irwin Levine, individually and/or on behalf of the Irwin Levine IRA

642.    Renee Levy, individually and/or on behalf of the RNR Living Trust Dated 10/1/04

643.    Robert Levy, individually and/or on behalf of the RNR Living Trust Dated 10/1/04

644.    James H. Lidster, individually and/or on behalf of the James H. Lidster Family Trust Dated 1/20/92

645.    Phyllus M. Lidster, individually and/or on behalf of the James H. Lidster Family Trust Dated 1/20/92

646.    Patricia Lincoln, individually and/or on behalf of the Stephen and Patricia Lincoln Trust Dated 8/21/03

647.    Stephen Lincoln, individually and/or on behalf of the Stephen and Patricia Lincoln Trust Dated 8/21/03

648.    Steve Lindquist, individually and/or on behalf of the Steve Lindquist Charitable Remainder Unitrust Dated 9/9/96

649.    Carold Diane Linthicum, individually and/or on behalf of the Linthicum Revocable Trust Dated 1/14/80

650.    James Allen Linthicum, individually and/or on behalf of the Linthicum Revocable Trust Dated 1/14/80

651.    Claire Lisek, individually and/or on behalf of the Lisek Family Trust

652.    Daniel B. Lisek, individually and/or on behalf of the Lisek Family Trust

653.    Douglas Littrell

654.    Joan Littrell

655.    Nicholas Loader, individually and/or on behalf of the Nicholas Loader Trust

656.    Ivan Loebs

657.    Jan Logan

658.    Boris M. Lokshin, individually and/or on behalf of the Boris Lokshin IRA and the Lokshin Family Trust Dated 6/3/96

659.    Mindy F. Lokshin, individually and/or on behalf of the Lokshin Family Trust Dated 6/3/96

660.    William R. Long

661.    Keith Lopeman

662.    La Creta Lopeman

663.    Richard J. Loughlin, individually and/or on behalf of the Loughlin Family Trust

664.    Roberta L. Loughlin, individually and/or on behalf of the Loughlin Family Trust

665.    Henri L. Louvigny, individually and/or on behalf of the Henri L. Louvigny IRA and the Henri Louvigny and Marcelle A. Louvigny Family Trust Dated 10/18/84

666.    Marcelle A. Louvigny, individually and/or on behalf of the Henri Louvigny and Marcelle A. Louvigny Family Trust Dated 10/18/84

667.    Mary M. Lowe, individually and/or on behalf of the Lowe Family Trust

668.    Robert L. Lowe, individually and/or on behalf of the Lowe Family Trust

669.    Janice Lucas, individually and/or on behalf of the Janice A. Lucas IRA

670.    Joanne Lukasavage

671.    William Lukasavage

672.    Mark Lurie, individually and/or on behalf of the Church of the Movement of Spiritual Inner Awareness

673.    Robert D. Lurie

674.    Barbara Sue Luthi, individually and/or on behalf of the Barbara Sue Luthi IRA

675.    Richard D. Luthi, individually and/or on behalf of the Richard D. Luthi Trust Dated 5/20/93

676.    Brant C. Lyall

677.    Kathy J. Lyall

678.    Thomas D. Lynch, individually and/or on behalf of the Thomas D. Lynch Family Foundation

679.    Erika G. Lynn

680.    Dianne D. Machock, individually and/or on behalf of the Eugene B. Machock and Dianne D. Machock Family Trust Dated 3/3/04

681.   Eugene B. Machock, individually and/or on behalf of the Eugene B. Machock and Dianne D. Machock Family Trust Dated 3/3/04

682.   Heidi Machock

683.   Scott Machock

684.   Rogie Madlambyan, individually and/or on behalf of the Rogie Madlambyan Trust Dated 2/22/05

685.   Evan J. Madow, individually and/or on behalf of the Evan J. Madow, D.C. Trust

686.   Diane M. Maguire, individually and/or on behalf of the John J. Maguire and Diane M. Maguire Living Trust Dated 8/4/00

687.   John J. Maguire, individually and/or on behalf of the John J. Maguire and Diane M. Maguire Living Trust Dated 8/4/00

688.   Lou O. Maldonado, individually and/or on behalf of the Maldonado Trust Under Agreement Dated 10/3/95

689.   John R. Mallin, Jr., individually and/or on behalf of the Mallin Family Trust Dated 7/12/99

690.   Marie T. Mallin, individually and/or on behalf of the Mallin Family Trust Dated 7/12/99

691.   Guido Mandarino

692.   John Manter

693.   Charles R. Maraden

694.   Alexander W. Marchuk

695.   Doreen W. Marchuk

696.   Alan M. Markus

697.   Trena L. Markus

698.  Don P. Marshall, individually and/or on behalf of the Don P. Marshall Trust Dated 7/18/95

699.  Mary I. Marson, individually and/or on behalf of the Marson Family Trust Dated 6/9/86

700.  Richard P. Marson, individually and/or on behalf of the Marson Family Trust Dated 6/9/86

701.  James T. Martin

702.  Jerrold T. Martin

703.  Pamela Jean Marton

704.  Gerald B. Marts

705.  Linda R. Marts

706.  Gladys Mathers

707.  Maria I. Mathieu

708.  Eddie Mayo

709.  Marti McAllister

710.  Alicia McBride

711.  Marlon McBride

712.  Michael R. McCartney

713.  Teresa R. McCartney

714.  James M. McConnell, individually and/or on behalf of the James M. McConnell IRA and the McConnell Family Trust Dated 12/3/81

715.  Maudrene F. McConnell, individually and/or on behalf of the McConnell Family Trust Dated 12/3/81

716.  Todd McGillick, individually and/or on behalf of TK & Associates, a Minnesota Company

717.    Michael T. McGrath, individually and/or on behalf of the 2001 Michael T. McGrath Revocable Trust Dated 12/11/01

718.    James E. McKnight

719.    Gary McMahon, individually and/or on behalf of the Gary McMahon Sep IRA

720.    Joann L. McQuerry

721.    William L. McQuerry

722.    Christina F. McShaffrey, individually and/or on behalf of the McShaffrey Living Trust Dated 3/27/81

723.    Harvey McShaffrey, individually and/or on behalf of the McShaffrey Living Trust Dated 3/27/81

724.    Bryan J. McWaters

725.    Lisa J. McWaters

726.    Marina Mehlman, individually and/or on behalf of the Marina Mehlman IRA

727.    Robert E. Meldrum

728.    Greg Milano

729.    Jane Milano

730.    Teri L. Melvin

731.    Joseph J. Melz

732.    Linda M. Melz

733.    Jack R. Mennis, individually and/or on behalf of the Jack Mennis IRA

734.    Susan A. Mennis

735.    Linda Merialdo, individually and/or on behalf of the Linda Merialdo Living Trust Dated 8/6/02

736.    Greg Milano

737.    Jane Milano

738.   Gerald B. Merz, individually and/or on behalf of the Merz Family Living Trust Dated 10/26/05

739.   Nancy J. Merz, individually and/or on behalf of the Merz Family Living Trust Dated 10/26/05

740.   Michael J. Messer

741.   Alain Michael, individually and/or on behalf of the Michael Family Trust Dated 12/4/03

742.   Dawn Levy Michael, individually and/or on behalf of the Michael Family Trust Dated 12/4/03

743.   Andre Michaelian, individually and/or on behalf of the Michaelian Holdings LLC, a Nevada Limited Liability Company

744.   Robert D. Mierau, individually and/or on behalf of the Mierau Living Trust Dated 9/14/98

745.   Sandra J. Mierau, individually and/or on behalf of the Mierau Living Trust Dated 9/14/98

746.   George Minar, individually and/or on behalf of the Virginia and George Minar Living Trust

747.   Virginia Minar, individually and/or on behalf of the Virginia and George Minar Living Trust

748.   Albert J. Mineconzo, individually and/or on behalf of the Albert J. Mineconzo Living Trust Dated 11/4/97

749.   Mae Mineo, individually and/or on behalf of the Mae Mineo Trust Dated 3/23/00

750.   Michelle L. Mitchell

751.   Todd O. Mitchell

752.   Gary Moberly, individually and/or on behalf of the Gary Moberly IRA

753.    Karen Moberly, individually and/or on behalf of the Karen S. Moberly IRA

754.    Charles A. Mohler on behalf of the Bernard Greenblatt Living Trust

755.    Matthew Molitch, individually and/or on behalf of the Molitch 1997 Trust and the Matthew Molitch IRA

756.    Jeannie M. Monroe

757.    Wesley L. Monroe

758.    Ronald K. Monteseno

759.    William L. Montgomery, Jr., individually and/or on behalf of the Guaranty Loan Account

760.    Gene Montoya

761.    Harold G. Moody, individually and/or on behalf of the Moody Family Trust

762.    Mary J. Moody, individually and/or on behalf of the Moody Family Trust

763.    Arthur B. Moore

764.    Ernest J. Moore

765.    Patrick J. Moore, individually and/or on behalf of the Muks Realty, LLC, a California Limited Liability Company

766.    Raymond C. Moore

767.    Rose Moore

768.    William Richard Moreno

769.    Rosalie A. Morgan, individually and/or on behalf of the Rosalie A. Morgan IRA and the Rosalie Allen Morgan Trust Dated 1/31/03

770.    Nadine Morton

771.    Geoffrey Mott, individually and/or on behalf of the STSK Investments LLC

772.    George J. Motto, individually and/or on behalf of the George J. Motto IRA

773.   David W. Mounier, individually and/or on behalf of the Donald S. Tomlin and Dorothy R. Tomlin Revocable Trust Dated 10/24/79

774.   Frank J. Murphy

775.   James Murphy, individually and/or on behalf of the Murphy Family Trust

776.   Margaret F. Murphy

777.   Tracy Murphy, individually and/or on behalf of the Murphy Family Trust

778.   Jean H. Murray, individually and/or on behalf of the Jean H. Murray Separate Property Trust Dated 9/12/02

779.   Kardakh Natto, individually and/or on behalf of D&K Partners, Inc., a Nevada corporation

780.   Kelly F. Neal

781.   Carmen Neidig

782.   Dan F. Nelson

783.   Teri Nelson

784.   Gary Nelson, individually and/or on behalf of G&L Nelson Limited Partnership

785.   Linda Nelson, individually and/or on behalf of G&L Nelson Limited Partnership

786.   Gloria J. Nelson

787.   James S. Nelson

788.   James S. Nelson, IV

789.   Fred G. Neufeld, individually and/or on behalf of the Fred G. Neufeld IRA

790.   Karen Ness

791.   Kevin Ness

792.   Daniel Newman, individually and/or on behalf of the Daniel D. Newman Trust Dated 11/1/92

793.   David R. Newman, individually and/or on behalf of the Newman Trust Dated 1/26/94

794.   Freda Newman, individually and/or on behalf of the Freda Newman Trust Dated 7/26/84

795.   Elsie D. Newman, individually and/or on behalf of the Newman Family Trust Dated 9/30/97

796.   Larry Newman, individually and/or on behalf of the Newman Family Trust Dated 9/30/97

797.   Sandra L. Newman, individually and/or on behalf of the Newman Trust Dated 1/26/94

798.   Aleath Nicosia, individually and/or on behalf of the Benjamin and Aleath Nicosia Family Trust Dated 5/10/02

799.   Benjamin Nicosia, individually and/or on behalf of the Benjamin and Aleath Nicosia Family Trust Dated 5/10/02

800.   Richard A. Nielsen, individually and/or on behalf of the Richard A. Nielsen Inc. Profit Sharing Plan and Richard A. Nielsen, Inc., a California Corporation

801.   Allen M. Nirenstein, individually and/or on behalf of the Allen M. Nirenstein and Dorothy H. Nirenstein 1992 Revocable Trust

802.   Dorothy H. Nirenstein, individually and/or on behalf of the Allen M. Nirenstein and Dorothy H. Nirenstein 1992 Revocable Trust

803.   John Nix

804.   Lisa Nix

805.   Roger Noorthoek

806.   Stanley M. Novara, individually and/or on behalf of the Stanley M. Novara Family Trust Dated 11/12/04

807.   Joan Nunes

808.    Henry Obermuller, individually and/or on behalf of the Henry and Mengia Obermuller Trust Dated 9/14/90

809.    Mengia Obermuller, individually and/or on behalf of the Henry and Mengia Obermuller Trust Dated 9/14/90

810.    Olga O'Buch, individually and/or on behalf of the Olga O'Buch Trust Dated 5/28/98

811.    Cathleen B. O'Connor, individually and/or on behalf of the O'Connor Revocable Trust UTD Dated 9/17/97

812.    Robert H. O'Connor, individually and/or on behalf of the O'Connor Revocable Trust UTD Dated 9/17/97

813.    Robert L. Ogren, individually and/or on behalf of the Robert L. Ogren Trust Dated 6/30/92

814.    Betty R. Ogren

815.    William W. Ogren

816.    Irene R. O'Hare, individually and/or on behalf of the Irene R. O'Hare Trust Dated 7/28/88

817.    Diana A. Oldham

818.    David M. Olds

819.    Sally W. Olds

820.    Kevin Olsen, individually and/or on behalf of the Universal Management, Inc.

821.    Annie Omaye, individually and/or on behalf of the Omaye 1990 Trust

822.    Stanley Omaye, individually and/or on behalf of the Omaye 1990 Trust

823.    Adrian J.R. Oosthuizen

824.    Catherine Oppio, individually and/or on behalf of the Catherine D. Oppio Trust Dated 2/11/04

825.    John E. O'Riordan

826.   Sonhild A. O'Riordan

827.   Veslav Orvin

828.   Aaron I. Osherow, individually and/or on behalf of the Osherow Trust Dated 9/11/89

829.   Paul Oster

830.   Franklin D. Ott, individually and/or on behalf of the Ott Family Revocable Trust Dated 4/29/98

831.   Kathryn R. Ott, individually and/or on behalf of the Ott Family Revocable Trust Dated 4/29/98

832.   William J. Ovca, Jr., individually and/or on behalf of Ovca Associates, Inc. Defined Pension Plan

833.   Lyn Owen

834.   David A. Palmer, individually and/or on behalf of the Palmer Family Trust UA 2/13/90

835.   Nanci S. Palmintere, individually and/or on behalf of the Palmintere Revocable Trust Dated 6/19/98

836.   Philip A. Palmintere, individually and/or on behalf of the Palmintere Revocable Trust Dated 6/19/98

837.   Harold E. Pals, individually and/or on behalf of the Harold E. Pals IRA

838.   Edward Panyrek, individually and/or on behalf of the Edward and Joan Panyrek Trust Dated 8/11/05

839.   Joan Panyrek, individually and/or on behalf of the Edward and Joan Panyrek Trust Dated 8/11/05

840.   Cynthia Ann Pardee, individually and/or on behalf of the Cynthia Ann Pardee Trust Dated 6/20/03

841.   Betty R. Pardo, individually and/or on behalf of the Betty R. Pardo IRA

842.   Lexey S. Parker

843.   Henry E. Pattison

844.   Ruth V. Pattison

845.   Shirley Payne

846.   Jennefer C. Peele, individually and/or on behalf of the Peele Spousal Trust Dated 2/10/87

847.   Bill Penn, individually and/or on behalf of the Penn Family Trust Dated 1/20/90

848.   Isa Penn, individually and/or on behalf of the Penn Family Trust Dated 1/20/90

849.   Eric S. Perlman, individually and/or on behalf of Perlman Investment Partners L.P., a California Limited Partnership

850.   Lynn R. Perlman, individually and/or on behalf of the Robert H. and Lynn R. Perlman Trust

851.   Robert H. Perlman, individually and/or on behalf of the Robert H. and Lynn R. Perlman Trust

852.   Ronald K. Peters, individually and/or on behalf of the Peters Family Trust Dated 7/22/00

853.   Andrew R. Peterson, individually and/or on behalf of the Andrew R. Peterson and Sharon Peterson 1991 Living Trust

854.   Sharon Peterson, individually and/or on behalf of the Andrew R. Peterson and Sharon Peterson 1991 Living Trust

855.   Robert D. Phillips

856.   Holly J. Pickerel

857.   Vickie Pieper, individually and/or on behalf of the Vickie Pieper Living Trust

858.   Jerry Pietryk

859.   Leeann Pietryk

860.    Donald H. Pinsker

861.    Nellie Pleser, individually and/or on behalf of the Pleser Family Trust Dated 1/28/00

862.    Charles B. Plunkett, individually and/or on behalf of the Charles B. Plunkett Revocable Trust Dated 10/25/94

863.    Arthur Polacheck

864.    Glorianne Polacheck

865.    Patricia A. Pontak, individually and/or on behalf of the Pontak Wong Revocable Trust Dated 1/19/04

866.    Timothy J. Porter, individually and/or on behalf of the Timothy J. Porter IRA

867.    Clair W. Potter, individually and/or on behalf of the Clair W. Potter Trust

868.    Martha W. Potter, individually and/or on behalf of the Martha W. Potter Revocable Trust

869.    Hans J. Prakelt

870.    Anthony Prescia, individually and/or on behalf of the Anthony and Nancy Prescia Family Trust

871.    Nancy Prescia, individually and/or on behalf of the Anthony and Nancy Prescia Family Trust

872.    James C. Presswood, individually and/or on behalf of James C. Presswood IRA

873.    Sharon E. Presswood, individually and/or on behalf of Sharon Presswood IRA

874.    Charlene J. Prins, individually and/or on behalf of the Norman and Charlene Prins Revocable Living Trust Dated 10/29/03

875.    Norman D. Prins, individually and/or on behalf of the Norman and Charlene Prins Revocable Living Trust Dated 10/29/03

876.    Lori A. Procter

877.    Marion Quinn, individually and/or on behalf of the Quinn Family Trust Dated 1/11/00

878.    Russell Quinn, individually and/or on behalf of the Quinn Family Trust Dated 1/11/00

879.    Dennis Raggi

880.    Irit Raichbart

881.    Michael Raichbart

882.    John M. Randall, individually and/or on behalf of the Randall Revocable Living Trust Dated 5/17/90

883.    Shirley A. Randall, individually and/or on behalf of the Randall Revocable Living Trust Dated 5/17/90

884.    Benita M. Rashall

885.    Charles P. Rashall, individually and/or on behalf of the Charles P. Rashall Living Trust

886.    Elan Reddell, individually and/or on behalf of the Elan Reddell Revocable Living Trust Dated 8/4/03

887.    Lisa K. Redfern

888.    Cynthia Reed

889.    Linda S. Reed, individually and/or on behalf of the Linda S. Reed IRA

890.    Michael Reed, individually and/or on behalf of the Michael Reed IRA

891.    Mary Ann Rees, individually and/or on behalf of the Mary Ann Rees IRA and the Noel and Mary Ann Rees Family Trust

892.    Noel E. Rees, individually and/or on behalf of the Noel E. Rees IRA and the Noel and Mary Ann Rees Family Trust

893.    Annemarie Rehberger, individually and/or on behalf of the Rehberger Family Trust Dated 6/17/92, Acres Profit Sharing Plan, Acres Corporation, a Nevada Corporation, and Acres Corporation Defined Benefit Pension Plan

894.    Jeana L. Rehberger

895.    Michael C. Rehberger

896.    Linda C. Reid

897.    Mark Rendon, individually and/or on behalf of Stellar Innovations, Inc.

898.    Anna Reynolds

899.    Emil Reynolds

900.    Michael H. Ricci

901.    M. Anne Riccio

902.    Jean G. Richards, individually and/or on behalf of the Jean G. Richards Trust Dated 9/30/99

903.    Marvin Rickling, individually and/or on behalf of the Rickling Family Trust

904.    Rosemary Rickling, individually and/or on behalf of the Rickling Family Trust

905.    Rachel Riehle

906.    Harvey Andrew Rineer III, individually and/or on behalf of the Harvey Andrew Rineer III Trust Dated 11/15/02

907.    Dorothy Rizzuto, individually and/or on behalf of the Joseph N. Rizzuto Family Trust

908.    Joseph N. Rizzuto, individually and/or on behalf of the Joseph N. Rizzuto Family Trust

909.    Cassandra J. Robbins

910.    Donna R. Roberts

911.    Robert W. Roberts

912.    Alan Robinson

913.   Gail Robinson

914.   Judith Robinson, individually and/or on behalf of the Judith Robinson Revocable Trust

915.   Robert R. Rodriguez, individually and/or on behalf of the Robert R. Rodriguez Revocable Trust Dated 1/31/06

916.   Elisabeth Rogal

917.   Michael G. Rogal

918.   James W. Rogers

919.   Rebecca A. Rogers, individually and/or on behalf of the Rebecca A. Rogers Trust Dated 9/18/96

920.   Ilene Roisentul, individually and/or on behalf of the Roisentul Family Trust Dated 9/18/96

921.   Saul Roisentul, individually and/or on behalf of the Roisentul Family Trust Dated 9/18/96

922.   Anita Rosenfield

923.   Deborah J. Rosensein

924.   Stuart M. Rosenstein

925.   Arnold Rosenthal

926.   David Rosner, individually and/or on behalf of the David Rosner Revocable Trust Dated 1/5/2005

927.   Lee Rotchy, individually and/or on behalf of the Lee Rotchy Trust dated 12/5/00

928.   Kathleen M. Rowley, individually and/or on behalf of the Robert J. Rowley and Kathleen M. Rowley Trust

929.   Robert J. Rowley, individually and/or on behalf of the Robert J. Rowley and Kathleen M. Rowley Trust

930.     Mary E. Russell, individually and/or on behalf of the Russell Revocable Trust Dated 9/21/93

931.     Ingrid A. Rutherford, individually and/or on behalf of the Ingrid A. Rutherford Family Trust Dated 7/8/99

932.     Burton M. Sack, individually and/or on behalf of the Scott A. Sack Irrevocable Trust Dated 3/18/94 and the David A. Sack Irrevocable Trust Dated 3/28/94

933.     Scott A. Sack

934.     Gregory V. Sak, individually and/or on behalf of the Sak Family Trust Dated 12/17/04

935.     Jana L. Sak, individually and/or on behalf of the Sak Family Trust Dated 12/17/04

936.     Daniel N. Salerno, individually and/or on behalf of the Daniel and Virginia Salerno Family Trust Dated 8/9/89

937.     Virginia P. Salerno, individually and/or on behalf of the Daniel and Virginia Salerno Family Trust Dated 8/9/89

938.     Murray Salit, individually and/or on behalf of Yankee Holdings LLC, an Arizona Corporation

939.     Randy M. Sanchez, individually and/or on behalf of the Randy Sanchez IRA and the Sanchez Living Trust Dated 10/13/03

940.     Sharon Sanchez, individually and/or on behalf of the Sanchez Living Trust Dated 10/13/03

941.     Helena Sarmanian

942.     Peter Sarmanian

943.     Mark A. Sauceda

944.     Kenneth D. Sawyer

945.    Howard C. Sayler, individually and/or on behalf of the Sayler Family Trust Dated 9/2/98

946.    Phyllis L. Sayler, individually and/or on behalf of the Sayler Family Trust Dated 9/2/98

947.    Edward J. Scheidegger, individually and/or on behalf of the Scheidegger Family Trust Dated 12/26/01

948.    Robert A. Schell, individually and/or on behalf of the Robert A. Schell IRA and the Schell Family Trust Dated 8/21/92

949.    Ruth M. Schell, individually and/or on behalf of the Schell Family Trust Dated 8/21/92

950.    Janet E. Schnadt, individually and/or on behalf of the Schnadt Trust Dated 6/18/93

951.    William E. Schnadt, individually and/or on behalf of the Schnadt Trust Dated 6/18/93

952.    Arthur P. Schnitzer, individually and/or on behalf of the Schnitzer Living Trust Dated 10/29/91

953.    Lynn S. Schnitzer, individually and/or on behalf of the Schnitzer Living Trust Dated 10/29/91

954.    Edward L. Schoonover, individually and/or on behalf of the Schoonover Family Trust Dated 2/23/04

955.    Susan A. Schoonover, individually and/or on behalf of the Schoonover Family Trust Dated 2/23/04

956.    Kenneth Schulz

957.    Mary Kay Bryan-Schulz

958.    A. Andrew Schwarzman

959.    Shirley E. Schwartz, individually and/or on behalf of the Shirley E. Schwartz Revocable Living trust Dated 8/19/94

960.    Garrett Scott, individually and/or on behalf of Rare Earth Real Estate

961.    Mary E. Scott, individually and/or on behalf of Rare Earth Real Estate

962.    Barbara A. Senfeld

963.    Milton B. Senfeld

964.    Nancy C. Serino, individually and/or on behalf of the Nancy C. Serino IRA

965.    Ronald C. Shackelford, individually and/or on behalf of the Shackelford Family Trust Dated 9/21/04

966.    Steven A. Shane, individually and/or on behalf of the Steven A. Shane IRA

967.    Ira Jay Shapiro

968.    Robert Shapiro

969.    Marion C. Sharp, individually and/or on behalf of the Davis Family Trust and the Marion C. Sharp Trust, the Marion C. Sharp IRA

970.    James W. Shaw, individually and/or on behalf of the James W. Shaw IRA

971.    Sue D. Robinson-Shaw

972.    Evelyn Sheerin, individually and/or on behalf of the Chris H. Sheerin and Evelyn Asher Sheerin 1984 Trust

973.    Joann Sheerin, individually and/or on behalf of Sheerin, Inc., a Nevada Corporation

974.    Ralph A. Shively

975.    Kenneth Shope, individually and/or on behalf of Billy Shope, Jr. Family Limited Partnership

976.    Glenda Lambert Sibley, individually and/or on behalf of the Glenda Lambert Sibley IRA

977.    Sydney J. Siemens, individually and/or on behalf of the Sydney J. Siemens 1997 Revocable Trust Dated 5/23/97

978.    Leslie P. Siggs

979.   Robert G. Sikorski

980.   Alan R. Simmons

981.   Judith B. Simmons

982.   Alan Simon, individually and/or on behalf of the Simon Family Trust 2000

983.   Carol Simon, individually and/or on behalf of the Simon Family Trust 2000

984.   James B. Simpson, individually and/or on behalf of the Simpson Family Trust Dated 1/13/04

985.   Janet D. Simpson, individually and/or on behalf of the Simpson Family Trust Dated 1/13/04

986.   Tara Sindler

987.   Berta Naomi Singer

988.   Leon E. Singer, individually and/or on behalf of the Leon E. Singer and Suzy Singer Revocable Trust Dated 6/30/99

989.   Suzy Singer, individually and/or on behalf of the Leon E. Singer and Suzy Singer Revocable Trust Dated 6/30/99

990.   Dennis Sipiorski

991.   Donna Sipiorski

992.   Daryl B. Sisk, individually and/or on behalf of The Sisk Family Foundation

993.   Barbara Sklar, individually and/or on behalf of the Barbara Sklar Revocable Living Trust Dated 8/31/01

994.   Susan M. Slater

995.   Herbert Slovis

996.   Julie B. Slovis

997.   Charles H. Small, individually and/or on behalf of the Charles Henry Small Revocable Living Trust

998.    Bradford H. Smith

999.    Joyce E. Smith, individually and/or on behalf of the Joyce E. Smith Trust Dated 11/3/99

1000.   Maggie Smith

1001.   Margaret M. Smith, individually and/or on behalf of the Raymond M. Smith Revocable Trust Dated 3/12/79

1002.   M.L. Smith, individually and/or on behalf of the M.L. and Pauline Smith Family Living Trust

1003.   Oliver R. Smith, individually and/or on behalf of the Oliver F. Smith Incorporated Profit Sharing Plan

1004.   Pauline Smith, individually and/or on behalf of the M.L. and Pauline Smith Family Living Trust

1005.   Raymond M. Smith, individually and/or on behalf of the Raymond M. Smith Revocable Trust Dated 3/12/79

1006.   Frank Snopko, individually and/or on behalf of the Snopko 1981 Trust Dated 10/27/81, Rocklin/Redding LLC, and the Charlotte Snopko Marital Trust Dated 8/31/04

1007.   Heidi Snow

1008.   Jack Snow

1009.   Herbert Sonnenklar

1010.   Norma R. Sonnenklar

1011.   Francesco Soro, individually and/or on behalf of the Francesco Soro Retirement Plan

1012.   Barbara J. Speckert, individually and/or on behalf of the Barbara J. Speckert Revocable Living Trust Dated 6/9/05

1013.   Robert S. Speckert, individually and/or on behalf of the Robert Speckert IRA and the Robert S. Speckert Revocable Living Trust Dated 6/11/92

1014.   Gilbert L. Sperry, individually and/or on behalf of the Sperry Family Trust Dated 4/15/97

1015.   Charles J. Spina, individually and/or on behalf of the Spina Family Trust Dated 3/8/01

1016.   Nancy H. Spina, individually and/or on behalf of the Spina Family Trust Dated 3/8/01

1017.   Clifton H. Spindle

1018.   Verna R. Spindle

1019.   Carol A. Squicci, individually and/or on behalf of the Carol A. Squicci Revocable Trust

1020.   Arnold Stairman, individually and/or on behalf of the Arnold Stairman Profit Sharing Plan

1021.   Rosalind L. Stark, individually and/or on behalf of the Stark Family Trust Dated 4/2/84

1022.   Donna Stein, on behalf of Athanasia T. Stein

1023.   Jay S. Stein, individually and/or on behalf of the Jay S. Stein IRA and the Jay S. Stein 2000 Trust Dated 12/12/00 and the Jay S. Stein Charitable Remainder Unitrust Dated 7/15/02

1024.   Cynthia M. Steinmetz, individually and/or on behalf of the 2001 Steinmetz Family Trust

1025.   Nicholas A. Steinmetz, individually and/or on behalf of the 2001 Steinmetz Family Trust

1026.   Don Stephenson, individually and/or on behalf of Amberway Equities LLC

1027.   David G. Sterling, individually and/or on behalf of the Sterling Living Trust Dated 2/2/00

1028.   Joseph Sterling, individually and/or on behalf of the Sterling Family Trust Dated 6/14/02

1029. Mary Jane Sterling, individually and/or on behalf of the Sterling Living Trust Dated 2/2/00

1030. Theresa Sterling, individually and/or on behalf of the Sterling Family Trust Dated 6/14/02

1031. Mary Jude Stewart, individually and/or on behalf of the Stewart Family Trust Dated 1/15/98

1032. Michael D. Stewart, individually and/or on behalf of the Stewart Family Trust Dated 1/15/98

1033. Gordon N. Stimpson, individually and/or on behalf of the Stimpson Family Trust Dated 5/9/00

1034. Marjorie I. Stimpson, individually and/or on behalf of the Stimpson Family Trust Dated 5/9/00

1035. George F. Stone

1036. Margaret A. Stone

1037. Denise Storch, individually and/or on behalf of the Storch Family Trust Dated 5/3/04

1038. Ralph R. Storch, individually and/or on behalf of the Ralph R. Storch IRA and Storch Family Trust Dated 5/3/04

1039. Lesley Stricker

1040. Elizabeth Stryks Shaw

1041. Rand Sullivan

1042. Robert Sullivan, individually and/or on behalf of the Robert Sullivan IRA

1043. John Sumpolec, Jr., individually and/or on behalf of the Sumpolec 1989 Trust Dated 4/13/89

1044. Robert A. Susskind

1045.   Alvin M. Swanson, individually and/or on behalf of the Alvin M. Swanson and Grace E. Swanson Family Trust Dated 9/14/94

1046.   Grace E. Swanson, individually and/or on behalf of the Alvin M. Swanson and Grace E. Swanson Family Trust Dated 9/14/94

1047.   Leland K. Swanson, Sr., individually and/or on behalf of the Alvin M. Swanson and Grace E. Swanson Family Trust Dated 9/14/94

1048.   Lena M. Swanson, individually and/or on behalf of the Alvin M. Swanson and Grace E. Swanson Family Trust Dated 9/14/94

1049.   Lois J. Swanson

1050.   Beverly Swezey, individually and/or on behalf of the Donald Swezey and Beverly W. Swezey Trust Dated 2/20/01

1051.   Donald Swezey, individually and/or on behalf of the Donald Swezey and Beverly W. Swezey Trust Dated 2/20/01

1052.   Virginia Swilley, individually and/or on behalf of Laguna Paloma, Inc., a Texas Corporation

1053.   Ray Syfert, individually and/or on behalf of the Syfert Trust

1054.   Irene Markham-Tafoya

1055.   Carole Talan

1056.   Cyril Tammadge, individually and/or on behalf of Preswick Corp., a Nevada Corporation

1057.   Stanley Francis Tara, individually and/or on behalf of Sovereign Capital Advisors, LLC, a Nevada Limited Liability company

1058.   Elizabeth Tarr

1059.   Wayne P. Tarr

1060.   Joyce L. Taylor, individually and/or on behalf of the Taylor Living Trust Dated 2/27/98

1061.   Kerry S. Taylor, individually and/or on behalf of the Taylor Living Trust Dated 2/27/98

1062.   Kevin Taylor, individually and/or on behalf of the Kevin Taylor IRA and KTaylor GO Investments, Ltd., a Texas Company,

1063.   Louise Teeter, individually and/or on behalf of the Louise Teeter IRA Rollover

1064.   Norman Teeter

1065.   Joan B. Telloian

1066.   Malcolm Telloian, Jr.

1067.   Lawrence H. Tengan, individually and/or on behalf of the Lawrence H. Tengan and Lorraine K. Tengan Revocable Trust

1068.   Lorraine K. Tengan, individually and/or on behalf of the Lawrence H. Tengan and Lorraine K. Tengan Revocable Trust

1069.   Calvin Terrill, individually and/or on behalf of the Terrill Family Revocable Living Trust Dated 3/11/02

1070.   David M. Thatcher

1071.   Gary A. Thibault

1072.   Sandra C. Thibault

1073.   Bryan M. Thomas

1074.   Lori M. Thomas

1075.   Daryl D. Thompson, individually and/or on behalf of the Thompson 1993 Trust Dated 1/26/93

1076.   Gregory R. Thompson

1077.   Wilma Jean Thompson

1078.   Jack S. Tiano, individually and/or on behalf of an Accountancy Corporation Profit Sharing

1079.   Norman Tiano

1080.   Douglas Tichenor

1081.   Susan Tichenor

1082.   Hillari Tischler

1083.   Yit Tisoni

1084.   Laura J. Tomac

1085.   Steven B. Tomac

1086.   Dorothy R. Tomlin, individually and/or on behalf of the Donald S. Tomlin and Dorothy R. Tomlin Revocable Trust Dated 10/24/79

1087.   Donald S. Tomlin, individually and/or on behalf of the Donald S. Tomlin and Dorothy R. Tomlin Revocable Trust Dated 10/24/79

1088.   Dorothy Ton, individually and/or on behalf of the Ton 1998 Revocable Trust

1089.   James Gee Ton, individually and/or on behalf of the Ton 1998 Revocable Trust

1090.   Richard Tracy, individually and/or on behalf of the Reno Aeronautical Corporation Defined Benefit Plan

1091.   Ursula W. Tracy

1092.   Anton Trapman, individually and/or on behalf of the Anton Trapman Roth IRA and Anton Trapman IRA

1093.   Irene Trapman

1094.   Rory Triantos

1095.   John M. Tripp, individually and/or on behalf of the Tripp Family Trust 1997

1096.   Warren W. Tripp, individually and/or on behalf of T-2 Enterprises LLC, Tripp Enterprises, Inc., a Nevada Corporation, Tripp Enterprises, Inc. Restated Profit Sharing Plan, T-3 Enterprises LLC

1097.   Carlos A. Trujillo

1098.   Carol I. Turner, individually and/or on behalf of the Turner Family Trust Dated 12/15/2000

1099.   Paul M. Turner, individually and/or on behalf of the Turner Family Trust Dated 12/15/2000

1100.   Judy Turner, individually and/or on behalf of the T.J. Trust Dated 7/24/97

1101.   Thomas R. Turner, individually and/or on behalf of the T.J. Trust Dated 7/24/97

1102.   Peggy A. Valley, individually and/or on behalf of the Peggy Ann Valley IRA, The McLaughlin-Valley Trust Dated 2/24/97, and Vanguard Financial, Ltd.

1103.   Gilbert Van Damme

1104.   Eleanor Varelli

1105.   Nancy B. Ventura

1106.   Roy R. Ventura, Jr.

1107.   Marsha Vieira

1108.   Melody Violet

1109.   Marietta Voglis

1110.   Jackie Ray Vohs

1111.   Christiane Volpel, individually and/or on behalf of the Volpel Trust Dated 2/2/96

1112.   Gunter Volpel, individually and/or on behalf of the Volpel Trust Dated 2/2/96

1113.   Richard G. Vrbancic

1114.   Robert R. Wade, individually and/or on behalf of the Robert R. Wade Revocable Trust Dated 5/22/01

1115.   Shirley E. Wade, individually and/or on behalf of the Robert R. Wade Revocable Trust Dated 5/22/01

1116.   Kirsten Wagner

1117.   Linda M. Walker

1118.   Bruce D. Wallace, individually and/or on behalf of the B.D. W. 1987 Trust Dated 9/29/87

1119.   Ellen Walls, individually and/or on behalf of the Walls Family Trust Dated 12/10/97

1120.   Joseph P. Walls, individually and/or on behalf of the Walls Family Trust Dated 12/10/97

1121.   Dennis J. Ward, individually and/or on behalf of the Ward Trust Dated 5/21/96

1122.   Gary D. Ward, individually and/or on behalf of the Gary D. Ward IRA

1123.   Patricia A. Ward, individually and/or on behalf of the Ward Trust Dated 5/21/96

1124.   Carl M. Warfield

1125.   Laura W. Warfield

1126.   Colleen Weaver

1127.   John Weaver

1128.   Patricia Ann Webber, individually and/or on behalf of the Webber Family Trust Dated 10/31/89

1129.   Brigitte S. Weber

1130.   Heinrich R. Weber

1131.   Norm Webster

1132.   Ardis Weible, individually and/or on behalf of the Weible 1981 Trust Dated 6/30/81

1133.   Dean F. Weible, individually and/or on behalf of the Weible 1981 Trust Dated 6/30/81

1134.   Jerrold Weinstein, individually and/or on behalf of the Jerrold Weinstein Self Declaration Trust Dated 6/7/91

1135.   Andrew Welcher, individually and/or on behalf of the Welcher Family Trust Dated 7/13/99

1136.   Rosanne Welcher, individually and/or on behalf of the Welcher Family Trust Dated 7/13/99

1137.   Karen K. Wener

1138.   Kenneth A. Wener, individually and/or on behalf of the Kenneth A. Wener IRA

1139.   Tina M. Wener, individually and/or on behalf of the Tina M. Wener IRA

1140.   Lawrence D. Wengert, individually and/or on behalf of the Wengert Family Trust Dated 2/20/98

1141.   Dawn M. Wengert, individually and/or on behalf of the Wengert Family Trust Dated 2/20/98

1142.   Connie Westbrook

1143.   Rachel Wheeler, individually and/or on behalf of the Rachel Wheeler Trust

1144.   Mary Etta White

1145.   Robert White

1146.   Eugene C. Wiehe, individually and/or on behalf of the Eugene C. Wiehe Trust Dated 10/31/85

1147.   Gail Wilgar

1148.   Scott Wilgar

1149.   Barton R. Wilkinson

1150.   Dianna J. Wilkinson, individually and/or on behalf of the Dianna Wilkinson IRA

1151.   Joy Williams

1152.   Richard J. Williams, individually and/or on behalf of the Richard J. Williams Living Trust Dated 12/14/01

1153.   Carmel Winkler, individually and/or on behalf of the Winkler Family Trust Dated 3/13/86

1154.   Rudolf Winkler, individually and/or on behalf of the Rudolf Winkler IRA and the Winkler Family Trust Dated 3/13/86

1155.   Doris E. Winter, individually and/or on behalf of the Doris E. Winter Trust

1156.   Craig Wisch

1157.   Kathryn Wolfe, individually and/or on behalf of the LK Wolfe Family LP, a Nevada Limited Partnership

1158.   Loren Wolfe, individually and/or on behalf of the LK Wolfe Family LP, a Nevada Limited Partnership

1159.   Marlin L. Wonders

1160.   R. Yvonne Wonders

1161.   Darrell M. Wong, individually and/or on behalf of the Pontak Wong Revocable Trust Dated 1/19/04

1162.   Richard D. Wood, individually and/or on behalf of the Wood Family Living Trust

1163.   Robert D. Woods, individually and/or on behalf of the Wood Family Trust

1164.   Cynthia Work, individually and/or on behalf of the Work Holdings, Inc., an Arizona Corporation

1165.   Maryanne H. Worthing

1166.   Ralph E. Worthing

1167.   James C. Wu, individually and/or on behalf of The Wu Family Trust Dated 6/19/1991

1168.   Jeanne K. Wu, individually and/or on behalf of The Wu Family Trust Dated 6/19/1991

1169.   Kenneth H. Wyatt, individually and/or on behalf of the Kenneth H. Wyatt IRA, Kiwi-Nevada LP, and the Kenneth H. and Phyllis P. Wyatt Family Trust

1170.   Phyllis P. Wyatt, individually and/or on behalf of the Kenneth H. and Phyllis P. Wyatt Family Trust and the Phyllis P. Wyatt IRA

1171.   Anthony P. Wynn

1172.   Sheri J. Wynn

1173.   Mazal Yerushalmi

1174.   Robert J. Yoder, individually and/or on behalf of the Robert J. Yoder Defined Benefit Plan

1175.   Percy Young

1176.   Ruth Young

1177.   Richard L. Younge, individually and/or on behalf of the Richard L. Younge IRA

1178.   Allen Zalkind

1179.   Sandra Zalkind

1180.   Shahriar Zavosh

1181.   Joseph G. Zappulla

1182.   Carol A. Zappulla

1183.   Ken Zawacki, individually and/or on behalf of Zawacki, a California LLC

1184.   Anthony J. Zerbo

1185.   Marshall R. Zerbo

1186.   Franz J. Zimmer, individually and/or on behalf of the Franz J. Zimmer Revocable Trust Dated 2/5/97

1187.   Terry Zimmerman

1188.   Mark Zipkin

1189.   All Other Similarly Situated Direct Lenders Represented By Bickel & Brewer