1   Daniel T. Hayward, Esq.
    Nevada State Bar No. 5986
2   LAXALT & NOMURA, LTD.
    9600 Gateway Drive
3   Reno, Nevada 89521
4   dhayward@laxalt-nomura.com
    Telephone:  (775) 322-1170
5   Facsimile:  (775) 322-1865
    Attorneys for Defendants
6   David Blatt, Boris Piskun, Ron Friedman,
    Compass Financial Partners, LLC, Compass FP Corp.,
7   Compass Partners, LLC, Compass USA GP,
    LLC, Compass USA Holding, LLC, Compass USA, LP,
8   Compass USA SPE, LLC, Economic Growth Group, Inc.,
9   Repotex, Inc.

10              UNITED STATES DISTRICT COURT

11                 DISTRICT OF NEVADA

12  LEONARD C. ADAMS, et al.          )     Case No. 3:11-cv-00210-RCJ-VPC
                                      )
13              Plaintiffs,           )
                                      )
14                                    )
    v.                                )     **MOTION TO DISMISS**
15                                    )
    SILAR ADVISORS, LP, et al.,       )
16                                    )
                                      )
17              Defendants.           )
    _____ )
18

19       Defendants DAVID BLATT, BORIS PISKUN, RON FRIEDMAN, COMPASS

20  FINANCIAL PARTNERS, LLC, COMPASS FP CORP., COMPASS PARTNERS, LLC,

21  COMPASS USA GP, LLC, COMPASS USA HOLDING, LLC, COMPASS USA, LP,

22  COMPASS USA SPE, LLC, ECONOMIC GROWTH GROUP, INC., and REPOTEX, INC., by

23  and through their counsel of record, LAXALT & NOMURA, LTD., move the Court pursuant to

24  FRCP 12(b)(2) and 12(b)(6) for dismissal, in whole or in part, of Plaintiffs' claims against them.

25  This motion is based on the Second Amended Complaint, the following Memorandum of Points

26  and Authorities, and any additional information the Court may choose to consider.[1]

27

28  [1]     According to Plaintiffs' recent request to extend the time within which to serve Defendants Leonard Mezei
    and Jay Cohen have not yet been served.  (Motion, #74, 210 Case.)  Therefore, they are not parties to this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.**     **Introduction.**

The history of USACM bankruptcy and the prior related litigation is well known to this Court.  As discussed by Plaintiffs in their operative pleading, the Second Amended Complaint, "at least" 1,188 direct lenders, "as well as other similarly situated directly lenders represented by Bickel & Brewer," are now pursuing a self-styled follow-on lawsuit to the matter of *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, et al.*, Case No. 2:07-cv-00892-RCJ-GWF (the "892 Case").  (Second Amended Complaint, 2:1-8, hereinafter "2AC".)[2]

The Plaintiffs in this action have alleged the following claims for relief against the moving Defendants and others:[3]  (1) violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of the Nevada RICO Act; (3) elder abuse pursuant to NRS 41.1395; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) breach of fiduciary duty; (7) conversion; (8) civil conspiracy; (9) declaratory judgment / collateral estoppel; (10) constructive trust; and (11) attorney's fees.[4]

///

///

---

[2]     The moving Defendants have filed a Request for Judicial Notice concurrently with this Motion asking the Court to take judicial notice of certain matters contained in the Court's docket in the 892 Case.  This is appropriate, as Plaintiffs have referred extensively to the 892 Case in the Second Amended Complaint herein.

[3]     The Court should note that at paragraph 11 of the 2AC, Plaintiffs defined "Compass" to include the following:  "Defendants Compass Partners, LLC, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada and Delaware), Compass FP Corp., Compass USA Holding, LLC, Compass USA, LP, and Compass USA GP, LLC."  (2AC, para. 11.)  Plaintiffs did not define the term "Compass" to include moving Defendants David Blatt, Boris Piskun, or Ron Friedman, or any other named Defendant.  Plaintiffs characterize moving Defendants Blatt, Piskun, and Friedman, as well as non-moving Defendant Leonard Mezei and Jay Cohen, as "principles of Compass," but they fall outside of the defined term "Compass." (2AC, para. 11, 12-16.)  Plaintiffs defined moving Defendants Economic Growth Group, Inc. and Repotex, Inc., as well as non-moving Defendant Oakbridge Capital, Inc., as having Leonard Mezei as a principal, but have not included them within the defined term "Compass" either.  (2AC, para. 11, 28-30).

[4]     Plaintiffs' federal RICO, Nevada RICO, elder abuse, conversion, civil conspiracy, and constructive trust claims are directed at all of the moving Defendants.  The breach of contract, declaratory judgment / collateral estoppel and attorney fees claims are directed at Compass Partners, LLC, Compass USA SPE, LLC, Compass Financial Partners, LLC (Nevada and Delaware), Compass FP Corp., Compass USA Holding, LLC, Compass USA, LP, and Compass USA GP, LLC.  The breach of the implied covenant of good faith and fair dealing and breach of fiduciary duties claims are directed at those same moving Defendants, as well as Blatt, Piskun and Friedman.

**B.**   <u>The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2).</u>

FRCP 12(b)(6) provides a basis for dismissal where the complaint fails to state a claim upon which relief can be granted.  Plaintiffs' Second Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Iqbal*, the United States Supreme Court provided a two-step approach for district courts to apply when considering motions to dismiss.  First, a court must accept as true all factual allegations in a complaint.  *Id.* at 1950.  Second, the court must consider whether the factual allegations in a complaint state a plausible claim for relief.  *Id.* at 1950.  A claim has facial plausibility when the pleaded factual content allows a court to draw the reasonable inference, based on its judicial experience and common sense, that the defendant is liable for the misconduct alleged.  *Id.* at 1949-1950.

The Plaintiffs' pleading duty "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  "Although courts generally assume the facts alleged are true, courts do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1207 (D. Nev. 2009) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Plaintiffs' factual allegations are insufficient to state a claim for relief against these Defendants under this standard, so all of Plaintiffs' claims against these Defendants should be dismissed as a matter of law.

Plaintiffs' claims against certain moving Defendants are subject to dismissal under FRCP 12(b)(2) for lack of personal jurisdiction.  That standard will be discussed in the context of the actual argument, which is set forth below.

///

///

1   **C.**   <u>Legal argument.</u>

2       **1.**   <u>The factual and procedural history of this matter.</u>

3          As the Court is well aware, USACM filed for Chapter 11 bankruptcy on April 13, 2006.

4   (2AC, para. 42.)  The Plaintiffs in this matter allege that they were direct lenders in various loans

5   originated and serviced by USACM.  (Id., para. 43-44.)  Plaintiffs allege that "effective February

6   16, 2007 Compass acquired as the successful bidder for the "Purchased Assets." (Id., para. 47.)

7          On May 21, 2007 --- after Compass had only been servicing the Loans for three months

8   ---- certain direct lenders filed what later became known as the 892 Case against Compass

9   Partners, LLC, Compass USA SPE, LLC, Boris, Piskun, David Blatt, and others alleging

10   misconduct in the servicing of the Loans.  (*Compare* 2AC para. 47, 48; *see also* Complaint for

11   Decl. Relief and Damages, #1, Case No. 3:07-cv-00241.)[5]  Silar Advisors, LP foreclosed on

12   certain of the Purchased Assets, including the servicing rights, on approximately September 2008

13   under the authority of the Master Repurchase Agreement ("MRA").  (*See* 2AC, para. 53, 80, 82.)

14   Those assets were then assigned to Asset Resolution, LLC.  (Id.)  Thus, Compass was only

15   involved as the loan servicer for a period of approximately 19 months.

16          The 892 Case proceeded to trial on November 16, 2010.  (2AC, para. 69.)  On December

17   14, 2010, the jury awarded 53 Plaintiffs compensatory damages in the amount of $52,565.02

18   jointly against Compass Partners, LLC, Compass USA, SPE, LLC, Boris Piskun, David Blatt in

19   connection with the misappropriation and conversion claims relating to the Standard Property,

20   Bay Pompano, and Shamrock Tower Loans.  (Redacted Verdict Form, #2010, 892 Case.)[6]  The

21   jury nevertheless awarded <u>no damages</u> against the Compass Defendants in connection with the

---

23   [5]      The 892 Case plaintiffs would eventually allege misconduct in connection with the following Loans:  Bay
24   Pompano, Binford Medical, Cabernet Highlands LLC, Charlevoix, Clear Creek Plantation, Fox Hills 216 / Eagle
Meadows, Gardens Timeshare, Harbor Georgetown, La Hacienda, Lerin Hills, Marlton Square, Shamrock Tower,
25   Standard Property, 60th Street Venture, BarUSA, Castaic II, Castaic III, Copper Sage, Fiesta Murietta, Palm Harbor
I, Tapia Ranch, 6425 Gess, Ltd., Anchor B, LLC, Gramercy Court Condos.  (Third Amended Complaint, #1499, 892
26   Case; Redacted Verdict Form, #2010, 892 Case.)

27   [6]      There has been some confusion regarding the number of Plaintiffs.  Recently, counsel for Plaintiffs in the
892 Case clarified that 53 persons were awarded damages, and not 52, because there were in fact two separate
28   Plaintiffs named "Christina M. Kehls".  The undersigned understands and believes that the final judgment in the 892
Case is likely to reflect this.

1   "Suttles settlement payment claims" or the "discounted payoff claims", which involved eight

2   distinct Loans.  (Id.)  The jury also awarded punitive damages against Piskun and Blatt in the

3   amount of $50,000 each, and against Compass Partners, LLC and Compass USA SPE, LLC

4   jointly, in the amount of $750,000.  (Phase II Verdict Form, #2012, 892 Case.)

5       2.    **Plaintiffs' allegations against "Compass".**

6         As set forth above, Plaintiffs have alleged that certain Defendants collectively referred to

7   as "Compass" (see footnote 1, supra) acquired the Purchased Assets through the USACM

8   auction effectively February 16, 2007.  (2AC, para. 47.)  They then allege, in the same vague,

9   collective manner, that "Compass" and "Silar" operated their "loan servicing enterprise" from

10   their New York offices.  (2AC, para. 72.)  Silar allegedly "funded Compass's acquisition of the

11   Purchased Assets pursuant to a certain Master Repurchase Agreement ("MRA") and various

12   related instruments …."  (Id., para. 73.)

13         The specific references to the moving Defendants (as opposed to generalized allegations

14   against "Compass") in the Second Amended Complaint appear to be as follows:  Plaintiffs

15   contend that **Compass USA Holding, LLC** funded the $1.8 million "third tier" of Silar's initial

16   funding of "Compass's" acquisition of the Purchased Assets, which was governed by a Global

17   Paying Agency Agreement.  (Id., para. 74-75.)  **Compass USA Holding, LLC** and Silar Special

18   Opportunities Fund, LP were allegedly the limited partners in **Compass USA, LP**,[7] and

19   **Compass USA GP, LLC** was the general partner in **Compass USA, LP**.  (Id, para. 75, 77.)

20         Plaintiffs contend that "Compass", out of financial necessity, agreed to "extreme funding

21   and repayment terms offered by Silar".  (Id., para. 76.)  This allegedly compelled "Compass" and

22   Silar to undertake their "wrongful loan servicing enterprise."  (Id.)  They contend that this

23   enterprise commenced sometime in March 2007.  (Id., para. 165.)

24         Plaintiffs claim that **Compass Partners, LLC** assigned the Purchased Assets to

25   **Compass USA SPE, LLC**, but purported to service the Loans through its sub-servicers,

26   **Compass Financial Partners, LLC** (Nevada and Delaware) and **Compass FP Corp.**  (Id., para.

27   _____

28   [7]    Plaintiffs contend that SSOP, LLC succeeded to Silar Special Opportunities Fund, LP's interest in Compass USA , LP in or about September 2008.  (2AC, para. 75.)

77.) **Boris Piskun** and **David Blatt** operated "Compass" on a day-to-day basis, and were allegedly "principals." (Id., para. 78.) Jay Cohen and **Ron Friedman** were also allegedly principals and were supposedly "involved in … the wrongful servicing enterprise operated by Compass." (Id.) Leonard Mezei was the alleged "key principal" of "Compass," and President of **Compass Partners, LLC**. (Id., para. 79.)

Plaintiffs contend that in or about June 2008, **Repotex** purchased the remaining participation interest held by the Gottex ABL Master Fund in the first tier of the three-tier financing of the Purchased Assets. **Economic Growth Group** ("EGG") allegedly funded Repotex's purchase, which allegedly eliminated Mezei's personal guaranty in connection with the Purchased Assets. (Id., para. 87.)

Plaintiffs then alleged that "Compass" (they do not say specifically who, or which entity):

1.      Sent misleading loan status reports to direct lenders and consent requests in connection with the Standard Property loan which did not disclose an alleged "secret side deal" (Id., para. 92-93);

2.      "schemed to misrepresent the status and value of the Fiesta Oak Valley Loan so that "Compass, Oakbridge, and Mezei" could acquire a fractionalized interest in the Loan at a substantial discount" (id., para. 96-99);

3.      improperly foreclosed on the Shamrock property and wrongfully retained $2.3 million of the sale proceeds (id., para. 102-104);

4.      misinformed direct lenders in connection with the Gramercy Loan regarding the amount of certain tax liens and taxes, overstated the cost of getting the second of two five-story condominium buildings ready to lease, and wrongfully took and failed to account for cash generated by the sale of the property (id., para. 111-115);[8]

5.      refused to accept a court-authorized discounted payoff in connection with the Lerin Hills Loan and wrongfully initiated foreclosure, resulting in a "total loss" to the Lerin Hills direct lenders (id., para. 124-126);

---

[8]      These allegations are generally directed at "Compass," although Plaintiffs did specifically contend that Piskun made misstatements to direct lenders during at least three conference calls. (2AC, para. 111-115.)

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

6.     failed to accept a proposed discounted pay-off in connection with the Bay Pompano Loan, demanded additional amounts from the borrower, failed to convey a second settlement offer to the direct lenders, and improperly initiated foreclosure (id., para. 127-129);

7.     failed to convey a proposed discounted pay-off in connection with the Fox Hills and Eagle Meadows Loans, and then refused to accept approved by more than 51% of the direct lenders because it did not include various sums to which "Compass" claimed to be entitled (id. para. 133-137);

8.     failed to accept a discounted pay-off in connection with the Bay Pompano Loan which had been approved by more than 51% of the direct lenders (d., para. 140-142);

9.     engaged in some type of unspecified activity in connection with the Castaic Loans which caused the borrower to sue the direct lenders, Compass, and Silar (id., para. 143-147);

10.     wrongfully pursued foreclosure in connection with the Suttles Loans (Anchor B, Gramercy, and Shamrock) in order to obtain title to Shamrock and profit from a pre-arranged sale to a third party (id., para. 148-149);

11.     misapplied principal payments made by the borrowers in the Palm Harbor and The Gardens Loans (id., para. 148-149);

12.     retained Citron as its Florida sub-servicer with respect to the Lake Helen Partners Loan, which led to Citron selling 7.6 acres of the property for $200,000 after foreclosing upon it, and failing to pay the direct lenders their fractional share of the proceeds (id., para. 150-151);[9]

13.     "caused damages … by their unspecified actions or omissions in connection with at least" 26 other loans in addition to the others discussed previously (id., para. 152).[10]

Plaintiffs were even less specific regarding who did what to whom in their remaining allegations.  Plaintiffs contend that "Defendants engaged in extensive loan servicing misconduct,

---

[9]     The theory against "Compass" appears to be that they negligently retained Citron.  By the time Citron sold the 7.6 acres of property in April 2009, **Compass USA SPE, LLC** was no longer servicing the Lake Helen Partners loan, having been foreclosed out by Silar in September 2008.  (See 2AC, para. 53, 80.)

[10]     Plaintiffs quite literally have failed to alleged what acts or omissions were negligent or wrongful, how those acts or omissions caused Plaintiffs to suffer damage, and specifically who is responsible for the errors and omissions other than "Compass, Silar, and Asset Resolution."  (2AC, para. 152.)

1    individually and in concert, to enrich themselves to the detriment of the direct lenders." (2AC,

2    para. 118.)  They alleged that "Defendants" purported to act for the direct lenders without proper

3    power of attorney. (Id., para. 119.)  "Defendants" allegedly breached fiduciary duties by taking

4    and retaining funds to which they were not entitled, failed to obtain at least 51% consent to take

5    actions in connection with the Loans, failed to accept discounted payoffs when approved by

6    more than 51% of the direct lenders on a particular loan, and failed to "evaluate and resolve the

7    defaulted Loans in a timely manner" so as to accrue additional default interest and late charges.

8    (Id., para. 120-123.)

9         Within Section V of the Second Amended Complaint, Plaintiffs have made still more

10   vague, conclusory allegations against "Compass":

11        1.     "Compass and Silar" engaged in a wrongful loan servicing enterprise in violation

12   of federal RICO. (2AC, para. 165.)  Leeds and Mezei were in control of each and every aspect

13   of the loan servicing enterprise, and "were assisted by each of the other Defendants." (Id., para.

14   165, 178.)[11]

15        2.     "Compass and Silar" engaged in a pattern of racketeering activity. (Id., para.

16   166.)  "Defendants regularly communicated with each other" through various means. (Id.)

17   "Compass and Silar and their subordinates" have committed two or more predicate acts for

18   purposes of RICO. (Id., para. 169.)

19        3.     "Leeds, Mezei, Cohen, **Piskun, Blatt, Friedman,** Gracin, Tai, Windemere,

20   Oakbridge, Citron, the Citron Defendants, SOS, Reiner, Lomazow, Great White, Orrock, Fragin,

21   **Repotex**, and **EGG**, who were employed by or associated with the loan servicing enterprise,

22   have participated in and conducted the affairs of the loan servicing enterprise" through a pattern

23   of racketeering activity. (Para. 172, 183.)

24        4.     "Defendants" committed acts constituting elder abuse under Nevada law (id.,

25   para. 189); "Compass" breached the LSAs (id., para. 193); "Compass" breached the implied duty

---

[11]      How it was that Mezei --- who according to Plaintiffs has not yet been served with process --- controlled "each and every aspect of the loan servicing enterprise," and the manner in which he was supposedly assisted "by each of the other Defendants" is not explained in the 2AC.  Plaintiffs simply state the Defendants "communicated," and postulate that these generalized allegations are true.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    of good faith and fair dealing and fiduciary duties, for which their "principals" are also

2    personally liable (id., para. 199, 203, 207, 210); "Defendants" committed conversion (id., para.

3    214); "Defendants" acted in concert with the "intention of unlawfully enriching themselves to

4    the financial detriment of the direct lenders," thereby committing civil conspiracy (id., para.

5    219); and "Defendants" have wrongfully taken and retained funds to which they are not entitled

6    (id., para. 233.)

7         Aside from explaining that various of the moving Defendants invested in Silar's

8    acquisition loan to Compass Partners, LLC or had ownership interests in one another, Plaintiffs

9    have failed to plead specific facts demonstrating in what actionable conduct Compass Financial

10   Partners, LLC, Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC,

11   Compass USA, LP, EGG, and Repotex, Inc. allegedly engaged.  After all, it was Compass

12   Partners, LLP that acquired the Purchased Assets, and certain of those assets were then assigned

13   to Compass USA SPE, LLC.  (2AC, para. 77.)  Further, although Plaintiffs have alleged

14   wrongful conduct against **Compass Partners, LLC** and **Compass USA SPE, LLC,** and alleged

15   that **Piskun** and **Blatt** managed these entities' day to day affairs, they have failed to plead that

16   **Piskun** or **Blatt** engaged in any wrongful conduct for their own personal gain, and outside of the

17   course and scope of their employment or agency.   As for **Friedman**, the only specific

18   involvement pled against him is that he is a "principal of Compass" (which entity remains a

19   mystery), and that he allegedly participated in some unstated manner in the supposed pattern of

20   racketeering activity.  (2AC, para. 16, 172, 183.)

21        3.    <u>The claims of any and all Plaintiffs added after the filing of the First</u>
             <u>Amended Complaint are improper, and must be dismissed.</u>

22

23        Plaintiffs filed their Original Complaint and Jury Demand on March 21, 2011.  (Original

24   Complaint, #1.)  They apparently exercised their right to file an amended pleading without leave

25   of court under FRCP 15(a)(1) when they filed their First Amended Complaint and Jury Demand

26   on March 31, 2011.  (FAC, #13.)  On April 13, 2011, without seeking leave of court or filing a

27   motion, Plaintiffs filed their Second Amended Complaint, which purportedly only added or

28   deleted Plaintiffs.  (2AC, #35.)  Plaintiffs then filed their "Supplement to Plaintiffs' Second

1  Amended Complaint and Jury Demand" on May 20, 2011.  (#42.)  The Supplement stated that it

2  removed some Plaintiffs as parties in the action, added others, and that it modified the damages

3  claims of some Plaintiffs.  (Id.)

4          In order to name any additional Plaintiffs subsequent to the filing of the First Amended

5  Complaint, Plaintiffs were required to seek leave of court under Rules 15 or 21 (and related

6  joinder Rules), or they were required to file a motion to intervene.  Plaintiffs failed to properly

7  seek leave of court to amend their pleadings, and accordingly the Court should dismiss the

8  claims of the improperly added Plaintiffs in the Second Amended Complaint and Supplement

9  thereto.[12]  A list of those Plaintiffs who appear to have been improperly added through the

10  Second Amended Complaint and the Supplement thereto is attached hereto as Exhibit A.[13]

11       **4.**      **Plaintiffs, with regard to certain claims, have failed to state a claim upon**

           **which relief may be granted  against the moving Defendants.**

12

13        **a.**     **Plaintiffs' federal RICO claim is deficient and should be dismissed.**

14          18 U.S.C. 1964(c) provides individuals with a civil remedy for a federal RICO violation.

15  In order to properly plead a federal RICO cause of action, a plaintiff must allege must allege "(1)

16

17  [12]      It is unclear whether a party can only seek to add additional plaintiffs under Federal Rule Civil Procedure

18  21 (and related joinder Rules), or whether parties can also be added under Rule 15.  See *Texas Energy Reserve Corp. v. Department of Energy*, 535 F. Supp. 615, 620-621 (D. Del. 1982) (noting that some courts allow joinder only

19  under Rule 21, but allowing addition of a plaintiff under Rule 15 once as a matter of right without leave of court before a responsive pleading was filed); *Maynard v. Bonta*, 2003 U.S. Dist. LEXIS 16201 (C.D. Cal. Aug. 29, 2003)

20  (discussing that Ninth Circuit has not addressed issue of whether a party must always seek leave of court to add a party under Rule 21, or whether party may amend to add party once without leave under Rule 15, but allowing

21  amendment adding party under Rule 15).  If Plaintiffs seek to add parties under FRCP 21, leave of court is also required.  FRCP 21 specifically provides that, "[o]n motion or on its own, the court may at any time, on just terms,

22  add or drop a party …."  By itself, FRCP 21 cannot supply the standards for joinder, so reference to other rules of joinder is necessary.  *Pan American World Airways, Inc. v. United States Dist. Court for Cent. Dist.*, 523 F.2d 1073, 1079 (9th Cir. 1975).  Plaintiffs did not seek leave of court to join any parties under this Rule.

23        Plaintiffs claim this is a class action lawsuit.  (2AC, #35, para. 155.)  Several Federal Rules of Civil

24  Procedure governing amended pleadings and joinder of parties are potentially applicable to this case.  See e.g. *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 291 (2008).  Additional Plaintiffs could have sought to intervene

25  in the purported class action under FRCP 23(d) and 24.  See e.g. *Ardrey v. Federal Kemper Ins. Co.*, 142 F.R.D. 105, 116 (E.D. Pa 1992) (discussing intervention under Rule 23 and allowing putative class member to intervene

26  when the class member met the requirements of Rule 24(b)); *Glass v. UBS Fin. Servs.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (affirming district court's denial of putative class member's motion to intervene because motion was

27  untimely under Rule 24).  However, the additional Plaintiffs named in the Second Amended Complaint also failed to file a motion to properly intervene under these Rules.

28  [13]      Alternatively, the Court should treat the Original Complaint and First Amended Complaint as abandoned, and the Second Amended Complaint as the initial pleading in this matter for all purposes.

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (internal quotations omitted). The prohibited activities are set forth in 18 U.S.C. 1962.

Plaintiffs must plead RICO violations with particularity under FRCP 9(b); they must state the specific time, place, and content of the alleged violations. See *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims.") In *Moore*, the Ninth Circuit Court of Appeals affirmed dismissal of a federal RICO claim where the plaintiffs had failed to specify the time, place, and content of the specific predicate acts upon which the RICO claim was based. *Id.* The Court explained:

> The RICO claim in the investors' proposed third amended complaint <u>does not attribute specific conduct to individual defendants</u>. The claim also <u>does not specify either the time or the place of the alleged wrongful conduct</u> other than to say: 'Commencing on or about October, 1982, and through and including March, 1983, within the Central District of California, and elsewhere, the defendants, and each of them, devised, intended to devise and carried out, a scheme to defraud...'. This is not sufficient. Allegations of fraud under section 1962(c) "must identify the time, place, and manner of each fraud <u>plus the role of each defendant in each scheme</u>." *Schreiber Distrib.*, 806 F.2d at 1401 (quoting *Lewis v. Sporck*, 612 F. Supp. 1316, 1325 (N.D.Cal. 1985)).

*Id.* (emphasis supplied.) See also *Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys.*, LLC, 638 F. Supp. 2d 245, 252 (D. Conn. 2009) ("PEPCO is required to state the contents of allegedly fraudulent communications, who was involved in those communications, where and when the communications took place, and PEPCO must also explain why each communication was fraudulent").

Although the Plaintiffs identify several loan transactions and claim that "Compass" utilized mail and wire communications in order to further a vague scheme to profit at the expense of the direct lenders, Plaintiffs fail to identify with adequate particularity the specific role of each Defendant in each scheme, each Defendant's specific conduct, and why that conduct was fraudulent. Plaintiffs contend that Compass Partners, LLC acquired the Purchased Assets and assigned them to Compass USA SPE, LLC. (*See* 2AC, para. 47, 77.) Piskun and Blatt managed the daily affairs of the companies and engaged in certain communications in furtherance of the alleged enterprise. (Id., para. 78.) EGG allegedly funded Repotex's purchase of the remaining participation interest held by the Gottex ABL Master Fund in the first tier of the three-tier

financing of the Purchased Assets.  (Id., para. 87.)  With respect to Repotex, Inc., Plaintiffs

alleged that it had a role in the funding of the monies lent by Silar to Compass Partners, LLC to

acquire the Purchased Assets, but did not describe Repotex's involvement or role in any alleged

predicate act of wrongdoing, other than to say that its purchase of the remaining participation

interest held by the Gottex ABL Master Fund eliminated Mezei's personal guaranty.  (Id.)  The

same is true with respect to Friedman, Compass FP Corp., Compass USA GP, LLC, Compass

USA Holding, LLC, and Compass USA, LP.  They are vaguely alleged to be members or

shareholders in other Compass entities, or in the case of Friedman a "principal" of unspecified

"Compass" entities, but the pleadings lack any specifics regarding the manner in which they

were involved in the alleged wrongful enterprise.  (Id., para. 11, 16, 74-9, 87).

Plaintiffs' allegations regarding the alleged predicate mail and wire communications fail

to sufficiently identify with particularity the Defendants involved in the communications (with

the exception of Piskun at paragraph 113 of the 2AC).  In paragraph 113, where Plaintiffs have

identified three specific communications by Piskun, they fail to sufficiently allege conduct

demonstrating that the Piskun intended to further an endeavor that would satisfy the elements of

a substantive criminal offense.  See *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A

conspirator must intend to further an endeavor which, if completed, would satisfy all of the

elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or

facilitating the criminal endeavor.")

Plaintiffs have also failed to plead facts supporting their generalized allegations of a

pattern of racketeering activity.  Under 18 U.S.C. 1961(5), such a pattern "requires at least two

acts of racketeering activity, one of which occurred after the effective date of this chapter and the

last of which occurred within ten years (excluding any period of imprisonment) after the

commission of a prior act of racketeering activity."  Pursuant to 18 U.S.C. 1961(1), the predicate

acts of racketeering activity include mail fraud and wire fraud.

In *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1517 (D. Nev. 1987), this

District Court explained:

[I]n order to allege mail or wire fraud, the plaintiffs must allege that (1) the perpetrator knowingly participated in a scheme to defraud, (2) the perpetrator used or caused the use of the United States mails or wires for the purpose of carrying out the scheme, and (3) the perpetrator did so with the intent to defraud.  The plaintiffs have not pled these elements.  On this basis, also, the complaint is inadequate.

Furthermore, as to claim one, the plaintiffs' pleading of a conspiracy is insufficient. The conspiracy is alleged in general sweeping terms and does not apprise the defendants of the roles they are alleged to have played in the conspiracy.

*Id.* at 1517, internal citations omitted.)

Plaintiffs' general allegations that "Compass" engaged in acts to defraud Plaintiffs are insufficient to demonstrate that the individual moving Defendants specifically intended to defraud the Plaintiffs, that they knowingly participated in a larger scheme to defraud, or that they used the mails or wires for the purpose of furthering such a scheme as opposed to the furtherance of alleged isolated wrongful acts.  Moreover, the Plaintiffs have not identified the specific roles of each moving Defendant in the alleged conspiracy to further the scheme.  Therefore, they cannot demonstrate the predicate acts of racketeering activity under 18 U.S.C. 1961.

Plaintiffs' RICO claim also fails to satisfy the "continuity" requirement.  The United States Supreme Court has held that to establish a RICO pattern, it is not sufficient to simply show that the predicate crimes are related, but a plaintiff must also show that they "amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  The Court explained:

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept -- and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct. Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the threat of continuity is demonstrated.

*H. J. Inc.*, 492 U.S. at 241-242 (internal citation omitted) (emphasis supplied).  In this case, we have an alleged scheme that did not commence until sometime in "March 2007" (2AC, para.

1  165) and, with respect to the moving Defendants, terminated no later than Silar's exercise of its

2  rights under the MRA in September 2008.  (*See* 2AC, para. 53, 80, 82.)  The time period

3  involved was only approximately 18 months, and there is no threat of future alleged criminal

4  conduct because Compass has not been the servicer for nearly three years, and will not be again.

5  Thus, Plaintiffs have failed to demonstrate a pattern of continuing RICO activity.

6  In *Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys., LLC*, 638 F. Supp.

7  2d 245, 253 (D. Conn. 2009), the court explained that alleged acts committed over a period of

8  less than two years was not sufficient to established closed-ended continuity under those facts.

9  *Id.* at 253.  Furthermore, the relevant period is not the period of time during which the <u>scheme</u>

10  allegedly operated, but rather the period of time during which the <u>predicate RICO activity</u> was

11  taking place.  *Id.* at 253, citing *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 184

12  (2nd Cir. 2008.)  "Although the court of appeals 'ha[s] not viewed two years as a bright-line

13  requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-

14  ended continuity, particularly where, . . . [t]he activities alleged involved only a handful of

15  participants and do not involve a complex, multi-faceted conspiracy.'"  *Id.* at 253, quoting *Spool*,

16  520 F.3d at 184.

17  In this case, Plaintiffs have alleged various allegedly wrongful mailings and telephone

18  calls by the moving Defendants on 3/23/07 (para. 96, 101), 4/4/07 (para. 98), 5/18/07 (para. 93),

19  6/8/07 (para. 129), 9/27/07 (para. 113), 1/14/08 (para. 113), 1/28/08 (para. 113), 2/15/08 (para.

20  103).  Furthermore, it does not appear that Plaintiffs allege that every one of these

21  communications was knowingly false.  (*See* 2AC, para. 103, 129.)[14]  Even setting that issue

22  aside, the span of time during which these alleged predicate acts by the "Compass" Defendants

23  occurred is approximately 11 months.  As discussed in *Plainville*, this is insufficient to establish

24  closed-end continuity.

25  The *Plainville* Court also found that open-ended continuity had not been established

26  because the defendants conducted an inherently legitimate business enterprise, and the complaint

27

---

28  [14]  Plaintiffs also allege deceptive communications in September 2009, but those allegedly involve non-moving Defendants Asset Resolution, Reiner, and SOS and took place after Silar had already foreclosed on the Purchased Assets under the MRA in September 2008.  (*See* 2AC, para. 108, 53, 80, 82.)

1   did not suggest any threat of ongoing criminal activity.  *Id.* at 255.  The same is true here:  There

2   is nothing inherently inappropriate about the servicing of fractionalized development loans.

3   Compass Partners, LLC purchased the servicing rights through a court-supervised bankruptcy

4   auction.  (2AC, 47.)  Nor is there any threat of ongoing criminal activity, because the moving

5   Defendants have no continuing role in the servicing of the subject Loans.

6          Plaintiffs have failed to adequately plead a cognizable federal RICO claim against the

7   moving Defendants.  Accordingly, the Court should dismiss this claim as to each moving

8   Defendant.

9                  **b.**       **Plaintiffs' Nevada RICO claims should be dismissed.**

10         Plaintiffs have also asserted a Nevada RICO claim against all moving Defendants.  "Like

11   their federal counterparts, Nevada's anti-racketeering statutes provide for a civil cause of action

12   for injuries resulting from racketeering activities under which a plaintiff may recover treble

13   damages, attorney's fees and litigation costs. See NRS 207.470."  *Hale v. Burkhardt*, 104 Nev.

14   632, 634, 764 P.2d 866, 867 (1988).

15         The term "racketeering activity" means "engaging in at least two crimes related to

16   racketeering that have the same or similar pattern, intents, results, accomplices, victims or

17   methods of commission, or are otherwise interrelated by distinguishing characteristics and are

18   not isolated incidents …."  NRS 207.390 (emphasis supplied).  Pursuant to NRS 207.360, "crime

19   related to racketeering" means the commission of, attempt to commit or conspiracy to commit,

20   certain enumerated crimes, including "[t]aking property from another under circumstances not

21   amounting to robbery …," "[e]mbezzlement of money or property valued at $250 or more," and

22    "[o]btaining possession of money or property valued at $250 or more, or obtaining a signature

23   by means of false pretenses …."[15]

24   _____

25   [15]       The crime of "embezzlement" is defined in relevant part by NRS 205.300 as follows:  "1. Any bailee of any money, goods or property, who converts it to his or her own use, with the intent to steal it or to defraud the owner or

26   owners thereof and any agent, manager or clerk of any person, corporation, association or partnership, or any person with whom any money, property or effects have been deposited or entrusted, who uses or appropriates the money, property or effects or any part thereof in any manner or for any other purpose than that for which they were

27   deposited or entrusted, is guilty of embezzlement, and shall be punished in the manner prescribed by law for the stealing or larceny of property of the kind and name of the money, goods, property or effects so taken, converted,

28   stolen, used or appropriated."  (Emphasis supplied.)

For a plaintiff to recover under Nevada RICO, three conditions must be met: (1) the plaintiff's injury must flow from the defendant's violation of a predicate act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act. *Allum v. Valley Bank*, 109 Nev. 280, 283, 849 P.2d 297, 299 (1993). There is no pattern/continuity requirement as is required under federal law. *Siragusa v. Brown*, 114 Nev. 1384, 971 P.2d 801, 811 (1998).

In *Hale v. Burkhardt*, 104 Nev. 632, 634, 764 P.2d 866, 867 (1988), the Nevada Supreme Court affirmed dismissal of a state RICO claim. A real estate broker plaintiff entered into an oral agreement with defendants under which plaintiff was to assist the defendants in purchasing an entire city block in Reno for a development project. *Id*. at 637, 867. The purchase was apparently completed, but defendants did not pay plaintiff. *Id*. at 637, 867. The plaintiff alleged that defendants obtained services, money or property by false pretenses. *Id*. The trial court dismissed the Nevada RICO claim under NRCP 12(b)(5), and the Supreme Court affirmed, holding that the plaintiff failed to sufficiently allege with particularity the alleged criminal acts supporting the RICO claim:

> Even had the narration of the three supposed "schemes" stated the elements of a false pretenses crime and thus charged criminal violation of NRS 205.380, the pleading lacks the kind of specificity that is called for in making such allegations. Not only is there a basic failure to articulate any misrepresentation on the part of respondents, there is no information provided in the complaint as to when, where or how such false representations are claimed to have been made.
>
> The federal courts have demanded specificity in pleading the racketeering acts in a civil RICO cause of action. …. As in federal jurisprudence, an action brought under NRS 207.470, although civil in nature, nevertheless may involve the pleading of racketeering-related predicate crimes; and there is no reason the requirement of pleading with particularity should not apply in state actions just as it does in the federal context. …

---

The crime of obtaining money, property, rent or labor by false pretenses is defined in relevant part as follows by NRS 205.380: "1. A person who knowingly and designedly by any false pretense obtains from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing, including rent or the labor of another person not his or her employee, with the intent to cheat or defraud the other person, is a cheat, and, unless otherwise prescribed by law, shall be punished: …. (Emphasis supplied.)

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

> While Nevada has yet to deal with the explosion of RICO litigation experienced in the federal courts, we nevertheless have a present concern that civil RICO actions be pleaded with sufficient specificity because of the very serious consequences attached to the allegations of criminal conduct that are the essence of this kind of law suit. Not only is a civil RICO defendant accused of committing a criminal offense -- which carries with it the potential for considerable social stigma -- such a defendant is also confronted with the possibility of an adverse treble damages judgment.

> Because the present civil RICO action, despite its fundamentally civil nature, (1) involves pleading the commission of racketeering-related crimes and (2) permits the levy of serious punitive consequences, the same degree of specificity is called for as in a criminal indictment or information.  A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently "plain, concise and definite" statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges.

*Id.* at 637-638, 869-970 (internal citations omitted).[16]

Plaintiffs must allege with particularity two or more predicate acts constituting fraud, embezzlement, or wrongfully obtaining funds from the Plaintiffs short of circumstances amounting to robbery.  Each of the crimes alleged by Plaintiffs in connection with the state law racketeering claim necessarily involves demonstrating intent by the Defendants to defraud the Plaintiffs.

Plaintiffs allege in conclusory fashion, that Compass and Silar engaged in a wrongful loan servicing enterprise, that Leeds and Mezei were (somehow) in control of "each and every aspect" of the enterprise, and that they were "assisted by each of the other Defendants." (2AC, para. 178.)  Similar to the Plaintiffs in *Hale*, Plaintiffs fail to identify the <u>specific acts</u> that <u>each Compass entity</u> engaged in that amounted to one of the criminal predicate acts described above. Instead, they have presented conclusory allegations concerning commission by "Compass" and "Silar" of embezzlement and false pretenses.  (Id., para. 179-180.)  They then contend, with little factual detail, that the various moving Defendants and others "have participated in and conducted

---

[16]     See also *Cummings v. Charter Hosp.*, 111 Nev. 639, 646-647, 896 P.2d 1137, 1141-1142 (1995) ("The complaint does not state, in any detail, the circumstances surrounding the allegations, nor does it specify with particularity what conduct is complained of and when and where the conduct occurred. The district court did not err in dismissing the patients' civil racketeering claim for failure to plead the claim with sufficient particularity"); *Vo v. Am. Brokers Conduit*, 2010 U.S. Dist. LEXIS 116274 (D. Nev. Oct. 29, 2010) (finding that the plaintiff failed to sufficiently plead a claim for civil racketeering).

the affairs of the loan servicing enterprise through the racketeering activitiy described above."
(Id., para. 183.)

As explained in the *Hale* decision, the Defendants are entitled to notice of the "essential facts" regarding what they allegedly did in violation of Nevada's civil racketeering laws. Plaintiffs' Second Amended Complaint falls short.  Based on the foregoing, the Court should dismiss Plaintiffs' Nevada RICO claim for relief with prejudice.

        **c.**    **Plaintiffs have failed to state a claim for elder abuse pursuant to NRS 41.1395.**

Plaintiffs allege the the moving Defendants and others have committed "elder abuse" within the meaning of NRS 41.1395 against certain of the Plaintiffs.  (2AC, para. 188-190.) Plaintiffs' allegations appear to be directed at alleged "exploitation" of those Plaintiffs who qualify as "older persons" because they were over the age of 60 at the time of the alleged wrongful conduct.  NRS 41.1395 provides, in relevant part, as follows:

**Action for damages for injury or loss suffered by older or vulnerable person from abuse, neglect or exploitation; double damages; attorney's fees and costs.**

1.    Except as otherwise provided in subsection 3, if an <u>older person</u> or a vulnerable person suffers a personal injury or death that is caused by abuse or neglect or <u>suffers a loss of money or property caused by exploitation</u>, the person who caused the injury, death or loss is liable to the older person or vulnerable person for two times the actual damages incurred by the older person or vulnerable person. …

4.    For the purposes of this section: …

    (b)    <u>"Exploitation" means any act taken by a person who has the trust and confidence of an older person</u> or a vulnerable person <u>or any use of the power of attorney</u> or guardianship <u>of an older person</u> or a vulnerable person to:

        (1)    <u>Obtain control, through deception,</u> intimidation or undue influence, <u>over the money, assets or property of the older person</u> or vulnerable person <u>with the intention of permanently depriving the older person</u> or vulnerable person <u>of the ownership, use, benefit or possession of that person's money, assets or property; or</u>

        (2)    <u>Convert money, assets or property of the older person with the intention of permanently depriving the older person</u> or vulnerable

1    person <u>of the ownership, use, benefit or possession of that person's</u>
<u>money, assets or property.</u> …

2    (d)    "Older person" means a person who is <u>60 years of age</u> or older.

3    (Emphasis supplied.)  Only two reported cases discuss the applicability of this statute:  A June

4    17, 2011 federal district court opinion in which Judge Mahan denied a motion to dismiss in a

5    case involving the sale of reverse mortgages, and an August 17, 2011 federal district court

6    opinion in which Judge Reed granted dismissal of an elder abuse claim in an insurance bad faith

7    case. *Jung v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 64802  (D. Nev., June 17,

8    2011); *Deruise v. Progressive Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 92433 (D. Nev., Aug. 17,

9    2011).  In the *Deruise* case, the Court declined to unreasonably stretch the intended purpose of

10   NRS 41.1395 so as to allow the plaintiff to maintain a claim against a claims adjuster:

11
12   The claim that Plaintiffs cling to in order to keep Defendant Johnson within the case is
     the fifth claim for exploitation of an older or vulnerable person in violation of Nev. Rev.
13   Stat. 41.1395. …

14   Plaintiffs have failed to allege any facts that fit the statutory requirements of a violation
     of Nev. Rev. Stat. 41.1395 for exploitation of an older or vulnerable person.  It is not
15   alleged that Defendant Johnson was a "person who has the trust and confidence" of
     DeRuise, or that Johnson ever attempted to obtain control over money, assets, or property
16   of the Plaintiffs.  … The most that Plaintiffs can allege is that Plaintiffs are older or
     vulnerable persons as defined in Nev. Rev. Stat. 41.1395(4)(d) and (e). Plaintiffs'
17   argument that the actions of Johnson constitute exploitation as set forth in Nev. Rev. Stat.
     41.1395 because Johnson intentionally delayed and withheld policy benefits is simply not
18   in accordance with the statutory definition of exploitation contained in Nev. Rev. Stat.
     41.1395.
19
     We can see no reason to find that delaying or withholding insurance policy benefits of an
20   elderly person should constitute a separate tort of exploitation.  While neither side has
     turned up any case explicitly dealing with a violation of Nev. Rev. Stat. 41.1395, we
21   suspect that the provision seeks to punish behavior very different from that of Defendant
     Johnson's in this case.
22
23
24   Each Plaintiff must show that he or she was age 60 or older at the time of the wrongful

25   conduct which caused him or her to "suffer" the effects.  See NRS 41.1395(4)(d) (defining

26   "older person" as age 60 of older), and 41.1395(1) ("… if an <u>older person</u> or a vulnerable person

27
28

1   suffers … <u>a loss of money or property caused by exploitation</u> ….)[17]  Even with respect to those

2   Plaintiffs who were age 60 or older at the time of the alleged wrongful conduct, this claim fails

3   on its face.  In order to demonstrate "exploitation," the Plaintiffs must plead that each moving

4   Defendant had their "trust and confidence" or the use of a power of attorney, and that each

5   moving Defendant used such trust and confidence or power of attorney to "obtain control,

6   through deception … over the money, assets or property of the older person," or to "convert

7   money, assets or property of the older person …."  NRS 41.1395(4)(b)(1)-(2).

8          Plaintiffs have not pled that the moving Defendants had their "trust and confidence."

9   Rather, Plaintiffs appear to base their claim on Compass's alleged use of "purported powers of

10  attorney" to service the Loans.  Yet elsewhere Plaintiffs allege that Defendants <u>lacked</u> a valid

11  power of attorney.  (2AC, para. 66.)

12         Plaintiffs cannot have it both ways:  Absent a power of attorney, or facts demonstrating

13  that Plaintiffs placed their "trust and confidence" in the moving Defendants, Plaintiffs' claim is

14  subject to dismissal.  NRS 41.3195(4)(b).  If the Court permits Plaintiffs to rely upon Compass's

15  "purported powers of attorney" as grounds for an elder abuse claim, the claim should lie <u>only</u>

16  against those entities which actually held the purported powers of attorney --- Compass Partners,

17  LLC and Compass USA SPE, LLC --- not those additional Defendants who were merely their

18  alleged agents, investors, owners, or remote owners.  The facts as pled simply do not satisfy the

19  elements of the statute, and this claim must be dismissed.

20         **d.   <u>Plaintiffs' claims for breach of contract, tortious breach of the implied
21         covenant of good faith and fair dealing, breach of fiduciary duty,
22         conversion, and attorney's fees pursuant to the LSAs should be
         dismissed as to certain moving Defendants.</u>**

23

24         It is well established that all contracts in Nevada impose upon the parties an implied

25  covenant of good faith and fair dealing, "which prohibits arbitrary or unfair acts by one party that

26  work to the disadvantage of the other."  *Nelson v. Heer*, 123 Nev. 217, 226, 163 P.3d 420, 427

27  (2007).  Violation of this covenant is a contractual breach, unless there is a "special relationship"

28  _____
    [17]      Plaintiffs have not alleged that they were otherwise "vulnerable persons" within the meaning of the statute,
    or that they suffered "abuse or neglect" as those terms are defined.  (2AC, para. 188-190.)

1    between the contracting parties. *Insurance Co. of the West v. Gibson Tile Co.*, 122 Nev. 455,

2    461, 134 P.3d 698, 702 (2006).  "Tort liability for breach of the implied covenant of good faith

3    and fair dealing is appropriate where the party in the superior or entrusted position has engaged

4    in grievous and perfidious misconduct." *State v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 20

5    (2004).[18]  Conversion requires proof that the defendant committed a distinct, wrongful act of

6    dominion over the plaintiff's personal property in denial of, or inconsistent with --- and in

7    derogation, exclusion, or defiance of --- the plaintiff's title or rights therein. *Evans v. Dean*

8    *Witter Reynolds, Inc.,* 116 Nev. 598, 5 P.3d 1043 (2000).  The elements of breach of fiduciary

9    duty are a fiduciary duty, breach, proximate cause, and damages. *Mosier v. S. Cal. Physicians*

10   *Ins. Exch.*, 74 Cal. Rptr. 2d 550 (1998).  Lastly, Plaintiffs seek an award of fees pursuant to the

11   alleged breach of the LSAs, which is in essence simply a re-stated breach of contract claim under

12   the LSAs.  (*See* 2AC, para. 234-235.)

13          Compass Partners, LLC acquired the Purchased Assets, including the servicing rights

14   under the LSAs, from the Bankruptcy Court.  (2AC, para. 47.)  It then assigned the servicing

15   rights to Compass USA SPE, LLC.  (Id., para. 77.)  <u>None of the other moving Defendants were</u>

16   <u>even arguably parties to the LSAs.</u>  Accordingly, none of the other moving Defendants are

17   subject to a claim for breach of contract, breach of the implied covenant of good faith and fair

18   dealing, or attorney fees under the LSAs.

19          The same holds true with respect to Plaintiffs' claims for breach of fiduciary duty and

20   conversion.[19]  There is no allegation that moving Defendants Friedman, Compass Financial

21   Partners, LLC (DE and NV), Compass FP Corp., Compass USA GP, LLC, Compass USA

22

---

23   [18]       Instances where a special relationship does exist include "those between insurers and insureds, partners of

24   partnerships, and franchisees and franchisers.  Each of these relationships shares a special element of reliance
     common to partnership, insurance, and franchise agreements." *Gibson*, 122 Nev. at 462, 134 P.3d at 698; see also

25   *Great Am. Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 355, 934 P.2d 257, 263 (1997) (reliance due to special
     relationship in those relationships formed by employment, bailment, insurance, partnership, and franchise

26   agreements).  Courts have held that "[t]he implied covenant tort is not available to parties of an ordinary commercial
     transaction where the parties deal at arms' length." *Lawrence v. Aurora Loan Servs. LLC*, 2010 U.S. Dist. LEXIS

27   5373, *32 (E.D. Cal. Jan. 25, 2010).  They have also held that a loan servicer does not have a "special relationship"
     with a borrower.  *Contreras v. Master Fin., Inc.*, 2010 U.S. Dist. LEXIS 118017 (D. Nev. Nov. 4, 2010).

28   [19]       The moving Defendants do not concede that these claims are proper as to Compass Partners, LLC,
     Compass USA SPE, LLC, Piskun, or Blatt but are not seeking dismissal as to those Defendants at this time.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1   Holding, LLC, Compass USA, LP, EGG or Repotex were actually parties to the LSAs, and no

2   allegations of fact supporting the concept that they, individually, breached fiduciary duties owed

3   to Plaintiffs or converted Plaintiffs' personal property.

e.      **Plaintiffs' civil conspiracy claim is not supported by adequate facts.**

5   A civil conspiracy requires a combination of two or more persons who, by some

6   concerted action, intend to accomplish an unlawful objective for the purpose of harming another,

7   resulting in damage.  *Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287, 1290 (1989).

> The sine qua non of a conspirational agreement is the knowledge on the part of the
> alleged conspirators of its unlawful objective and their intent to aid in achieving that
> objective.  The alleged facts must show either expressly or by reasonable inference that
> Defendant <u>had knowledge of the object and purpose of the conspiracy</u>, that there was an
> <u>agreement to injure the Plaintiff</u>, that there was a <u>meeting of the minds on the objective
> and course of action</u>, and that as a result <u>one of the defendants committed an act resulting
> in the injury</u>.

*Ungaro v. Desert Palace, Inc.,* 732 F. Supp. 1522, 1532 (D. Nev. 1989) (internal citation

omitted) (emphasis supplied).

With respect to each moving Defendant, Plaintiffs have failed to alleged sufficient facts

demonstrating an actual agreement to injure Plaintiffs, or a meeting of the minds on the objective

and course of action.  As explained by this Court in *Ungaro*:

> In *Bliss v. Southern Pacific Co.*, 212 Or. 634, 321 P.2d at 327 (1958), the court stated
> that:
>
>> the primary purpose of a conspiracy must be to cause injury to another. . . . So
>> long as the object of the combination is to further its own fair interest or
>> advantage, and not the injury of another, its members are not liable for any injury
>> which is merely incidental.
>
> The purpose requirement is related to what is referred to as a "malice" requirement which
> " . . . does not mean merely ill will.  It means the intentional doing of an injurious act
> without justification or excuse." *Bliss,* 212 Or. 634, 321 P.2d at 328.  An act may also be
> the basis for a civil conspiracy when, although done without a direct intention to injure
> another, it is "done to benefit the conspirators, [and] its natural and necessary
> consequences is the prejudice of the public or the oppression of individuals. *Hotel
> Riviera, Inc. v. Short*, 80 Nev. 505, 396 P.2d 855, 859-60 (1964).

*Ungaro,* 732 F. Supp. at 1532 n.3.

In the instant case, Plaintiffs have not come close to meeting the particularized pleading standard applicable here.  They have not alleged the required facts with the specificity necessary to proceed with a conspiracy claim against the moving Defendants.

**5.** **Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, EGG, and Repotex, Inc. are not subject to personal jurisdiction in this Court.**

The only moving Defendants whom Plaintiffs allege actually engaged in any conduct in Nevada are Compass Partners, LLC (which acquired the Purchased Assets from the Bankruptcy Court in Nevada), Compass USA SPE, LLC (which was assigned the Purchased Assets), Compass Financial Partners, LLC (Nevada) (which allegedly acted as a loan sub-servicer). There are no allegations that Friedman, Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, EGG, or Repotex, Inc. actually engaged in any conduct in this State --- merely generalized allegations which lump them all in together as "Compass" or "Defendants".  Those Defendants should be dismissed for lack of personal jurisdiction.

**a.** **Plaintiffs' federal and Nevada RICO allegations, and their conspiracy allegations, are insufficient to establish personal jurisdiction.**

The federal RICO Act authorizes nationwide service of process under 18 U.S.C 1965, which allows courts to acquire jurisdiction over defendants who do not have minimum contacts with the state where the federal court is located.  However, nationwide RICO service is "not unlimited":

> "For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local* 498, 788 F.2d at 539.  It is also necessary, for nationwide service of process, that the complaint state a claim under civil RICO and that the ends of justice require nationwide service. 18 U.S.C. § 1965(b).

*Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1517-1518 (D. Nev. 1987). See also *Rocawear Licensing LLC v. Pacesetter Apparel Group*, 2007 U.S. Dist. LEXIS 98894 (C.D. Cal. Sept. 12, 2007) (discussing the requirements for demonstrating personal jurisdiction over RICO defendants).  Thus, even if the Court does not dismiss Plaintiffs' federal RICO claim, it is not

1   enough under 18 U.S.C. 1965 to simply allege that defendants have participated in a RICO

2   conspiracy.  Plaintiffs must demonstrate: (1) that they have sufficiently alleged a

3   multidistrict/nationwide conspiracy that encompasses the defendants; (2) that the court has

4   personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy;

5   and (3) that there is no other district in which a court will have personal jurisdiction over all of

6   the alleged co-conspirators.  *Republic Health Corp.*, 669 F. Supp. at 1517-1518.

7          Under the first element, in order to sufficiently plead the existence of a nationwide

8   conspiracy among Defendants, a plaintiff must plead sufficient facts demonstrating that each

9   defendant intended to enter into an agreement or that the defendant had knowledge of the nature

10  of the conspiracy, and that the conspirator intended to further an endeavor that would satisfy the

11  elements of a substantive criminal offense/RICO enterprise.  See *Moore v. Kayport Package*

12  *Express*, 885 F.2d 531, 541 (9th Cir. 1989) ("The RICO claim in the investors' proposed third

13  amended complaint does not attribute specific conduct to individual defendants. … This is not

14  sufficient.")  As explained by the Ninth Circuit in *Moore*:

15          The few general allegations of conduct which are apportioned to a particular defendant
16          are aimed at the stockbroker defendants.  These particular charges, however, fail to
            specify the time, place, and content of the alleged mail and securities fraud, the predicate
17          acts on which the RICO claim is based.  Furthermore, none of the RICO allegations
            identifies the role of the individual defendants in the alleged fraudulent scheme.
18  *Id.*

19          Plaintiffs' federal RICO allegations involve various individuals and corporate entities

20  who overwhelmingly reside or principally do business in New York, Connecticut, and Nevada[20]

21  conspired to engage in wrongful loan servicing activity with respect to loans made to borrowers

22

23

24

25  [20]     Plaintiffs allege that Compass FP Corp. has its principal place of business in California.  (2AC, para. 7.)
    They alleged that Oakbridge Capital, Inc. has its principal place of business in Delaware.  (Id., para. 18.)  Plaintiffs
26  accurately alleged that Piskun now resides in California (id., para. 14), but at he testified during the 892 Case, at the
    time of the events described in the Second Amended Complaint he lived in New Jersey and worked in New York.
27  The various Citron Defendants are allegedly based in Florida, but the allegations against them appear limited to their
    sale of certain property in connection with the Lake Helen Partners Loan and not a larger RICO conspiracy.  (See
28  id., para. 36-39.)

in unspecified states.[21]  Plaintiffs have referred to numerous Defendants collectively as "Compass," but have not sufficiently pled facts indicate that each moving Defendant actually intended to further an endeavor satisfying the elements of a RICO enterprise, or that each Defendant agreed to participate in a conspiracy.  For example, Plaintiffs describe alleged wrongdoing with respect to the several loan transactions by "Compass" without describing specifically how each of the moving Defendants was aware of, or agreed to participate in, a national conspiracy.  Under *Republic Health Corp.* and *Butcher's Union Local 498,* this is precisely the sort of case in which the Court should hold that RICO-based national jurisdiction is indeed not "unlimited."

Plaintiffs also assert a claim for civil conspiracy against all Defendants, including the moving Defendants.  Even if this claim is not dismissed, Plaintiffs' allegations are far too generalized to establish personal jurisdiction.  The Ninth Circuit has not expressly accepted or rejected the "conspiracy theory" of personal jurisdiction, and has noted that a "great deal of doubt" surrounds its legitimacy.  *Menalco, FZE v. Buchan,* 602 F. Supp. 2d 1186, 1193-1194 (D. Nev. 2009), quoting *Chirila v. Conforte,* 47 Fed. Appx. 838, 842, 2002 WL 31105149, at *3 (9th Cir. 2002) (unpublished).[22]  The Ninth Circuit has rejected a similar conspiracy theory in the context of venue.  *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491 (9th Cir. 1979).

### b.   **Plaintiffs cannot establish specific or general personal jurisdiction over many of the moving Defendants in  the absence of statutorily based nationwide jurisdiction arising out of their federal RICO claim.**

Absent nationwide federal RICO service, or a "conspiracy theory" of personal jurisdiction, Plaintiffs have pled insufficient facts to establish personal jurisdiction over moving defendants Friedman, Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, EGG, or Repotex.  Plaintiffs have the burden to establish

---

[21]    Plaintiffs have alleged that the Lake Helena Partners Loan involved property in Florida.  (2AC, para. 151.) They have also alleged that the Fox Hill and Eagle Meadows Loans involved real estate in California.  (Id., para. 130.)

[22]    See also *Yu-Sze Yen v. Buchholz,* 2010 U.S. Dist. LEXIS 42393 (N.D. Cal. Apr. 30, 2010) (declining to base personal jurisdiction on allegations of conspiracy); *Silver Valley Partners., LLC v. De Motte,* 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005) (same).

that personal jurisdiction exists.  *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007); *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir. 1978).[23]

1.   **Plaintiffs cannot establish that general personal jurisdiction exists over certain of the moving Defendants.**

Plaintiffs have not alleged facts remotely suggesting that moving Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, EGG, or Repotex are subject to general jurisdiction in Nevada.  An individual is subject to general jurisdiction in a forum when he has conducted activities there which are "substantial" or "continuous and systematic" so that he may be deemed present in the forum, and hence subject to suit in the forum with respect to any and all claims asserted against him.  See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  The Ninth Circuit has noted it has "regularly … declined to find general jurisdiction even where the contacts are quite extensive."  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993).

The Second Amended Complaint is devoid of any reasonably specific allegations against the aforementioned moving Defendants which would subject them to general jurisdiction.  The only allegations against them are that they were part and parcel, in some unstated manner, of a wrongful scheme to enrich themselves at the expense of the direct lenders.

2.   **Specific jurisdiction does not exist over certain of the moving Defendants.**

The Ninth Circuit recognizes a three-part test to determine whether specific jurisdiction may be applied to a defendant: "(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the

---

[23]     Plaintiffs allege that Friedman is a "principal" of "Compass". (2AC, para. 16.)  However, in the absence of the federal RICO jurisdictional argument, "Jurisdiction over an individual director or officer of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individual maintains contacts with the forum state that would subject him to the coverage of the state's long arm statute and comport with due process." *Klein v. Freedom Strategic Partners, LLC*, 2009 U.S. Dist. LEXIS 10725, 9-10 (D. Nev. 2009) (quoting *Hoag v. Sweetwater Int'l*, 857 F. Supp. 1420, 1426 (D. Nev. 1994)).

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    benefits and protections of its laws; (2) the claim must be one which arises out of or results

2    from the defendant's forum-related activities, and (3) exercise of jurisdiction must be

3    reasonable." *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (internal

4    citations and quotations omitted).  All of these requirements must be met in order for

5    jurisdiction over the defendant to comply with due process.  *Id.*

6            Plaintiffs have not alleged any specific acts or transactions through which Friedman,

7    Compass Financial Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC,

8    Compass USA Holding, LLC, Compass USA, LP, EGG, or Repotex, Inc. purposefully availed

9    themselves of the privilege of conducting activities in Nevada.  All that they have pled are

10   activities by Compass Partners, LLC, Compass USA SPE, coupled with generalized allegations

11   of conspiratorial conduct on the part of the other moving Defendants.[24]

12           Based on the foregoing, the Court should dismiss Plaintiffs' claims against Friedman,

13   Compass Financial Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC,

14   Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., and

15   Repotex, Inc. for lack of personal jurisdiction.

16   **D.      Prayer for relief.**

17           Based on the foregoing, the moving Defendants pray for the following relief:

18           1.      That Plaintiffs' Second Amended Complaint be dismissed with respect to moving

19   Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP Corp., Compass

20   USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group,

21   Inc., and Repotex, Inc. for lack of personal jurisdiction.

22           2.      That the following claims set forth in Plaintiffs' Second Amended Complaint be

23   dismissed with respect to the following moving Defendants:

24   ///

25   ///

26   ///

27

---

28   [24]      Plaintiffs have also alleged that Compass Financial Partners, LLC (NV) was formed under Nevada law.
     Thus, the moving Defendants are not making this argument on behalf of that entity.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

| Federal RICO, Nevada RICO, elder abuse pursuant to NRS 41.1395, civil conspiracy | All moving Defendants |
|---|---|
| Breach of contract and breach of the implied covenant of good faith and fair dealing, and attorney's fees pursuant to the LSAs | All moving Defendants except Compass Partners, LLC, and Compass USA SPE, LLC |
| Breach of fiduciary duty and conversion | All moving Defendants except Compass Partners, LLC, Compass USA SPE, LLC, Piskun, and Blatt |

Each of these claims fails to state a plausible claim for relief against the referenced moving Defendants, so all of Plaintiffs' against these moving Defendants, and should be dismissed under Rule 12(b)(6).

DATED this 22nd day of August, 2011.

LAXALT & NOMURA, LTD.

DANIEL T. HAYWARD, ESQ.
Nevada State Bar No.:  5986
HOLLY S. PARKER, ESQ.
Nevada State Bar No. 10181
dhayward@laxalt-nomura.com
hparker@laxalt-nomura.com
LAXALT & NOMURA
9600 Gateway Drive
Reno, Nevada  89521
Telephone: (775) 322-1170
Facsimile: (775) 322-1865
Attorneys for Defendants
David Blatt, Boris Piskun, Ron Friedman, Compass Financial Partners, LLC, Compass FP Corp., Compass Partners, LLC, Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Compass USA SPE, LLC, Economic Growth Group, Inc., Repotex, Inc.

1

## <u>CERTIFICATE OF SERVICE</u>

2
3

 Pursuant to FRCP 5(b), I certify that I am an employee of LAXALT & NOMURA, LTD., and that on this 22nd day of August, 2011, I caused a true and correct copy of the foregoing to be served:

4

 _VIA ELECTRONIC SERVICE

5

addressed as follows:

6

*** SEE ATTACHED LIST ***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Lisa Rasmussen
2   lisa@irasmussenlaw.com
    alex@iramussenlaw.com
3   secretary@irasmussenlaw.com

4   Francis B. Majorie
    fbmajorie@themajoriefirm.com
5   kbanks@themajoriefirm.com
6   vrunning@themajoriefirm.com

7   Melanie A. Hill
    melanie@melaniehilllaw.com
8   kristinsmith23@gmail.com

9   Michael J. Collins
10  mjc@bickelbrewer.com

11  Robert M. Millimet
    rrm@bickelbrewer.com
12

13  William A. Brewer, III
    wab@bickelbrewer.com

14

15

16

17                          An Employee of Laxalt & Nomura, Ltd.

18

19

20

21

22

23

24

25

26

27

28