1  Daniel T. Hayward, Esq.
   Nevada State Bar No. 5986
2  LAXALT & NOMURA, LTD.
3  9600 Gateway Drive
   Reno, Nevada 89521
4  dhayward@laxalt-nomura.com
   Telephone: (775) 322-1170
5  Facsimile: (775) 322-1865
6  Attorneys for Defendants
   David Blatt, Boris Piskun, Ron Friedman,
7  Compass Financial Partners, LLC, Compass FP Corp.,
   Compass Partners, LLC, Compass USA GP,
8  LLC, Compass USA Holding, LLC, Compass USA, LP,
   Compass USA SPE, LLC, Economic Growth Group, Inc.,
9  Repotex, Inc.

10              UNITED STATES DISTRICT COURT

11                  DISTRICT OF NEVADA

12
   LEONARD C. ADAMS, et al.          )    Case No. 3:11-cv-00210-RCJ-VPC
13                                    )
                  Plaintiffs,         )
14                                    )
15 v.                                 )    **REPLY IN SUPPORT OF**
                                      )    **MOTION TO DISMISS**
16                                    )
   SILAR ADVISORS, LP, et al.,        )
17                                    )
                  Defendants.         )
18  _____  )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ........................................................................................  1

MEMORANDUM OF
    POINTS AND AUTORITIES…………………………………… ............... 1

A. Introduction............................................................................................. 1

B. Legal Arguments ..................................................................................... 2

   1.  The Court cannot take judicial notice of the substantive
      determinations in the 892 case because those determinations
      lack claim preclusive or issue preclusive effect against certain
      moving Defendants ...................................................................... 2

         a.    The Court should decline to give res judicata/claim
                preclusive effect to the 892 rulings in favor of any Plaintiffs
                who were not parties to the 892 case or against any moving
                Defendants who were not parties to the 892 case ....................... 3

         b.    Issue preclusion does not apply to any of the
                moving Defendants .................................................................. 8

   2. The Court should disregard the claims of any Plaintiffs
      added after the filing of Plaintiffs' first "Notice," which purported
      to amend the claims of the parties in the Original Complaint,
      because Plaintiffs failed to seek leave of court to further amend their
      pleadings or join additional Plaintiffs ............................................ 11

   3.  Plaintiffs' conclusory allegations fail to support their federal RICO claim . 14

         a.    Plaintiffs fail to describe with particularity the conduct of
                each moving Defendant they claim supports their RICO claim ... 14

         b.    Plaintiffs fail to sufficiently state allegations meeting the
                closed-ended or open-ended continuity requirement .................... 19

         c.    Plaintiffs fail to allege a RICO conspiracy with particularity ....... 21

   4. Plaintiffs' failed to plead their Nevada RICO claim with particularity ......... 22

   5. Plaintiffs elder abuse claim fails and should be dismissed ............................ 24

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

6. Plaintiffs' fail to state a claim for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, or attorney's fees ........................................................................ 25

7. Plaintiffs' clam for civil conspiracy fails and should be dismissed .............. 26

8.  Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., and Repotex, Inc. are not subject to personal jurisdiction ......................................................... 28

        a.    Personal jurisdiction does not exist under Federal Rule of Bankruptcy Procedure 7004 because this case is not sufficiently "related to" the bankruptcy proceedings ................. 28

        b.    Plaintiffs' RICO and conspiracy allegations are insufficient to establish personal jurisdiction................................................. 30

CONCLUSION ............................................................................................. 31

CERTIFICATE OF SERVICE .................................................................................... 32

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

ii

# TABLE OF AUTHORITIES

## CASES

*Allwaste, Inc. v. Hecht,*
  65 F.3d 1523 (9th Cir.1995) ......................................................................20, 21

*Appling v. State Farm Mut. Auto. Ins. Co.,*
  340 F.3d 769 (9th Cir. 2003) ...............................................................10

*Blonder-Tongue Lab. v. Univ. of Ill. Found.,*
  402 U.S. 313 (1971)....................................................................................4

*Brooks v. Bank of Boulder,*
  891 F. Supp. 1469 (D. Colo. 1995).........................................................22

*C Cell Therapeutics, Inc. v. Lash Group, Inc.,*
  586 F.3d 1204 (9th Cir. 2010) ...............................................................4

*California Credit Union League v. City of Anaheim,*
  190 F.3d 997 (9th Cir. 1999) ...............................................................12

*Carmona v. Carmona,*
  544 F.3d 988 (9th Cir. 2008) ...............................................................5, 6

*Carstarphen v. Milsner,*
  594 F. Supp. 2d 1201 (D. Nev. 2009).....................................................18

*Coeur D'Alene Tribe v. Hammond,*
  384 F.3d 674 (9th Cir. 2004) ...............................................................10

*Collins v. D.R. Horton, Inc.,*
  505 F.3d 874 (9th Cir. 2007) ...............................................................10

*Disimone v. Browner,*
  121 F.3d 1262 (9th Cir. 1997) ...............................................................10

*Does 1-60 v. Republic Health Corp.,*
  669 F. Supp. 1511 (D. Nev. 1987).........................................................22

*Epstein v. Washington Energy Co.,*
  83 F.3d 1136 (9th Cir. 1996) ...............................................................18

*Flowers v. Carville,*
  266 F. Supp. 2d 1245 (D. Nev. 2003).....................................................27

*Goodwin v. Exec. Tr. Servs. LLC,*
  2010 U.S. Dist. LEXIS 134132 (D. Nev. Dec. 2, 2010).........................17

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

*Gottheiner,*
  703 F.2d 1136 (9th Cir. 1983) .................................................................................8

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
  492 U.S. 229 (1989)..............................................................................................20

*Hale v. Burkhardt,*
  104 Nev. 632, 764 P. 2d 866, (1988)................................................................22, 23

*Hansberry v. Lee,*
  311 U.S. 32 (1940)..................................................................................................4

*Harnist v. Colonial Bank NA,*
  2011 U.S. Dist. LEXIS 102088 (D. Nev. 2011) ......................................................27

*Hutson v. Am. Home Mortg. Servicing,*
  2009 U.S. Dist. LEXIS 96764 (N.D. Cal. Oct. 16, 2009).........................................22

*Insurance Co. of the West v. Gibson Tile Co.,*
  122 Nev. 455, 461, 134 P. 3d 698 (2006).................................................................26

*Kennedy v. Allied Mut. Ins. Co.,*
  952 F.2d 262 (9th Cir. 1991) ..................................................................................24

*Kourtis v. Cameron,*
  419 F.3d 989 (9th Cir. 2005) ....................................................................................4

*Mason v. Genisco Technology Corp.,*
  960 F.2d 849 (9th Cir. 1992) .................................................................................3, 4

*Marin v. HEW, Health Care Fin. Agency,*
  769 F.2d 590 (9th Cir. 1985) ....................................................................................3

*McGillis/Eckman Inv. - Billings, LLC v. Sportsman's Warehouse, Inc.,*
  2010 U.S. Dist. LEXIS 80810 (D. Mont. June 30, 2010).........................................29

*Montana v. Goldin (In re Pegasus Gold Corp.),*
  394 F.3d 1189 (9th Cir. 2005) ............................................................................28, 29

*Moore v. Kayport Package,*
  885 F. 2d 531 (9th Cir. 1989) ..................................................................................14

*Morris v. Bank of Am. Nev.,*
  110 Nev. 1274, 886 P.2d 454, (1994)........................................................................27

*Nat'l Med. Enters., Inc. v. Sullivan,*
  916 F.2d 542, 545 n.2 (9th Cir. 1990) ......................................................................10

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

*Nev. Fair Hous. Ctr., Inc v. Clark County,*
2007 U.S. Dist. LEXIS 12800 (D. Nev. Feb. 22, 2007) ...........................................8

*Odom v. Microsoft Corp.,*
486 F.3d 541 (9th Cir. 2007) ................................................................14, 15, 16, 17

*Ove v. Gwinn,*
264 F.3d 817 (9th Cir. 2001) ................................................................................14

*Parklane Hosiery Co. v. Shore,*
439 U.S. 322 (1979)................................................................................................4

*Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys., LLC,*
638 F. Supp. 2d 245 (D. Conn. 2009)....................................................................20

*Prall v. Bush,*
2010 U.S. Dist. LEXIS 18005 (D.R.I. Feb. 11, 2010).............................................22

*Religious Technology Center v. Wollersheim,*
971 F.2d 364 (9th Cir. 1992) ................................................................................20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
442 F.3d 741 (9th Cir. 2006) ..................................................................................8

*Robi v. Five Platters, Inc.,*
838 F.2d 318 (9th Cir. 1988) ..................................................................................3

*Sameena Inc. v. United States Air Force,*
147 F.3d 1148 (9th Cir. 1998) ..............................................................................22

*Sanford v. MemberWorks, Inc.,*
625 F.3d 550 (9th Cir. 2010) ................................................................................17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) ........................................................................16, 17

*Spool v. World Child Int'l Adoption Agency,*
520 F.3d 178 (2d Cir. 2008) .................................................................................20

*Sun Savings and Loan Ass'n v. Dierdorff,*
825 F.2d 187 (9th Cir. 1987) ................................................................................21

*Syverson v. IBM,*
472 F.3d 1072 (9th Cir. 2007) ................................................................................9

*Taddeo v. Taddeo,*
2011 U.S. Dist. LEXIS 103649 (D. Nev. 2011) ......................................................27

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

*Taylor v. Sturgell,*
   553 U.S. 880 (2008)...................................................................................4, 6

*United States v. Schimmels,*
   127 F.3d 875 (9th Cir. 1997) ..................................................................4

*Villa v. Silver State Fin. Servs.,*
   2011 U.S. Dist. LEXIS 54510 (D. Nev. 2011) ......................................27

*Wasco Prods. v. Southwall Techs., Inc.,*
   435 F.3d 989 (9th Cir. 2006) ................................................................22

*Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.,*
   916 F. Supp. 1024 (D. Nev. 1996)........................................................12

**STATUTES AND OTHER AUTHORITIES**

18 USC 1964(c) .....................................................................................14

FRCP 9(b) ..............................................................14, 15, 22, 27, 28

FRCP 12(b)(6) ................................................................................15, 16

FRCP 12 (b) (2) ......................................................................................28

FRCP 15.................................................................................................11

FRCP 21.............................................................................................11, 12

NRS 41.1395.....................................................................................24, 25

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    Defendants DAVID BLATT, BORIS PISKUN, RON FRIEDMAN, COMPASS

2  FINANCIAL PARTNERS, LLC, COMPASS FP CORP., COMPASS PARTNERS, LLC,

3  COMPASS USA GP, LLC, COMPASS USA HOLDING, LLC, COMPASS USA, LP,

4  COMPASS USA SPE, LLC, ECONOMIC GROWTH GROUP, INC., and REPOTEX, INC., by

5  and through their counsel of record, LAXALT & NOMURA, LTD., pursuant to FRCP 12(b)(2)

6  and 12(b)(6), hereby submit this Reply in support of their Motion to Dismiss.  This Reply is

7  based on the Second Amended Complaint, the following Memorandum of Points and

8  Authorities, and any additional information the Court may choose to consider.

9                    **MEMORANDUM OF POINTS AND AUTHORITIES**

10     **A.  Introduction.**

11     Plaintiffs' 56 page Response to Motion to Dismiss fails to identify sufficient factual

12  matter in the Second Amended Complaint which, accepted as true, supports a reasonable

13  inference that each of these moving Defendants is liable for the misconduct alleged.[1]  Plaintiffs'

14  Second Amended Complaint, therefore, fails to state a plausible claim for relief against these

15  moving Defendants as outlined below, and Plaintiffs' claims against them should be dismissed

16  under FRCP 12(b)(6).[2]

17     Alternatively, Plaintiffs' claims against Defendants Friedman, Compass Financial

18  Partners, LLC (DE), Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC,

19  Compass USA, LP, EGG, and Repotex, Inc. should be dismissed because the Court does not

20  have personal jurisdiction over them under FRCP 12(b)(2).

21  ///

22  ///

23

24     [1]     Pursuant to LR 7-4, concurrently with this Reply, Defendants have filed a Motion to file Reply Brief in Excess of the 20 Page Limit.  Additional pages are necessary to adequately respond to Plaintiffs' 56 page Response.

25     [2]     As discussed in the Motion, Plaintiffs' federal RICO, Nevada RICO, elder abuse, conversion, civil
26  conspiracy, and constructive trust claims are asserted against all of the moving Defendants.  The breach of contract, declaratory judgment / collateral estoppel, and attorney fees claims are directed at Compass Partners, LLC, Compass
27  USA SPE, LLC, Compass Financial Partners, LLC (Nevada and Delaware), Compass FP Corp., Compass USA Holding LLC, Compass USA, LP, and Compass USA GP, LLC.  The breach of implied covenant of good faith and
28  fair dealing and breach of fiduciary duty claims are directed against those same moving Defendants, as well as Blatt, Piskun, and Friedman.

## B. Legal Argument.

### 1. The Court cannot take judicial notice of the substantive determinations in the 892 case because those determinations lack claim preclusive or issue preclusive effect against certain moving Defendants.

Plaintiffs argue extensively in their Response that the Court should take judicial notice of various substantive determinations in the 892 case.[3] Plaintiffs, for example, claim that "Defendants are collaterally estopped from contesting the jury's findings of liability in connection with the Loans." (Resp. p. 9.) Plaintiffs specifically claim the Court can take judicial notice that the jury in the 892 case found that Compass Partners, Compass USA SPE, Blatt, and Piskun were liable for compensatory and punitive damages for their misconduct in connection with the Standard Property, Shamrock, Anchor B, and Bay Pompano Loans. (Resp. p. 9, fn 7.) Plaintiffs further claim that the Court may take judicial notice that Compass Partners, Compass USA SPE, Blatt, Piskun, Silar Advisors, Silar Fund, and/or Asset Resolution are liable for conversion in connection with the Standard Property, Shamrock, and Anchor B Loans. (Resp. p. 39.)

Plaintiffs further argue that the Court can take judicial notice of the following issues:

1) the Compass Defendants purported to service the Loans pursuant to powers of attorney provided by Plaintiffs pursuant to the LSAs;
2) Plaintiffs argued and the Court held that those powers of attorney were invalid under Nevada law; and
3) The Court's determination that those powers of attorney were invalid was not rendered until after the Court terminated Compass's and Asset Resolution's loan servicing rights under the LSAs.

(Resp. p. 40.)

Plaintiffs further claim that the Court should take judicial notice that the jury and Court found Compass Partners, Compass USA SPE, Blatt, and Piskun liable for conversion in connection with the Standard Property and Shamrock Loans, and other Loans. (Resp. p. 40, fn 18.) Plaintiffs argue that the Court should take judicial notice that Blatt and Piskun, as managing

---

[3] Although these moving Defendants filed a Request for Judicial Notice concurrently with their Motion to Dismiss to request that the Court take judicial notice of the existence and filing dates of certain filings and orders in the 892 case, the authorities cited by Defendants in their Request do not allow the Court to take judicial notice of the substantive determinations in the 892 case.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1   members of Compass Partners and Compass USA SPE, were held personally liable for Compass

2   Partners' and Compass USA SPE's tortious breaches of the implied covenant of good faith and

3   fair dealing, breaches of fiduciary duty, and conversion. (Resp. p. 43-44.) Plaintiffs further

4   claim that the Court should take judicial notice that Compass Partners, Compass USA SPE,

5   Blatt, and Piskun engaged in a civil conspiracy to further their economic interests in connection

6   with the Standard Property Loan. (Resp. p. 45.)

7          "Generally, the preclusive effect of a former adjudication is referred to as 'res judicata.'

8   The doctrine of res judicata includes two distinct types of preclusion, claim preclusion and issue

9   preclusion." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). Plaintiffs cite no

10  authority which would allow the Court to give claim or issue preclusive effect to many of the

11  892 determinations and issues described above. Plaintiffs also fail to explain whether they seek

12  to apply the preclusive effect of the determinations in favor of <u>all</u> the Plaintiffs and against <u>all</u> the

13  moving Defendants, even those who were not parties to the 892 case. For the reasons outlined

14  below, the Court cannot give claim and issue preclusive effect to the 892 determinations in favor

15  of all of the Plaintiffs and against all of the moving Defendants. The Court, therefore, should

16  disregard Plaintiffs' improper arguments regarding judicial notice.

17          **a. The Court should decline to give res judicata/claim preclusive effect to the 892
18          rulings in favor of any Plaintiffs who were not parties to the 892 case or against
            any moving Defendants who were not parties to the 892 case.**

19          The liability determinations in the 892 case have no claim preclusive effect in favor of

20  any Plaintiffs or against any Defendants who were not parties to the 892 case. Even Plaintiffs

21  who were parties in the 892 action cannot assert the claim preclusive effect of any 892

22  determinations against moving Defendants who were not parties to the 892 action.

23          "Under the doctrine of claim preclusion, a final judgment bars further litigation by the

24  same parties based on the same cause of action." *Mason v. Genisco Technology Corp.*, 960 F.2d

25  849, 851 (9th Cir. 1992) (citing *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593 (9th

26  Cir. 1985)). In *Mason*, a determination was made in an earlier case that an employer terminated

27  an employee for cause because a default judgment was entered against the employee, but there

28  was no claim preclusive effect in a subsequent action by the employee where the employee was

not made a party to the earlier action by proper service. *Id.* at 851-853. See also *C Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010) ("Claim preclusion does not attach to CTI's claims against Lash . . . . Lash was not a party to the Settlement Agreement, and none of CTI's claims against Lash were raised in the qui tam litigation, nor were they included in the settlement. Just as significantly, there has been no final judgment on the merits."); Moore's Federal Practice 3d 131.40[1] (discussing that prior judgment bars subsequent action on the same claim only between the same parties or their privies, and noting that claim preclusion <u>cannot be applied in favor of someone who was a stranger to the initial proceeding</u>).

Based on these authorities, claim preclusion cannot be applied in favor of any Plaintiffs who were not parties to the 892 against any of the moving Defendants. Even the Plaintiffs in the 892 action should be prevented from asserting claim preclusion against Defendants who were not parties to the 892 case because there is insufficient privity between the newly named Defendants and the Defendants defaulted in the 892 action.

The concept of privity must meet due process requirements. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or in privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327, fn 7 (1979) (citing *Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). Privity "'is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir. 2005) (overruled on other grounds) (quoting *United States v. Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). "Privity was traditionally limited to several well-defined categories of relationships, including co-owners and co-tenants of property, assignors and assignees, and indemnitors and indemnitees." 419 F.3d at 996. "[A]dequacy of representation [is] the *sine qua non* of any privity relationship." *Id.* at 997, fn 5.

In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the United States Supreme Court discussed the following narrow categories of exceptions to the general rule against non-party preclusion:

1           1) a person who agrees to be bound by the determination of issues in an action between others;

2           2) based on a pre-existing substantive legal relationships between the person to be bound and a party to the judgment (*e.g.* assignee/assignor);

3           3) in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a

4    party to the suit (*e.g.* class action);

5           4) a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered such that the controlling party had her day in court;

6           5) a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy (*e.g.* where a person not a party to the first action brings suit as the

7    representative of a party to the prior case); and

8           6) in certain circumstances a statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process.

9    *Id.* at 893-895.

10        In *Carmona v. Carmona*, 544 F.3d 988 (9th Cir. 2008), a husband married his eighth

11    wife, Janis, then retired and designated her as his survivor beneficiary under two pension plans

12    through Hilton and the Nevada Resort Association International Alliance of Theatrical and State

13    Employees Local Pension Trust ("IATSE"). *Id.* at 993. If the husband died, Janis would receive

14    a portion of her husband's monthly pension benefits from the plans. *Id.* at 993. A few years

15    later, the husband and Janis commenced divorce proceedings; before entry of the divorce decree,

16    the husband inquired whether he could remove Janis as a survivor beneficiary under the plans.

17    *Id.* at 993. The plans declined, claiming that the designation was irrevocable upon the husband's

18    retirement. *Id.* at 993. The family court, however, granted the husband the pensions as his sole

19    and separate property. *Id.* at 993. After the divorce, the husband married his ninth wife. *Id.* at

20    994. The husband requested a Qualified Domestic Relations Order from the family court to

21    revoke Janis' designation as the survivor beneficiary. *Id.* at 994. The husband died, and the

22    family court ordered the plan administrators to change the beneficiary to the new wife, or

23    alternatively, that a constructive trust be placed on the funds, with the new wife named as the

24    beneficiary. *Id.* at 994.

25        Janis appealed the family court's decision to the Nevada Supreme Court, which affirmed

26    the family court order, holding that ERISA did not preempt the family court's rulings. *Carmona*,

27    544 F.3d at 994. Following the Nevada Supreme Court's decision, the family court entered an

28    order requiring Janis to deposit the survivor benefits into a constructive trust, and two orders

1   labeled Qualified Domestic Relations Order, which directed the plans to pay the new wife. *Id.* at

2   994. Janis filed an ERISA suit in federal district court against the new wife and the plans,

3   seeking to enjoin any act which might violate ERISA or the terms of the plans. *Id.* at 994.

4   IATSE Trustees filed a cross-claim against Judy seeking declaratory relief. *Id.* at 994. The

5   district court concluded that res judicata did not bar IATSE's cross-claim because it was not in

6   privity with Janis in the previous action. *Id.* at 994. The district court made various other

7   findings as well, and Janis and IATSE appealed. *Id.* at 994.

8          With respect to IATSE's cross-claim, the Ninth Circuit Court of Appeals affirmed the

9   district court's conclusion that res judicata did not bar the claim. *Carmona*, 544 F.3d at 994.

10  The Court specifically discussed:

11         Similarly, res judicata does not preclude IATSE from establishing its obligations with
           respect to Judy and Janis . . . . Res judicata does not apply here because IATSE was not a
12         party to the first state court suit nor was it in privity with Janis. Although they advance
           similar arguments with a similar goal in mind--to establish that Lupe was precluded from
13         changing Janis's beneficiary status after his retirement--they each maintain unique
           interests. IATSE must concern itself with the correct administration of its pension plans,
14         and it has fiduciary duties distinct from the interests of the wives in this case. See, e.g., 29
           U.S.C. § 1104. Janis's interest is merely in receiving the remainder benefits to which she
15         feels she is entitled. Because Janis and IATSE do not share an identity of interests,
           Janis's prior suits have no preclusive effect on IATSE's claim that the state court QDROs
16         were insufficient to transfer benefits.
17

18  *Id.* at 997.

19         Similar to the reasoning in *Carmona*, even if the Defendants in the 892 action and the

20  newly named moving Defendants share a similar legal goal (*i.e.* to successfully defend against

21  Plaintiffs' claims), Plaintiffs make no attempt to demonstrate that the new Defendants were

22  adequately represented in the previous suit, or that they have a sufficient privity with the 892

23  Defendants to meet the requirements of due process.[4] To the contrary, Plaintiffs have grouped

24  the "Compass" Defendants together as a group in their Response, but they fail to describe a

25  relationship matching one of the six exceptions outlined in *Taylor*. For example, Plaintiffs make

26

27  _____

    [4]    Based on the authorities cited in Defendants' Request for Judicial Notice, the Court can take judicial notice
    that Plaintiffs previously submitted a Proposed Judgment in the 892 action wherein they admitted that only the 52
28  Plaintiffs and the seven Defendants in the 892 Case were bound by the 892 judgment. (Ex. "A," Proposed Final
    Judgment.)

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1   no allegation that any of the newly named moving Defendants agreed to be bound by the

2   determination of issues in the first action, that there is a legal relationship between them and the

3   892 Defendants such as bailor/bailee, that the new Defendants had a representative in the

4   previous action (*e.g.* class action), that any of the new Defendants controlled the prior litigation,

5   that any of the new Defendants is a proxy, or that a special statutory scheme expressly

6   forecloses successive litigation in this case.

7       For example, moving Defendants who were parties to 892 action were Compass USA

8   SPE, Compass Partners, Piskun, and Blatt. Plaintiffs argue generally that Friedman was a

9   principal of several of the Compass entities. (Resp. p. 4.) Plaintiffs' general arguments,

10  however, fail to sufficiently describe a relationship of privity (such as those described above)

11  between Friedman and the 892 Defendants such that his interests were adequately represented in

12  the 892 case. Similarly, Plaintiffs argue generally in their Response that the Loans were serviced

13  by Compass USA SPE's sub-servicers, Compass Financial Partners, LLC (NV), Compass

14  Financial Partners, LLC (DE), and Compass FP Corp., in which Compass Partners was the sole

15  member or shareholder. (Resp. p. 38.) Plaintiffs, however, fail to describe a pre-existing

16  substantive legal relationship justifying a finding of privity, such as one of the previously

17  recognized examples of assignee/assignor, bailor/bailee, co-owners of property, or

18  indemitors/indemnitees.

19      Plaintiffs further argue that Compass Partners is the manager of Compass USA GP, LLC,

20  which is the general partner of Compass USA, LP, in which Compass Holding is a limited

21  partner. (Resp. p. 38.) Even assuming the accuracy of the alleged relationships between the

22  moving Defendants as described by the Plaintiffs, these allegations fail to describe a relationship

23  of privity that would meet the standards of due process outlined above or circumstances

24  describing adequate representation of these Defendants in the previous suit. Plaintiffs similarly

25  fail to argue sufficient privity between Repotex and Economic Growth Group and the 892

26  Defendants meeting the requirements of due process. None of the Plaintiffs, therefore, can assert

27  claim preclusion against the newly named Defendants, and the Plaintiffs who were not parties to

28  the 892 case cannot assert claim preclusion against the 892 moving Defendants.

**b.  Issue preclusion does not apply to any of the moving Defendants.**

All of the Plaintiffs should be prevented from asserting that that the 892 determinations have collateral estoppel/issue preclusive effect against any of the moving Defendants.  Collateral estoppel (*i.e.* issue preclusion) applies to preclude relitigation of an issue decided in an earlier case if the following requirements are met: 1) the issue was necessarily and actually decided in the previous proceeding and is identical to the issue which a party is seeking to relitigate; 2) the first proceeding concluded with a final judgment on the merits; and 3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 442 F.3d 741 (9th Cir. 2006); *Nev. Fair Hous. Ctr., Inc v. Clark County*, 2007 U.S. Dist. LEXIS 12800 at *17 (D. Nev. Feb. 22, 2007) ("Issue preclusion only applies to matters that were actually decided.")  Plaintiffs cannot meet the first and third requirements.

With respect to the first requirement, Plaintiffs cannot demonstrate that the liability issues in the 892 case were actually decided.  A default judgment may have an issue preclusive effect in cases where the issues were actually litigated, such as where a party participates in litigation for a substantial period of time before a default is entered.  *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (default judgment had issue preclusive effect regarding issue of whether a debt was owed when defaulter actively participated in the case for 16 months before default judgment was rendered against him as a sanction for refusing to participate in discovery).  Unlike the circumstances in *Gottheiner*, the moving Defendants in the 892 case were not actively involved in that case for a substantial period of time before the default was entered.  The claims in the 892 case were commenced against moving Defendants Blatt, Piskun, Compass Partners, and Compass USA SPE on September 28, 2007 when Plaintiffs filed their First Amended Complaint.  Piskun and Blatt filed a Motion to Dismiss on December 13, 2007. (241 Case, #61.)  The Motion to Dismiss was never decided.  Compass USA SPE and Compass Partners filed an Answer on December 14, 2007 (241 Case, #63), and filed separate counterclaims on that same date. (241 Case, #64.)  On January 28, 2008 the Court entered an Order confirming a stipulated standstill agreement during which the parties would mediate toward a possible global

settlement of all outstanding issues. (892 Case, #323.) Plaintiffs then filed a Second Amended Complaint on February 7, 2008. (892 Case, #364).  The standstill order was effectively lifted by the Court on January 20, 2009 (892 Case, #821) when the Court directed that all Defendants respond to the Second Amended Complaint on or before February 9, 2009.  Plaintiffs requested that the Court enter a default against the four Compass Defendants on April 20, 2009.  (892 Case, #1072.) The Court entered the default on January 25, 2010. (892 Case, #1632.)

To summarize, the four Compass Defendants in the 892 case responded to the pleadings directed against them on December 13-14, 2007. About six weeks later, on January 28, 2008, the standstill order was entered.  It was not lifted until nearly a year later on January 20, 2009. Plaintiffs moved to default the Compass Defendants three months later on April 20, 2009, and the Court entered the default nine months later on January 25, 2010. <u>There were only about four and one-half months of time after during which the Compass Defendants had responded to Plaintiffs' pleadings, Plaintiffs had not yet moved for entry of default, and no standstill order in place:  December 13-14, 2007 – January 28, 2008, and January 20, 2009 – April 20, 2009.</u>  The moving Defendants in the 892 case did not have an adequate opportunity to actively participate in that case for a substantial period of time before the default was entered, so the issues in the 892 case cannot be considered actually decided as to them. All of the Plaintiffs, therefore, should be precluded from asserting issue preclusion against any of the moving Defendants.

Plaintiffs also cannot demonstrate the third privity requirement for the reasons outlined above. None of the Plaintiffs, therefore, can apply the doctrine of issue preclusion against the newly named Defendants.

Finally, it would be unfair to allow the Plaintiffs in this case who were not parties to the 892 action to assert offensive collateral estoppel against any of the moving Defendants.[5]

---

[5]     Similar to the requirements for application of issue preclusion generally, the prerequisites for offensive non-mutual collateral estoppel are whether (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom [collateral estoppel] is asserted was a party or in privity with a party in the prior action. *Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007) (internal citations omitted). Plaintiffs cannot meet the actually litigated and privity requirements as discussed above.  Moreover, application of offensive non-mutual collateral estoppel would be fundamentally unfair in this case.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1  Offensive collateral estoppel occurs when a plaintiff seeks to prevent a defendant from
2  relitigating an issue the defendant previously litigated unsuccessfully in another action against
3  the same or a different party. *Coeur D'Alene Tribe v. Hammond*, 384 F.3d 674, 689 (9th Cir.
4  2004) (quoting *Nat'l Med. Enters., Inc. v. Sullivan*, 916 F.2d 542, 545 n.2 (9th Cir. 1990)).
5  "'Offensive non-mutual collateral estoppel is a version of the doctrine [of collateral estoppel] that
6  arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant
7  previously litigated and lost against another plaintiff.'" *Collins v. D.R. Horton, Inc.*, 505 F.3d
8  874, 876, fn 1 (9th Cir. 2007) (also stating where "'the application of offensive collateral
9  estoppel would be unfair to a defendant, a trial judge should not allow the use of collateral
10  estoppel.'"); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 776-777 (9th Cir. 2003)
11  (district court did not abuse its discretion in refusing to apply offensive collateral estoppel where
12  it would be unfair to the Defendant); *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997)
13  (Some "unfair circumstances include where (1) potential plaintiffs could sit on the sidelines
14  waiting until another plaintiff has obtained a favorable judgment; (2) the second action involves
15  substantially higher stakes than the first, or affords the defendant procedural opportunities not
16  originally available; and (3) circumstances have changed by the time of the second suit that
17  would affect the decision of the court.")

18      At the conclusion of the trial in the 892 case, only 52 Plaintiffs were asserting claims
19  against the moving Defendants. Nearly 1,200 Plaintiffs are attempting to assert claims against
20  the moving Defendants in this case. The sheer number of Plaintiffs demonstrates that
21  substantially higher stakes are involved in this case. Moreover, discovery and the procedural
22  opportunities will necessarily be different in this case due to the number of Plaintiffs. Unfairness
23  to the moving Defendants would result, therefore, if Plaintiffs who were not parties to the 892
24  case are permitted to assert offensive non-mutual collateral estoppel against any of the moving
25  Defendants.

26      Plaintiffs cannot demonstrate that the issues in the 892 case were actually litigated by the
27  Compass Defendants, or that sufficient privity exists between the newly named Defendants and
28  the moving Defendants who were parties to the 892 action, so none of the Plaintiffs can apply

1   issue preclusion against the moving Defendants.  Moreover, application of offensive non-mutual

2   collateral estoppel would be unfair to the newly named moving Defendants, so the Plaintiffs who

3   were not parties to the 892 action should be prevented from asserting it against any of the

4   moving Defendants.

2.   **The Court should disregard the claims of any Plaintiffs added after the filing of Plaintiffs' first "Notice," which purported to amend the claims of the parties in the Original Complaint, because Plaintiffs failed to seek leave of court to further amend their pleadings or join additional Plaintiffs.**

8   As discussed at length in Defendants' Motion to Dismiss and their Supplement thereto,

9   even if Plaintiffs were permitted to file one amended pleading as a matter of right without leave

10   of court under FRCP 15, in order to add, drop, or otherwise amend the parties subsequent to the

11   filing of that one amended pleading, Plaintiffs were required to seek leave of court under FRCP

12   15 or 21 (and related joinder Rules), or they were required to file a motion to intervene.[6]

13   Plaintiffs argue that that joinder of additional Plaintiffs was appropriate because they seek

14   the same remedy as the other Plaintiffs in the case, that Defendants will not suffer prejudice from

15   the joinder, and that the claims of the new Plaintiffs are based on the same transactions and

16   occurrences as the claims of the Plaintiffs named in the Original Complaint.  All of these

17   arguments, however, fail to address Plaintiffs' fundamental failure to seek leave of court on

18   multiple occasions after their one amended pleading as a matter of right.  Similarly, several

19   authorities Plaintiffs cite in support of these arguments present reasons to allow amended

20   pleadings/joinder after a party has already appropriately filed an amended pleading as a matter of

21   ///

22   ///

23   ///

24   ///

25

26   [6]   Plaintiffs fail to cite any authority requiring Defendants to seek leave of Court to file a Supplement to their
27   Motion which provides additional facts that Defendants learned within days of filing the Motion.  Defendants filed
     their Motion to Dismiss on August 22, 2011, and they filed the Supplement on August 25, 2011, just 3 days after
28   filing the Motion and nearly a month before Plaintiffs filed their Response on September 23, 2011.  Plaintiffs,
     therefore, had ample opportunity to respond to the additional facts set forth in the Supplement.

1    right or sought leave of court to amend or join a party.[7]   Although the <u>Court</u> can join a party on

2    motion or on its own initiative, the Rules governing joinder, amendments, and intervention

3    clearly prevent parties such as the Plaintiffs in this case from unilaterally amending their

4    pleadings or joining parties at will. Plaintiffs' argument that joinder of additional Plaintiffs

5    without leave of court was procedurally proper, therefore, is erroneous.

6         Plaintiffs filed a "Notice" for Plaintiffs with last names beginning with letter A-B on

7    March 22, 2011, which purports to drop Plaintiffs Leonard Adams, Michel F. Aiello, and Loretta

8    D. Backes from the Original Complaint filed on March 21, 2011.[8]   (Docket #2.)   This Notice,

9    therefore, constituted Plaintiffs' one amended pleading as a matter of right.   Every filing

10   purporting to further amend the pleadings filed after this Notice should be disregarded, and the

11   claims of any added Plaintiffs should be dismissed or severed because they failed to seek leave to

12   further amend.   On March 22, 2011 and March 23, 2011, for example, Plaintiffs filed several

13   Notices by Plaintiffs with last names beginning with the letters A-B, C-D, E-F, G, H-K, L-O, P-

14   S, and T-Z, which purport to further change the pleadings even though Plaintiff did not seek

15   leave of court.   (Docket # 2-10.)

16        Plaintiffs specifically failed to seek leave of court to submit the following extensive

17   filings after their amended "Notice" for last names A-B filed on March 22, 2011:

18        3/22/11 Notice by Plaintiffs with last names C-D (Docket #3)
         3/22/11 Notice by Plaintiff Monica C. Ebaugh (Docket #4)
19        3/22/11 Notice by Plaintiffs with last names E-F (Docket #5)
20        3/22/11 Notice by Plaintiffs with last names G (Docket #6)

---

[7]    *See e.g. California Credit Union League v. City of Anaheim*, 190 F.3d 997 (9th Cir. 1999) (granting joint
motion to join a party on appeal as a co-plaintiff because the joining plaintiff sought the same remedy as the initial
plaintiff and earlier joinder would not have affected the course of the litigation); *Winner's Circle of Las Vegas, Inc.
v. AMI Franchising, Inc.*, 916 F. Supp. 1024 (D. Nev. 1996) (discussing that joinder of co-defendant was proper
after plaintiff was procedurally correct in filing an amended complaint as a matter of right). In *Winner's Circle*, the
Court discussed that dismissal of an entire action is not appropriate under FRCP 21 for misjoined parties (*i.e.* parties
with claims that do not arise out of the same transaction/occurrence as the underlying claims or do not present some
common question of law or fact). That analysis, however, does not prevent severance and dismissal of the claims of
the Plaintiffs in this case who did not appropriately seek leave of court to add their claims from the outset. 916 F.
Supp. at 1028, fn 2. Defendants, therefore, seek severance/dismissal of the claims of Plaintiffs that were not
properly added to this case.

[8]    Even if the Plaintiffs were requested by the Clerk of Court to file the "Notices" to enter the Plaintiffs'
names into the electronic filing system, that did not allow the Plaintiffs to continue to unilaterally change the claims
of the Plaintiffs set forth in the Original Complaint without seeking leave of court after their one amended pleading
as a matter of right.

3/23/11 Notice by Plaintiffs with last names H-K (Docket #7)
3/23/11 Notice by Plaintiffs with last names L-O (Docket #8)
3/23/11 Notice by Plaintiffs with last names P-S (Docket #9)
3/23/11 Notice by Plaintiffs with last names T-Z (Docket #10)
3/31/11 First Amended Complaint and Jury Demand (Docket #13)
4/5/11 Notice of Plaintiffs added in First Amended Complaint (Docket #16)
4/5/11 Notice of Plaintiffs removed via Amended Complaint (Docket #17)
4/5/11 Notice of Corrected Names of Certain Plaintiffs via Amended Complaint (Docket #18)
4/5/11 Notice of Defendants added via Amended Complaint (Docket #19)
4/6/11 Notice of added Plaintiffs with last names A (Docket #21)
4/6/11 Notice of added Plaintiffs with last names B (Docket #22)
4/6/11 Notice of added Plaintiffs with last names C (Docket #23)
4/6/11 Notice of added Plaintiffs with last names D (Docket #24)
4/7/11 Notice of added Plaintiffs with last names E-F (Docket #25)
4/7/11 Notice of added Plaintiffs with last names G (Docket #26)
4/7/11 Notice of added Plaintiffs with last names H (Docket #27)
4/8/11 Notice of added Plaintiffs with last names I-K (Docket #28)
4/8/11 Notice of added Plaintiffs with last names L (Docket #29)
4/11/11 Notice of added Plaintiffs with last names M (Docket #30)
4/11/11 Notice of Plaintiffs added with last names N-O (Docket #31)
4/11/11 Notice of added Plaintiffs with last names P-Q (Docket #32)
4/11/11 Notice of added Plaintiffs with last names R (Docket #33)
4/11/11 Notice of added Plaintiffs with last names S-Z (Docket #34)
4/13/11 Second Amended Complaint and Jury Demand (Docket #35)
5/20/11 Supplement to Second Amended Complaint (Docket #42)

Plaintiffs' initial Complaint filed on March 21, 2011 identified 773 individually named Plaintiffs. The First Amended Complaint apparently adds approximately 440 new Plaintiffs.[9] (See Docket #16.) The Second Amended Complaint and the Supplement thereto purport to add an additional 49 Plaintiffs. (See Exhibit "A" to Mot.) Many Plaintiffs' names are changed, some already identified Plaintiffs now purport to sue on behalf of family trusts and other entities, and other changes to the parties were made. All of these changes were improperly made without leave of court after the initial Notice filed on March 22, 2011. The Court, therefore, should disregard any filings changing the parties and the pleadings filed after the first Notice filed on

---

[9]     Plaintiffs note in their Response that the number of Plaintiffs increased from 566 to 1,177 between the filing of the Original Complaint and the First Amended Complaint. (Resp. p. 55, fn 28.) Plaintiffs failed to seek leave of court to add any of these Plaintiffs' claims, so the claims of all of these Plaintiffs should be dismissed or severed. As discussed in the Motion, the claims of the Plaintiffs added after the filing of the First Amended Complaint should also be dismissed.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    March 22, 2011, and dismiss and/or sever the claims of any Plaintiffs who did not properly seek

2    leave of court.

### 3. **Plaintiffs' conclusory allegations fail to support their federal RICO claim.**

4    As discussed in the Motion, in order to state a federal RICO claim, Plaintiffs must

5    sufficiently allege the following elements: 1) conduct, 2) of an enterprise, 3) through a pattern 4)

6    of racketeering activity (5) causing injury to plaintiffs' business or property.[10] *Ove v. Gwinn*,

7    264 F. 3d 817, 825 (9th Cir. 2001) (quoting 18 USC 1964(c)).  Plaintiffs failed to plead with

8    particularity sufficient factual allegations describing conduct by each of these moving

9    Defendants to satisfy these elements.[11]  Plaintiffs' RICO claim also fails because they cannot

10   demonstrate closed-ended or open-ended continuity of fraudulent activity, and because they fail

11   to allege a RICO conspiracy with particularity.

### a. **Plaintiffs fail to describe with particularity the conduct of each moving Defendant they claim supports their RICO claim.**

14   Plaintiffs must plead RICO violations with particularity under FRCP 9(b), and allege the

15   specific time, place, and content of the alleged violations by <u>each</u> Defendant. *See Moore v.*

16   *Kayport Package*, 885 F. 2d 531, 541 (9th Cir. 1989) (Plaintiffs failed to state a RICO claim

17   because they could not attribute specific conduct to individual defendants or describe the role of

18   each defendant in each fraudulent scheme).

19   Plaintiffs incorrectly cite *Odom v. Microsoft Corp.*, 486 F. 3d 541 (9th Cir. 2007) (en

20   banc) for the proposition that they are not required to plead with particularity and specifically

21   identify each of these moving Defendant's conduct in connection with demonstrating their mail

22   and wire fraud allegations, and in support of their argument that the particularity requirement

23   should be relaxed because Plaintiffs cannot be expected to have knowledge of the specific role of

24

25   [10]     Plaintiffs incorrectly argue that Defendants concede that Plaintiffs have sufficiently alleged the "conduct"

26   and "enterprise" requirements.  To the contrary, Plaintiffs have failed to sufficiently identify with particularity
     specific conduct by each moving Defendant to satisfy these elements.

27   [11]     Plaintiffs concede that they cannot demonstrate a federal RICO claim against Compass FP Corp., Compass

28   USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., and Repotex,
     Inc.; the federal RICO claim, therefore, should be dismissed as to them even if the Court declines to dismiss the
     RICO claim against the other moving Defendants. (Resp. p. 23, fn 11.)

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    each in the fraudulent scheme. (See Resp. p. 28.)  *Odom*, however, does not apply to the facts of

2    this case, and Plaintiffs are required to allege with particularity the alleged fraudulent conduct of

3    each of the moving Defendants.

4         In *Odom*, class action plaintiffs appealed dismissal of their suit under FRCP 12(b)(6) for

5    failure to sufficiently allege an associated in fact enterprise under RICO, and failure to plead

6    wire fraud with particularity under FRCP 9(b); the Ninth Circuit Court of Appeals reversed the

7    dismissal and remanded.  486 F. 3d at 543.  The initial Plaintiff alleged RICO violations against

8    Microsoft and Best Buy based on an agreement between Microsoft and Best Buy whereby

9    Microsoft invested in Best Buy and agreed to promote Best Buy's online store through

10   Microsoft's MSN service in exchange for Best Buy promoting MSN and other Microsoft

11   products in its stores and advertising.  *Id.* at 543.  The Plaintiff alleged that under this agreement

12   Best Buy distributed trial CDs containing Microsoft products when Best Buy sold certain

13   products.  *Id.* at 543.  The initial Plaintiff further alleged that if a customer paid by credit card,

14   the trial CD would be scanned and customer specific information was sent to Microsoft, which

15   then set up an MSN account for the customer and would begin charging the customer's credit

16   card after the trial expired.  *Id.* at 543.  The initial Plaintiff specifically alleged that he purchased

17   a laptop computer from a Best Buy store that came with a trial CD for MSN, and that after the

18   six month trial period, his credit card was charged by Microsoft for MSN services.  *Id.* at 544.

19   The Plaintiff did not name the Best Buy employee who sold him the laptop.  *Id.* at 544.

20        Based on these allegations, the underlying Plaintiff asserted claims against Best Buy and

21   Microsoft for an associated in fact RICO conspiracy, claimed that these actions with respect to

22   thousands of consumers constituted a pattern of racketeering activity, and that they committed a

23   racketeering predicate act of wire fraud.  *Odom*, 486 F. 3d at 544.  The case was transferred to

24   Washington, and an amended complaint was filed which set forth the RICO claim of an

25   additional Plaintiff.  *Id.* at 544.  The newly added Plaintiff alleged that she purchased a cell

26   phone and was later charged for Microsoft services after the expiration of a trial period.  *Id.* at

27   544.  The new Plaintiff also did not name the Best Buy employee who sold her the phone.  *Id.* at

28   544.

1    Microsoft and Best Buy moved to dismiss the RICO claims under FRCP 12(b)(6) and

2  9(b). *Odom*, 486 F. 3d at 545.  The district court dismissed for failure to sufficiently allege an

3  associated in fact enterprise under RICO, and failure to plead wire fraud with particularity.  *Id.* at

4  545.  Regarding the relevant particularity issues, the Ninth Circuit Court of Appeals discussed

5  that the Plaintiffs were required to allege the circumstances constituting fraud with particularity,

6  although malice, intent, and knowledge (*i.e.* state of mind) could be alleged generally.[12]  *Id.* at

7  553-554.  The Court stated that the pleader is required to state the time, place, and specific

8  content of the false representations, and the identities of the parties to the misrepresentations.  *Id.*

9  at 553 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

10  1986)).

11    The Court further explained, "'wire fraud violations consists of (1) the formation of a

12  scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United

13  States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud.'"  *Odom*,

14  486 3d at 554 (quoting *Schreiber*, 806 F.2d at 1400).[13]  The Court concluded that the Plaintiffs

15  stated allegations with sufficient particularity to describe the fraudulent conduct, even though the

16  Plaintiffs did not identify the Best Buy employees who sold them the products.  *Id.* at 554.

17    The Court specifically stated:

18    We hold for two reasons that, in the circumstances of a retail transaction whose full
consequences are realized only months later, the employee of the store need not be
19    named. First, it is unrealistic to expect that the retail customer would remember the name
of the cash register employee. A requirement that the employee be named as a
20    precondition of bringing suit and commencing discovery would, as a practical matter,
defeat almost any suit based on such a fraud. Second, as we noted above, Rule 9(b)
21

22

23    [12]    Plaintiffs fail to address Defendants' arguments regarding the alleged statements made by Piskun during
three conference calls with the Gramercy direct lenders, which Plaintiffs allege were conducted on September 27,
24    2007, January 24, 2008, and January 28, 2008.  (See paragraph 113 of 2AC.)  Even if intent to defraud can generally
be alleged, Plaintiffs fail entirely to allege that Piskun had the requisite intent to defraud the direct lenders with any
25    statements made during these calls.  Moreover, Plaintiffs' specific reference to alleged statements by Piskun
undermines Plaintiffs' arguments that they cannot describe specific conduct of each of the Defendants, that the acts
26    constituting fraud are not within their personal knowledge, or that they need additional discovery to allege specific
acts of the moving Defendants.  Although Plaintiffs claim that they have alleged with particularity the genesis of the
27    wrongful loan servicing enterprise, as well as how the enterprise sought to deceive Plaintiffs, they fail to identify
any specific fraudulent conduct by each Defendant.

28    [13]    In *Schreiber*, the Ninth Circuit Court of Appeals discussed the same elements with reference to a claim for
mail fraud.  806 F. 2d at 1400.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' *Schreiber*, 806 F.2d at 1400. In the circumstances of this case, we have been given no reason to believe that defendants will be hampered in their defense by Odom and Moureaux-Maloney's inability to name the particular employees. We therefore hold that plaintiffs' allegations of the circumstances of wire fraud are sufficiently particularized to satisfy the pleading requirements of Rule 9(b).

*Odom*, 486 3d at 554. This holding is inapplicable to the facts of this case.

Unlike the circumstances in *Odom*, Plaintiffs in this case have <u>identified</u> multiple Defendants by name, but have failed to allege specific fraudulent actions on the part each of those Defendants. The *Odom* holding supports only the limited proposition that Plaintiffs are not required to plead specific employee names in isolated consumer retail transactions in order to describe a RICO transaction with particularity.[14]  *Odom*, therefore, has no application to Plaintiffs' pleading requirements in this RICO case involving allegations of a complicated loan servicing scheme where specific Defendants have been named but the conduct by each is insufficiently alleged. Even under *Odom*, Plaintiffs in this case are required to allege with particularity the actions of each already identified moving Defendant allegedly constituting fraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) ("'Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'")

---

[14]  In *Goodwin v. Exec. Tr. Servs. LLC*, 2010 U.S. Dist. LEXIS 134132 (D. Nev. Dec. 2, 2010), the United States District Court for the District of Nevada discussed that *Odom* provides only a limited exception to the requirement that a plaintiff will not have to specifically identify the individual Defendant perpetrating a fraud. The Court in that case stated:

Plaintiffs cite *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), for the proposition that they need not identify the individual who made the allegedly fraudulent representations. *Odom*, however, involved a consumer purchase at a Best Buy store. *Id.* at 554. Fraud was pleaded with particularity with the exception that the plaintiff did not name the individual cashier who conducted the allegedly fraudulent transaction. *Id.* Under those narrow circumstances the Ninth Circuit created a limited exception to the general rule that the alleged maker of a fraudulent representation must be identified: '[I]n the circumstances of a retail transaction whose full consequences are realized only months later, the employee of the store need not be named.' *Id.* This case does not involve a routine retail transaction like the kind at issue in *Odom* and the logic of *Odom* does not apply with the same force.

*Id.* Similarly, the logic of *Odom* does not apply with equal force in this case for the reasons discussed above.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    In Plaintiffs' Response, they generally refer to these moving Defendants collectively as

2    the "Compass" Defendants, and they allege generally that the individual Defendants were

3    associated with the enterprise. (See Resp. p. 17) Plaintiffs, for example, state in conclusory

4    fashion that "all the Compass Defendants agreed to knowingly participate in the scheme to

5    defraud Plaintiffs" and "Blatt, Piskun, and Friedman . . . were employed by or associated with

6    the wrongful loan servicing enterprise in that they participated in and conducted the affairs of the

7    loan servicing enterprise." (Resp. p. 17.) Plaintiffs further conclude, "Compass . . . engaged in a

8    'pattern of racketeering activity' for purposes of RICO by committing mail and wire fraud while

9    servicing the Loans for more than one year, and pursuant to a scheme to defraud the Plaintiffs."[15]

10   (Resp. p. 17.) None of these allegations describe specific actions of each Defendant that would

11   meet the particularity requirements.

12       In their Response, Plaintiffs restate the allegations from the Second Amended Complaint

13   of mail and wire fraud in connection with the Standard Property, Fiesta Oak Valley, Shamrock,

14   Gramercy, and Anchor B Loans, and the Trust. (Resp. pp. 23-27.) Plaintiffs state generally in

15   their Response that "Compass" used the mails to perpetuate a fraud with these transactions, and

16   Plaintiffs reference a "Compass" internal email. (Resp. pp. 23-27.) Plaintiffs argue in

17   conclusory fashion that, as a result of misrepresentations, "Compass, Mezei, and Oakbridge"

18   acquired fractional beneficial interests in the Fiesta Oak Valley Loan. (Resp. p. 25.) Plaintiffs'

19   Response and Second Amended Complaint, however, are bereft of any specific factual

20   allegations of fraud committed by each Defendant. Plaintiffs fail to describe the time, place, and

21   circumstances of any alleged fraudulent actions of each moving Defendant such that the moving

22   Defendants could respond to the RICO claim other than with a general denial. Plaintiffs' federal

23   RICO claim, therefore, fails for lack of particularity.

24

25

26   [15]    The Court is not required to accept as true the conclusory allegations set forth in the Response or Plaintiffs' Second Amended Complaint. See *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

27   failure to state a claim."); *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1207 (D. Nev. 2009) ("Although courts generally assume the facts alleged are true, courts do not 'assume the truth of legal conclusions merely because they

28   are cast in the form of factual allegations.'")

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1   Moreover, the particularity pleading standard should not be relaxed in this case, and

2   Plaintiffs should not be permitted to conduct discovery before they are required to allege with

3   particularity the acts of each Defendant they claim constitutes fraud.  Plaintiffs argue that the

4   corporate "labyrinth" of Compass prevents them from describing the fraudulent conduct of each

5   Defendant, yet they are able to describe the alleged relationship of the Defendants (*e.g.* that

6   "Compass Partners assigned the Purchase Assets to Compass USA SPE, which serviced the

7   Loans through its subservices CFP and Compass FP") such that they should be able to describe

8   the role of each Defendant in the alleged fraudulent RICO scheme.  (Resp. p. 28.)

9   Some of the Plaintiffs have already participated in the 892 trial, thus further

10   demonstrating that they should be aware from their participation in that case what the role

11   specific Defendants played in the alleged RICO conspiracy.  Finally, Plaintiffs specifically

12   concede that Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC,

13   Compass USA, LP, Economic Growth Group, Inc., and Repotex, Inc. cannot be held liable for

14   violating section 1962(c).  (Resp. p. 23, fn 11.)  Plaintiffs, therefore, clearly have sufficient

15   information to evaluate their RICO claims against each Defendant and to describe the specific

16   conduct of each Defendant they claim constitutes fraud.[16]

17   **b. Plaintiffs fail to sufficiently state allegations meeting the closed-
      ended or open-ended continuity requirement.**

18

19   Plaintiffs fail to sufficiently allege a closed-ended or open-ended pattern of racketeering

20   activity.  Closed-ended continuity can be demonstrated as follows:

21   A party alleging a RICO violation may demonstrate continuity over a closed period by
     proving a series of related predicates extending over a substantial period of time.

22   Predicate acts extending over a few weeks or months and threatening no future criminal
     conduct do not satisfy this requirement: Congress was concerned in RICO with longterm

23   criminal conduct.  Often a RICO action will be brought before continuity can be

24

25

---

[16]   Plaintiffs argue that the Court should take judicial notice that the jury found Compass Partners, LLC,

26   Compass USA SPE, LLC, Blatt, and Piskun liable for damages in connection with the Standard Property, Shamrock,
     and Anchor B Loans, as well as other Loans.  (Resp. p. 29.)  The Court, however, cannot give claim preclusive

27   effect to the 892 determinations in favor of any Plaintiffs or against any Defendants who were not parties to the 892
     action as discussed above.   The Court also cannot give issue preclusive effect to the 892 determinations against any

28   moving Defendant.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

established in this way.  In such cases, liability depends on whether the threat of continuity is demonstrated.

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989).  As discussed more specifically in the Motion, Plaintiffs allege that the moving Defendants engaged in a few predicate acts involving allegedly wrongful mailings and telephone calls from March 23, 2007 through February 15, 2008, a period of less than eleven months.[17]  (2AC, para. 93, 96, 98, 101, 103, 113, 129.)  Alleged predicate acts committed during this period of time are insufficient to demonstrate closed-ended continuity, especially because there is no threat of continuing criminal activity because the moving Defendants have no ongoing role in servicing the subject Loans.

Contrary to Plaintiffs' arguments, Defendants do not cite *Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys., LLC*, 638 F. Supp. 2d 245 (D. Conn. 2009) for a bright line rule in the Ninth Circuit that Plaintiffs must demonstrate predicate acts spanning two years to demonstrate closed-ended continuity.  *Plainville* merely provides an example of the period of time that has been found to be substantial enough to satisfy the continuity test.  Although not a bright line rule, in *Religious Technology Center v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992), the Ninth Circuit Court of Appeals observed, "We have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year." *Id.* at 366-367. But see *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir.1995) (discussing that *Religious* does not state bright line rule of one year continuity period and discussing that party that claimed it could demonstrate that the predicate acts alleged in that case spanned thirteen months could state sufficient closed-ended period).  Based on these examples, the few alleged isolated predicate acts spanning a period of less than eleven months are insufficient to satisfy the closed-ended continuity test in this case.

Plaintiffs also fail to sufficiently allege an open-ended continuity of a pattern of racketeering activity.  "Open-ended continuity is shown by 'past conduct that by its nature

[17]   Plaintiffs' argument that Blatt, Piskun, and Friedman, as principals of Compass, continued to be beneficiaries of the scheme to defraud from April 2008 through October of 2009 fails to show the commission of any specific predicate acts by which to measure the duration of the continuity period. See *H. J. Inc.*, 492 U.S. at 240-242 (test for continuity refers to period during which predicate acts were committed); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("The law is clear that 'the duration of a pattern of racketeering activity is measured by the RICO predicate acts' that the defendants are alleged to have committed.")

1   projects into the future with a threat of repetition.' . . . Predicate acts that specifically threaten

2   repetition or that become a 'regular way of doing business' satisfy the open-ended continuity

3   requirement." *Allwaste, Inc. v. Hecht*, 65 F.3d at 1528 (internal citations omitted).  In *Allwaste*,

4   the Ninth Circuit further discussed the following with reference to open-ended continuity:

5       In *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987), a bank
        sued its former president under RICO for receiving kickbacks from the bank's customers
6       and depositing them into a fictitious account. In *Sun Savings*, we held that four predicate
        acts that spanned a two month period satisfied the continuity requirement.  We reasoned
7       that the alleged predicate acts 'did pose a threat of continuing activity because they
        covered up a whole series of alleged kickbacks and receipts of favors, occurred over
8       several months, and in no way completed the criminal scheme.' *Id.* (footnote omitted).

9

10  *Id.* at 1528-1529.

11      Unlike the above circumstances, the moving Defendants have no continuing role in the

12  servicing of the subject Loans, so there is no threat of ongoing criminal activity.  Moreover,

13  Plaintiffs' allegations, if proved, would fail to demonstrate that the moving Defendants engaged

14  in a fraudulent loan servicing enterprise as its regular way of doing business such that there is a

15  threat of repetitive loan servicing fraud.  Specifically, as discussed further in the Motion, there is

16  nothing inherently inappropriate about the servicing of fractionalized development loans.

17  Plaintiffs identify no other examples of alleged fraudulent enterprises by the moving Defendants

18  that could support an inference of repetitive conduct.  Plaintiffs, therefore, fail to meet the test

19  for open-ended continuity.

20                  **c.   Plaintiffs fail to allege a RICO conspiracy with particularity.**

21      Plaintiffs allege that Defendants conspired to defraud them, so they must allege with

22  particularity what role each moving Defendant played in the fraudulent conspiracy.  (*See e.g.*

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

2AC, para. 173.)[18]  In their Response, Plaintiffs argue generally that each of the Compass Defendants agreed to participate in wrongful loan servicing enterprise, that Compass engaged in a funding arrangement used to acquire Purchased Assets that compelled Compass to operate the enterprise to realize any profits, that Compass and Silar had adjoining offices, and that EGG funded Repotex's purchase of the remaining participation interest held by the Gottex ABL Master Fund in the first tier financing of the Purchased Assets, which resulted in the disappearance of Mezei's personal guaranty. (Resp. p. 33.)  The conspiracy, however, is alleged in broad sweeping terms, and Plaintiffs' allegations fail to apprise the Defendants of the roles they each are alleged to have played in the conspiracy.  On their face, therefore, Plaintiffs' allegations are insufficient to describe a RICO conspiracy with particularity.

### 4.  Plaintiffs' failed to plead their Nevada RICO claim with particularity.

To state a Nevada RICO claim, Plaintiffs must allege with particularity two or more predicate acts constituting fraud, embezzlement, or wrongfully obtaining funds from the Plaintiffs short of circumstances amounting to robbery. See *Hale v. Burkhardt*, 104 Nev. 632, 638, 764 P. 2d 866, 869 (1988) (noting that while Nevada has not yet had to deal with the "explosion of RICO litigation experienced in the federal courts, we nevertheless have a present concern that civil RICO actions be pleaded with sufficient specificity because of the very serious consequences attached to the allegations of criminal conduct that are the essence of this kind of law suit.") Plaintiffs group the "Compass" Defendants together as a group in their Response, and they fail to describe acts committed by each Defendant with particularity such that each

---

[18]    *Sameena Inc. v. United States Air Force*, 147 F.3d 1148, 1152 (9th Cir. 1998) ("The district court determined that the appellants failed to 'allege conspiracy with sufficient particularity.' We agree."); *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("Based on these precedents and the plain language of Rule 9(b), we hold that under federal law a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent."); *Hutson v. Am. Home Mortg. Servicing*, 2009 U.S. Dist. LEXIS 96764 at *23 (N.D. Cal. Oct. 16, 2009) ("[T]he Ninth Circuit has held that if the object of a conspiracy is fraudulent, the plaintiff is required to comply with the stringent requirements of Rule 9(b), and plead the facts of the alleged conspiracy with particularity."); *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1517 (D. Nev. 1987) ("The conspiracy is alleged in general sweeping terms and does not apprise the defendants of the roles they are alleged to have played in the conspiracy."); *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1479 (D. Colo. 1995) (applying Rule 9(b) particularity requirement to complaint alleging RICO conspiracy); *Prall v. Bush*, 2010 U.S. Dist. LEXIS 18005 at *6 (D.R.I. Feb. 11, 2010) (recommendation which was later accepted of dismissal of RICO claim in part because it did "not allege a RICO conspiracy with sufficient particularity.")

1    Defendant is provided with notice of the essential facts of the Nevada RICO claim.  (Resp. p.

2    36.)  Although Plaintiffs repeat their conclusory allegations from the Second Amended

3    Complaint that the "Compass Defendants" committed theft/or embezzlement with the Standard

4    Property Loan, the Shamrock Loan, the cash from the Gramercy property, the Fiesta Oak Valley

5    and Shamrock Loans, the Anchor B Loan, and in connection with the Trust Funds, Plaintiffs

6    make no effort whatsoever to identify with the requisite specificity the predicate acts committed

7    by each individual Defendant. (Resp. pp. 36-37.)  This is precisely the type of generalized civil

8    racketeering claim that the Nevada Supreme Court was concerned about in *Hale*.

9            Plaintiffs note in their Response that Compass is a corporate labyrinth, that Compass

10   assigned the Purchase Assets to Compass USA SPE, LLC, which serviced the Loans through its

11   sub-servicers Compass Financial Partners, LLC and Compass FP Corp., in which Compass

12   Partners was a sole member or shareholder, that Compass Partners is a manager of Compass

13   USA GP, LLC, which is the general partner of Compass USA, LP, in which Compass USA

14   Holding, LLC was a limited partner, and that Compass USA GP, LLC, Compass USA Holding,

15   LLC, and Compass USA, LP were responsible for facilitating, and/or agreed to benefit from, the

16   wrongful servicing enterprise. (Resp. pp. 37-38.)  Plaintiffs further allege that the funding

17   arrangement used to acquire the Purchased Assets compelled Compass and Silar to operate a

18   wrongful loan servicing enterprise to realize any profits from the acquisition of the Purchased

19   Assets, that Compass and Silar operated the wrongful loan servicing enterprise from adjoining

20   offices, and that the transaction in which EGG funded Repotex's purchase of the remaining

21   participation interest held by the Gottex ABL Master Fund in the first tier financing facilitated

22   the wrongful loan servicing enterprise.  None of these allegations, however, describes with

23   <u>specificity</u> the predicate acts of a <u>specific</u> Defendant constituting fraud, embezzlement, or

24   wrongfully obtaining funds from the Plaintiffs short of circumstances amounting to robbery.[19]

25            Moreover, the pleading standards should not be relaxed and Plaintiffs should not be

26   permitted to conduct further discovery for the reasons discussed above.  Plaintiffs, therefore,

27

28   [19]      The Court cannot take judicial notice that the Defendants were found liable for conversion in the 892 case
     as outlined above.

1   have failed to meet their burden to allege with particularity the specific acts of each Defendant

2   constituting fraud, embezzlement, or wrongfully obtaining funds from the Plaintiffs, and their

3   Nevada RICO claim should be dismissed.

4   **5. Plaintiffs elder abuse claim fails and should be dismissed.**

5   In order to state a claim for elder abuse under NRS 41.1395, Plaintiffs must sufficiently

6   allege that they were age 60 or over, and that the moving Defendants, who had the Plaintiffs'

7   trust and confidence or use of a power of attorney, exploited the older Plaintiffs by using such

8   trust and confidence or power of attorney to obtain control (through deception) over the money,

9   assets, or property of the older Plaintiffs.[20]  NRS 41.1395(4)(b)(1)-(2).  Plaintiffs have failed to

10  plead that the Defendants had their trust and confidence, and they make no such argument in

11  their Response, so the only basis for such a claim is on use of a power of attorney.

12  As discussed at length in the Motion, Plaintiffs cannot allege that the moving Defendants

13  had use of a power of attorney when Plaintiffs specifically allege to the contrary in their Second

14  Amended Complaint (*i.e.* that Defendants lacked a valid power of attorney).  (2AC, para. 66.)

15  See *e.g. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (discussing the

16  general rule in this Circuit that a plaintiff cannot create an issue of fact with an affidavit

17  contradicting the plaintiff's deposition testimony).

18  The Court cannot take judicial notice that the Compass Defendants purported to service

19  the Loans pursuant to powers of attorney and that the Court held the Defendants lacked valid

20  powers of attorney because the Court cannot give the determinations in the 892 case claim or

21  issue preclusive effect as discussed above.  Even if the Court judicially noticed the ruling that the

22  powers of attorney were invalid, the fact that that determination came after the Court terminated

23  Compass' loan servicing rights would not somehow make the powers of attorney valid before

24  that ruling.  Plaintiffs, therefore, should be prevented from making arguments contrary to the

25  allegations in the Second Amended Complaint that the powers of attorney were invalid.

---

[20]   Plaintiffs claim they are "largely elderly," but they do not allege that all of the Plaintiffs are age 60 or over. Plaintiffs should be required to identify which Plaintiffs are 60 or over, and this claim should be dismissed as to any Plaintiffs who are not "older" within the meaning of NRS 41.1395.

1   Even if Plaintiffs were entitled to argue that the powers of attorney were valid, NRS

2   41.1395 clearly requires an allegation that each Defendant had use of the power of attorney.

3   Plaintiffs' Second Amended Complaint states in conclusory fashion that Defendants are liable to

4   Plaintiffs for their elder abuse claim. (2AC, para. 189.)  Plaintiffs, however, set forth no

5   allegations that any particular Defendant actually used a power of attorney to exploit them and

6   take their money or property.  Therefore, only the actual holders (*i.e.* those with authority to use

7   the power of attorney) of the powers of attorney - - - Compass Partners, LLC and Compass USA

8   SPE, LLC - - - can be liable for Plaintiffs' elder abuse claim if Plaintiffs can otherwise

9   demonstrate this claim.  Moreover, there is no allegation that any of the other moving

10  Defendants had any authority to "use" the powers of attorney held by Compass Partners, LLC or

11  Compass USA SPE, LLC.  For example, even if Piskun, Blatt, and Friedman are the principals of

12  Compass and can otherwise be held liable for their own torts as argued by Plaintiffs, there is no

13  allegation that they had authority to use the power of attorney to exploit the Plaintiffs.  Plaintiffs'

14  conclusory allegations of elder abuse, therefore, fail to state an elder abuse claim.

### 6. Plaintiffs fail to state claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, or attorney's fees.

17  Plaintiffs fail to state claims for breach of contract, tortious breach of the implied

18  covenant of good faith and fair dealing, breach of fiduciary duty, conversion, or attorney's fees.[21]

19  Contrary to Plaintiffs' arguments in their Response, as outlined above, the Court cannot take

20  judicial notice in favor of Plaintiffs or against Defendants who were not parties to the 892 action

21  that Blatt and Piskun, as the managing members of Compass Partners, LLC and/or Compass

22  USA SPE, LLC, are personally liable for Compass Partners, LLC and Compass USA SPE,

23  LLC's tortious breaches of the implied covenant of good faith and fair dealing, breaches of

24  fiduciary duty, and conversion.  These arguments, therefore, do nothing to demonstrate the

25  liability of the other moving Defendants for Plaintiffs' state law claims.

26

27

28

---

[21]   As stated in the Motion, although Defendants do not concede that these claims are proper against Compass Partners, LLC, Compass USA SPE, LLC, Piskun, or Blatt, they are not seeking dismissal of these claims as to those Defendants at this time.

Even if Compass Financial Partners, LLC and Compass FP Corp. were loan sub-services and Friedman was a principal, these moving Defendants were not parties to the LSAs, so it necessarily follows that they cannot be held liable for breach of contract, breach of the implied covenant of good faith and fair dealing, or attorney's fees (a provision in the LSAs).  See *Insurance Co. of the West v. Gibson Tile Co.*, 122 Nev. 455, 461, 134 P. 3d 698, 702 (2006) (violation of the covenant of good faith and fair dealing requires breach of a contract, unless a special relationship such as insurers and insureds, partners of partnerships, and franchisees and franchisers is alleged).  Plaintiffs do not even attempt to argue that the other moving Defendants should be held liable for these claims, and in fact concede that because they were not parties to the LSAs, Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., and Repotex, Inc. cannot be held liable for Plaintiffs claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and attorney's fees pursuant to the LSAs.  (See Resp. p. 44, fn 21.)

Plaintiffs' argument that no contract is required to demonstrate a conversion claim fails to bolster that claim.  Specifically, Plaintiffs fail to address Defendants' argument that there is no allegation that Friedman, Compass Financial Partners, LLC (DE and NV), Compass FP Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., or Repotex, Inc. individually breached fiduciary duties or converted Plaintiffs' personal property.  Plaintiffs state law claims, therefore, fail and should be dismissed.

**7.  Plaintiffs' claim for civil conspiracy fails and should be dismissed.**

Plaintiffs' civil conspiracy claim fails because Plaintiffs fail to allege with sufficient particularity specific facts that each moving Defendant intended to accomplish an unlawful objective, that each Defendant had knowledge of the object and purpose of the alleged conspiracy, that there was an agreement to injure the Plaintiffs by each Defendant, or that there was a meeting of the minds regarding the objective and course of action.[22]

---

[22]   For any Plaintiffs or moving Defendants who were not parties to the 892 lawsuit, the Court cannot take judicial notice that any Defendants who were parties to the 892 case engaged in a civil conspiracy to further their economic interests in connection with the Standard Property Loan.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    As discussed at length above, Plaintiffs allege that the Defendants conspired to defraud

2    them, so Plaintiffs must plead their conspiracy claim with particularity.[23] *Taddeo v. Taddeo*,

3    2011 U.S. Dist. LEXIS 103649 at *22 (D. Nev. 2011) ("'A claim for conspiracy to commit fraud

4    must be pled with the same particularly as the fraud itself. Thus, under Rule 9(b), a party must

5    state with particularity the circumstances constituting the conspiracy.'"); *Morris v. Bank of Am.*

6    *Nev.*, 110 Nev. 1274, 1276, 886 P.2d 454, 456, fn 1 (1994) ("Morris' conspiracy counterclaim

7    fails to allege that the Bank conspired to do some identifiable unlawful act . . . . The required

8    'unlawful objective' is similarly not stated in the pleading; therefore, the conspiracy counterclaim

9    also fails to state a claim upon which relief can be granted."); *Villa v. Silver State Fin. Servs.*,

10   2011 U.S. Dist. LEXIS 54510 at *32 (D. Nev. 2011) ("'To allege a conspiracy to defraud, a

11   complaint must meet the particularity requirements of Federal Rule of Civil Procedure 9(b) and

12   inform each defendant of its actions that constituted joining the conspiracy.'")

13   In *Harnist v. Colonial Bank NA*, 2011 U.S. Dist. LEXIS 102088 at *4-5 (D. Nev. 2011),

14   this Court discussed:

15       [T]he civil conspiracy claim fails because Plaintiff does not allege any agreement to
         engage in unlawful activity. He simply concludes that a conspiracy existed between the
16       lender and others because these agencies were all in some way involved with foreclosures
         generally. The claim is not pled with nearly the particularity required under Rule 9(b).
17       The Court will dismiss this claim.

18

19   *Id.* Plaintiffs improperly argue that the Court can take judicial notice that Defendants in the 892

20   action engaged in a civil conspiracy to further their economic interests in connection with the

21   Standard Property Loan. (Resp. p. 45.) As discussed above, this argument does not apply to in

22   favor of any Plaintiffs or against any moving Defendants that were not parties to the 892 action.

23

24

---

25   [23]    Plaintiffs' citation to *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1251 (D. Nev. 2003) for the proposition
         that no Nevada authority suggests that a heightened pleading standard of particularity applies to a civil conspiracy
26       claim is erroneous because *Flowers* does not apply to the facts of this case. (Resp. p. 46, fn 23.) *Flowers* involved a
         civil conspiracy claim based on defamation and not fraud. The Court in *Flowers* specifically stated, "Because no
27       Nevada authority suggests that a heightened pleading requirement applies to civil conspiracy . . . the Court finds
         there is no heightened pleading requirement for a civil conspiracy predicated upon defamation in Nevada."
28       (Emphasis supplied.) *Id.* at 1250-1251. Contrary to *Flowers*, this Court has applied the particularity standard to a
         conspiracy claim as discussed below.

1   Even for Plaintiffs who were parties to the first action, this argument would not apply to any

2   other Loans.  Therefore, this argument fails to support Plaintiffs' civil conspiracy claim.

3    Plaintiffs allege in conclusory fashion that Freidman, Compass Financial Partners, LLC,

4   Compass FP Corp., Compass USA GP, LLC Compass USA Holding, LLC, Compass USA, LP,

5   Economic Growth Group, Inc., and Repotex, Inc. were parties or beneficiaries to a funding

6   arrangement that resulted in the acquisition of Purchased Assets and the ensuing ability and need

7   to service the Loans pursuant to the LSAs in a manner that wrongfully placed Defendants'

8   interests above the direct lenders.  This allegation/argument fails to identify any specific facts

9   against each moving Defendant meeting the particularity requirements of FRCP 9(b).  Plaintiffs

10  have failed to allege sufficient facts of an actual agreement by each Defendant to injure

11  Plaintiffs, or a meeting of the minds on the objective and course of action, so their civil

12  conspiracy claim should be dismissed.[24]

13  **8. Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP**
   **Corp., Compass USA GP, LLC, Compass USA Holding, LLC, Compass**

14   **USA, LP, Economic Growth Group, Inc., and Repotex, Inc. are not subject to**

15   **personal jurisdiction.**

16   **a. Personal jurisdiction does not exist under Federal Rule of**
    **Bankruptcy Procedure 7004 because this case is not sufficiently**

17    **"related to" the bankruptcy proceedings.**

18   This case is not "related to" the bankruptcy proceedings referenced by Plaintiffs, so the

19  above moving Defendants are not subject to personal jurisdiction under Bankruptcy Rule 7004,

20  which provides for nationwide service of process in actions "related to" bankruptcy proceedings.

21  The Plaintiffs reference bankruptcy proceedings that are "post-confirmation" or that have a plan

22  in place, so Plaintiffs must demonstrate that a "close nexus" exists between this case and the

23  bankruptcy proceedings.[25]  See *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189,

---

[24] Even if Compass USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, Economic Growth Group, Inc., and Repotex, Inc. could be held liable for conspiring to breach the LSAs, the implied covenant of good faith and fair dealing, and fiduciary duties, Plaintiffs fail to allege or identify in their Response any specific factual allegations against each moving Defendant in connection with their conspiracy claim or the corresponding tort claims. (See Plaintiffs' Resp. p. 44, fn 21.)

[25] Plaintiffs fail to address Defendants' arguments that the Court does not have specific or general jurisdiction over these moving Defendants, so they concede the merits of these arguments, and Plaintiffs' claims should be dismissed under FRCP 12(b)(2).

1  1194 (9th Cir. 2005) ("[P]ost-confirmation bankruptcy court jurisdiction is necessarily more

2  limited than pre-confirmation jurisdiction . . . . [W]e adopt and apply the Third Circuit's 'close

3  nexus' test for post-confirmation 'related to' jurisdiction, because it recognizes the limited nature

4  of post-confirmation jurisdiction. . . ."); *McGillis/Eckman Inv. - Billings, LLC v. Sportsman's*

5  *Warehouse, Inc.*, 2010 U.S. Dist. LEXIS 80810 (D. Mont. June 30, 2010) (United States

6  Magistrate Judge discussed that Ninth Circuit has recognized that in some phases of a Chapter 11

7  case, such as during the post-confirmation and post-discharge phases, the related to test is more

8  limited, and the test whether there is a close nexus to the bankruptcy plan/proceeding sufficient

9  to uphold bankruptcy court jurisdiction) "[M]atters affecting 'the interpretation, implementation,

10  consummation, execution, or administration of the confirmed plan will typically have the

11  requisite close nexus.'" *Montana*, 394 F.3d at 1194 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d

12  154, 167 (3d Cir. 2004)).

13  　　In their Second Amended Complaint, Plaintiffs allege that Compass acquired as a

14  successful auction bidder USACM's loan servicing rights in connection with the Loans pursuant

15  to the LSAs, and fractional beneficial interests held by an affiliate of USACM. (2AC para. 47.)

16  Plaintiffs further allege that Compass' acquisition of these assets was approved by Judge Riegle

17  in a Confirmation Order on January 8, 2007, which was later affirmed on appeal by the District

18  Court (Judge Jones and Judge Pro). (2AC para. 47.) Therefore, the first referenced bankruptcy

19  proceeding has been confirmed, and the "close nexus" test applies.

20  　　Plaintiffs further allege that on October 14, 2009, Debtors commenced the Bankruptcy

21  Cases in the United States Bankruptcy Court for the Southern District of New York, and that, on

22  November 24, 2009, venue of the Bankruptcy Cases was transferred to the District of Nevada.

23  (2AC para. 56, 58.) Plaintiffs further allege that the Court approved of the assumption of the

24  servicing of 27 outstanding Loans by new servicing agents approved by at least 51% of the direct

25  lenders, and placed the chapter 7 trustee in nominal control of the handful of other outstanding

26  Loans pending the direct lenders' approval of the new servicing agents for those few remaining

27  Loans. (2AC para. 64.) Plaintiffs further allege that on June 4, 2010, the District Court enforced

28  a conversion order which required the chapter 7 trustee to disburse the Trust Funds to the direct

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    lenders because the loan servicer was not entitled to those funds as servicing compensation.

2    (2AC para. 67.) The Court, therefore, approved and confirmed a plan for administering that

3    bankruptcy proceeding, and Plaintiff must demonstrate a "close nexus" between this case and

4    those bankruptcy proceedings.

5         Plaintiffs cannot demonstrate that this action has the requisite "close nexus" to the

6    bankruptcy proceedings because this case involves primarily state law claims for violations

7    Nevada RICO laws, elder abuse, breach of contract, breach of covenant of good faith and fair

8    dealing, breach of fiduciary duty, conversion, civil conspiracy, alter ego, declaratory judgment,

9    constructive trust, and attorney's fees. These state law claims and the federal RICO claim

10   brought after the bankruptcy plan was confirmed and approved have no affect on the

11   interpretation, implementation, consummation, execution, or administration of the plan. This

12   case, therefore, is not "related to" the bankruptcy proceedings such that the Defendants would be

13   subject to nationwide service/personal jurisdiction under Rule 7004.

14            **b. Plaintiffs' RICO and conspiracy allegations are insufficient to**
                 **establish personal jurisdiction.**
15

16        Plaintiffs' Response refers to these moving Defendants collectively as the "Compass

17   Defendants," and Plaintiffs make no effort to identify the specific role of each Defendant in the

18   alleged nationwide RICO conspiracy. Plaintiffs fail to identify any specific factual allegations

19   that each particular Defendant intended to enter into an agreement, that each had knowledge of

20   the nature of the alleged conspiracy, or that each conspiring Defendant intended to further an

21   endeavor that would satisfy the elements of a substantive criminal offense/RICO enterprise.

22   Even if personal jurisdiction is recognized under Plaintiffs' federal RICO claim in this Circuit,

23   therefore, Plaintiffs cannot demonstrate that personal jurisdiction is proper. Their claims against

24   Defendants Friedman, Compass Financial Partners, LLC (DE), Compass FP Corp., Compass

25   USA GP, LLC, Compass USA Holding, LLC, Compass USA, LP, EGG, and Repotex, Inc.

26   should be dismissed under FRCP 12(b)(2).

27   ///

28   ///

1    **C.**    **Conclusion**

2    Based on the foregoing, the moving Defendants pray that Plaintiffs' claims be dismissed

3    as outlined in the Motion.

4    DATED this ⟋7 day of October, 2011.

5                                                                LAXALT & NOMURA, LTD.

6

7                                                                DANIEL T. HAYWARD, ESQ.

8                                                                Nevada State Bar No.: 5986
                                                                 HOLLY S. PARKER, ESQ.
9                                                                Nevada State Bar No. 10181
                                                                 dhayward@laxalt-nomura.com
10                                                               hparker@laxalt-nomura.com
                                                                 LAXALT & NOMURA
11                                                               9600 Gateway Drive
                                                                 Reno, Nevada 89521
12                                                               Telephone: (775) 322-1170
                                                                 Facsimile: (775) 322-1865
13                                                               Attorneys for Defendants
                                                                 David Blatt, Boris Piskun, Ron Friedman,
14                                                               Compass Financial Partners, LLC, Compass
                                                                 FP Corp., Compass Partners, LLC, Compass
15                                                               USA GP, LLC, Compass USA Holding,
                                                                 LLC, Compass USA, LP, Compass USA
16                                                               SPE, LLC, Economic Growth Group, Inc.,
                                                                 Repotex, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2        Pursuant to FRCP 5(b), I certify that I am an employee of LAXALT & NOMURA, LTD.,
and that on this ___\ ]___ day of October, 2011, I caused a true and correct copy of the
3    foregoing to be served:

4                          _VIA ELECTRONIC SERVICE

5    addressed as follows:

6                      *** SEE ATTACHED LIST ***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1

2   Lisa Rasmussen
    lisa@irasmussenlaw.com
    alex@iramussenlaw.com
3   secretary@irasmussenlaw.com

4   Francis B. Majorie
    fbmajorie@themajoriefirm.com
5   kbanks@themajoriefirm.com
6   vrunning@themajoriefirm.com

7   Melanie A. Hill
    melanie@melaniehilllaw.com
8   kristinsmith23@gmail.com

9
    Michael J. Collins
10  mjc@bickelbrewer.com

11  Robert M. Millimet
    rrm@bickelbrewer.com
12

13  William A. Brewer, III
    wab@bickelbrewer.com
14

15

16

17                                An Employee of Laxalt & Nomura, Ltd.

18

19

20

21

22

23

24

25

26

27

28

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521