1
2
3
4          **UNITED STATES DISTRICT COURT**
5             **DISTRICT OF NEVADA**
6
7   LEONARD C. ADAMS et al.,            )
                                        )
8                  Plaintiffs,          )
                                        )        3:11-cv-00210-RCJ-VPC
        vs.                             )
9                                       )
    SILAR ADVISORS, LP et al.,          )            **ORDER**
10                                      )
                   Defendants.          )
11  ──────────────────────────────     )

12          This is a follow-on lawsuit to *3685 San Fernando Lenders, LLC v. Compass USA SPE,*

13  *LLC*, No. 2:07-cv-892-RCJ-GWF (the "USA Commercial Case").  Three groups of Defendants

14  have moved to dismiss.

15  **I.    FACTS AND PROCEDURAL HISTORY**

16          Plaintiffs in the present case are 1188 direct lenders who name thirty-five Defendants: (1)

17  four Silar entities (collectively, "Silar"); (2) eight Compass entities (collectively, "Compass");

18  (3) five individuals, including Boris Piskun and David Blatt, who were defendants in the USA

19  Commercial Case (the "Compass Principals"); (4) five individuals (the "Silar Principals"); (5)

20  Mark Olson, a former principal of USA Commercial and later employee of Compass; (6)

21  Windemere Capital, LLC ("Windemere"); (7) Oakbridge Capital, Inc. ("Oakbridge"); (8)

22  Economic Growth Group, Inc. ("EGG"); (9) Repotex, Inc.; (10) Servicing Oversight Solutions,

23  LLC ("SOS"); (11) SOS principal Michael D. Reiner; (12) Compass' former attorney Tyson

24  Lomazow; (13) Great White NV, Inc. ("Great White"); (14) Great White principal Craig Orrock;

25  and (15) Citron Investment Group, Inc. ("Citron"), a "subservicer" for Compass, and its

1   principals Michael Citron and Danielle Citron (collectively, the "Citron Defendants").

2   (*See* Second Am. Compl. ¶¶ 2–39, Apr. 13, 2011, ECF No. 35).

3          The Second Amended Complaint ("SAC") lists nine causes of action: (1) violations of

4   the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 (all

5   Defendants); (2) violations of Nevada's RICO statute under Chapter 207 of the Nevada Revised

6   Statutes ("NRS") (all Defendants); (3) Elder Abuse under NRS section 41.1395 (all Defendants);

7   (4) Breach of Contract (Compass and Silar); (5) Breach of the Implied Covenant of Good Faith

8   and Fair Dealing (Compass, Silar, and their principals); (6) Breach of Fiduciary Duty (Compass,

9   Silar, and their principals); (7) Conversion (all Defendants); (8) Civil Conspiracy (all

10  Defendants); and (9) Declaratory Judgment (Compass and Silar). (*See id.* ¶¶ 162–221, 229–31).

11  Plaintiffs also bring nominal claims for alter ego, constructive trust, and attorneys' fees, but

12  these are legal theories and measures of relief not amounting to independent causes of action.

13  (*See id.* ¶¶ 222–28, 232–35).  Plaintiffs later filed a "supplement" to the SAC indicating that six

14  Plaintiffs wished to be removed, that twenty-six Plaintiffs wished to be added, and that nine

15  existing Plaintiffs did not wish to pursue their claims against two particular Defendants. (*See*

16  Supplement, May 20, 2011, ECF No. 42).

17         Three motions to dismiss are pending before the Court.  First, Compass, Blatt, Piskun,

18  Ron Friedman (another alleged Compass principal), EGG, and Repotex (collectively, the "Blatt

19  Movants") have moved to dismiss for lack of personal jurisdiction, failure to state a claim, and

20  failure to seek leave to amend. (*See* Blatt Mot., Aug. 22, 2011, ECF No. 77).  Second, Leonard

21  Mezei and Jay Cohen, the remaining two alleged Compass principals (collectively, the "Mezei

22  Movants"), have moved to dismiss for the same reasons. (*See* Mezei Mot., Nov. 7, 2011, ECF

23  No. 116).  Third, Tyson Lomazow has moved to dismiss for failure to state a claim. (*See*

24  Lomazow Mot., Oct. 24, 2011, ECF No. 110).

25  ///

1    **II.    LEGAL STANDARDS**

2         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

3    claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

4    what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

5    (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

6    that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

7    12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

8    F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

9    failure to state a claim, dismissal is appropriate only when the complaint does not give the

10   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

11   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

12   sufficient to state a claim, the court will take all material allegations as true and construe them in

13   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

14   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

15   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

16   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

17   with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

18   is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

19   (citing *Twombly*, 550 U.S. at 555).

20        "Generally, a district court may not consider any material beyond the pleadings in ruling

21   on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

22   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

23   *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

24   whose contents are alleged in a complaint and whose authenticity no party questions, but which

25   are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

1    motion to dismiss" without converting the motion to dismiss into a motion for summary

2    judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

3    of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

4    *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

5    considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

6    summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

7    Cir. 2001).

8    **III.    ANALYSIS**

9        **A.    The Blatt Motion**

10           Friedman; Compass Financial Partners, LLC (DE); Compass FP Corp.; Compass USA

11   GP, LLC; Compass USA Holding, LLC; Compass USA, LP; EGG; and Repotex argue that the

12   Court has no personal jurisdiction over them.  The Court has already determined in the USA

13   Commercial Case that it has personal jurisdiction over certain Compass entities and its principals

14   based upon the allegations of misconduct in loan servicing in this case.  The relevant corporate

15   Defendants in the USA Commercial Case were Compass Financial Partners, LLC; Compass

16   Partners, LLC; Compass USA SPE, LLC; Silar Advisors, LP; and Silar Special Opportunities

17   Fund, LP.  The Blatt Movants argue that Plaintiffs simply lump them all together and do not

18   make any specific allegations against them supporting personal jurisdiction in Nevada.  The Blatt

19   Movants note that the RICO statute permits the assertion of jurisdiction over RICO defendants

20   where a court has personal jurisdiction over at least one of the participants in the multi-district

21   RICO conspiracy, such a conspiracy is sufficiently alleged, and there is no district that would

22   have personal jurisdiction over all of the alleged co-conspirators. *See Does 1–60 v. Republic*

23   *Health Corp.*, 669 F. Supp. 1511, 1517–18 (D. Nev. 1987) (citing 18 U.S.C. § 1965(b)).

24   Plaintiffs also bring conversion, breach of fiduciary duty, and other clams against the Blatt

25   Movants.

1    Plaintiffs allege that Repotex and EGG have their offices at the same address as Compass

2    and Silar, which they all lease from Mezei. (*See* Second Am. Compl. ¶ 72).  This is not enough

3    to implicate Repotex and EGG in any wrongdoing in this case.  Plaintiffs allege that Compass

4    USA Holding, LLC and Compass USA, LP were limited partners of Silar Special Opportunities

5    Fund, LP (a Defendant in the USA Commercial Case). (*See id.* ¶ 75).  This is not enough to

6    implicate Compass USA Holding, LLC and Compass USA, LP in any wrongdoing in this case,

7    because limited partners typically share only in profits and losses and have no management

8    duties or authority, although a general partnership would probably be enough.  Plaintiffs allege

9    that Compass USA SPE, LLC (a Defendant in the USA Commercial Case) used Compass

10   Financial Partners, LLC (both the NV and DE entities) and Compass FP Corp. as subservicers on

11   the disputed loans, and that these two entities' sole member and shareholder is Compass

12   Partners, LLC (a Defendant in the USA Commercial Case). (*See id.* ¶ 77).  This is enough to

13   implicate Compass Financial Partners, LLC (both the NV and DE entities) and Compass FP

14   Corp. as being directly involved in the wrongdoing concerning the loan servicing activities.

15   Plaintiffs allege that Compass Partners, LLC is the manager of Compass USA GP, LLC, which is

16   in turn a general partner of Compass USA, LP. (*See id.*).  This is enough to implicate Compass

17   USA GP, LLC, because its manager, Compass Partners, LLC, was found liable with respect to

18   the loans in the USA Commercial case.  It is also enough to implicate Compass USA GP, LLC's

19   general partner, Compass USA, LP.  Plaintiffs allege that Friedman, *inter alios*, was a principal

20   of Compass directly involved in the wrongful loan servicing activities. (*See id.* ¶ 78).  This is

21   enough to implicate Friedman.  Plaintiffs allege EGG funded Repotex's June 2008 purchase of a

22   fractional interest in Silar's loan to Compass. (*See id.* ¶ 87).  This is enough to implicate Repotex

23   and EGG.  The LSAs were the collateral for Silar's loan to Compass, so if Repotex purchased a

24   fractional interest in this loan, then it had a fractional interest in the LSAs once Silar foreclosed

25   it.

In any case, there is personal jurisdiction over all Defendants via the nationwide service of process rules applicable in bankruptcy jurisdiction cases, *see* Fed. R. Bankr. P. 7004(f), and there is related-to bankruptcy jurisdiction in this case under 28 U.S.C. § 1334(b).  A federal court may consistent with due process summon any party present in the Unites States thereto for the determination of a matter implicating federal-question jurisdiction. *E.g.*, *Robertson v. Railroad Labor Board*, 268 U.S. 619, 622 (1925) ("Congress has power . . . to provide that the process of every District Court shall run into every part of the United States.").  The Blatt Movants also argue that the claims are not sufficiently pled.

### 1.    Federal RICO

Subsection (d) of 18 U.S.C. § 1962 makes it unlawful to conspire to violate any of subsections (a) through (c). *See* 18 U.S.C. § 1962(d).  Subsection (c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* § 1962(c).  A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity." *Id.* § 1961(5).  "[R]acketeering activity" includes any of a long list of federal offenses, including mail and wire fraud under 18 U.S.C. §§ 1341, 1343. *See id.* § 1961(1)(A).  An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See id.* § 1961(4).

Plaintiffs allege that the enterprise in this case consisted of all persons and entities involved in the wrongful servicing activity and that the predicate offenses consisted of mail and wire fraud, because the fraud was perpetrated using the U.S. mail, telephone, and facsimile communications with the direct lenders. (*See* Second Am. Compl. ¶¶ 166–73).  The Blatt Movants argue that the RICO claim is not pled with particularity under Rule 9(b).  The Court

disagrees.  First, Plaintiffs allege that Compass sent a letter to direct lenders through the U.S. mail dated March 7, 2007 that falsely represented the terms of Compass's deal with the borrower on the Standard Property loan by omitting information concerning a side-deal between Compass and the borrower to the detriment of Plaintiffs who, thinking they had all the information concerning the transaction, agreed to forego all accrued interest on the loan in exchange for full payment of the principal. (*See id.* ¶ 92).  Second, Plaintiffs allege that on March 23, 2007, Compass sent a letter to direct lenders through the U.S. mail that falsely represented an offer concerning the Fiesta Oak Valley Loan. (*See id.* ¶ 96).  Compass represented that a third party wanted to purchase the direct lenders' fractional interests in the loan for 91% of the unpaid principal, which offer represented only 32 cents on the dollar when interest due and owing was considered. (*See id.*).  The previous day, however, the borrower on the Fiesta Oak Valley loan had informed Compass that it intended to pay the loan back in full. (*See id.* ¶ 97).  An internal Compass email indicates that Compass knew it would be difficult to get the direct lenders to agree to the third-party offer if they knew the borrower was prepared to repay the loan in full, which is why they concealed this information in the letter to the direct lenders. (*See id.*). Compass, Mezei, and the third-party (Oakbridge) had obtained more than a 51% interest in the loan by early May 2007, which they sold at a substantial profit. (*See id.* ¶¶ 98–100).  Plaintiffs have sufficiently pled two predicate acts of mail fraud[1] and have made out a prima facie RICO case against the Blatt Movants.

### 2.    Nevada RICO

Nevada's RICO statute is similar to the federal statute. *See* Nev. Rev. Stat. § 207.350 *et seq.*  Plaintiffs allege the two predicate acts consisted of "[t]aking property from another under circumstances not amounting to robbery," "[e]mbezzlement of money or property valued at $250

---

[1]Plaintiffs plead several more similar predicate acts. (*See id.* ¶¶ 101–15).

1    or more," and "[o]btaining possession of money or property valued at $250 or more, or obtaining

2    a signature by means of false pretenses." *See id.* § 207.360(9), (25), (26).

3          The allegations make out these predicate acts.  Plaintiffs appear to allege generally that

4    Defendants stole directly from Plaintiffs' funds held in trust for the benefit of Plaintiffs, i.e.,

5    funds collected from borrowers that rightly belonged to Plaintiffs, but which Defendants

6    appropriated from themselves.  For example, they allege that Compass misapplied principal

7    payments made by the Palm Harbor and The Gardens borrowers to fees for itself. (*See* Second

8    Am. Compl. ¶ 150).  Compass then put the loans into default because there was not enough

9    remaining to pay the principal owed, which further damaged borrowers. (*See id.*).  It is this kind

10   of allegation that supported the conversion verdict in the USA Commercial Case.  The Court will

11   not dismiss this claim.

12         **3.     Elder Abuse**

13         Plaintiffs bring a claim for elder abuse under NRS section 41.1395 for losses incurred by

14   those Plaintiffs who were sixty years old or older at the time of the wrongdoing.  In the economic

15   context, the statute provides for double damages for certain abuse to certain persons. *See* Nev.

16   Rev. Stat. § 41.1395(1) ("[I]f an older person . . . suffers a . . . loss of money or property caused

17   by exploitation, the person who caused the . . . loss is liable to the older person . . . for two times

18   the actual damages incurred . . . .").  "Older person" is defined as a person sixty years old or

19   older. *Id.* § 41.1395(4)(d).  "Exploitation" is defined as follows:

20         "Exploitation" means any act taken by a person who has the trust and
21         confidence of an older person or a vulnerable person or any use of the power of
            attorney or guardianship of an older person or a vulnerable person to:

22         (1) Obtain control, through deception, intimidation or undue influence, over
            the money, assets or property of the older person or vulnerable person with
23         the intention of permanently depriving the older person or vulnerable person
            of the ownership, use, benefit or possession of that person's money, assets or
24         property; or

25         (2) Convert money, assets or property of the older person with the intention

1    of permanently depriving the older person or vulnerable person of the
2    ownership, use, benefit or possession of that person's money, assets or
     property.

3    *Id.* § 41.1395(4)(b)(1)–(2).  Plaintiffs argue that certain Defendants' use of certain direct lender

4    Plaintiffs' powers of attorney to service the loans constituted elder abuse under the statute.  The

5    USA Commercial Case jury found that Silar had converted certain Plaintiffs' money with respect

6    to certain loans based on the facts pled in the present complaint.  Compass had defaulted on

7    those claims.  Therefore, it appears the elder abuse claim is sufficiently pled as to those Plaintiffs

8    who were sixty years old or older at the time of the alleged wrongdoing.  The Court will require

9    Plaintiffs to amend to identify which Plaintiffs these are.

10         Defendants note that the Hon. Edward C. Reed of this District recently refused to apply

11   the elder abuse statute against an insurance company that withheld benefits from an older person.

12   There, the plaintiff did not claim the defendant misused any power of attorney but only that it

13   "had the trust and confidence" of the plaintiff under § 41.1395(4)(d)(1).  *See DeRuise v.*

14   *Progressive Cas. Ins. Co. Inc.*, No. 3:11-cv-00136-ECR-RAM, 2011 WL 3651297, at *2–3 (D.

15   Nev. Aug. 17, 2011) (Reed, J.).  Judge Reed did not accept that an insurance company has the

16   trust and confidence of an older person in the way the statute requires to maintain an exploitation

17   tort. *See id.* at *3.  Here, Plaintiffs allege the abuse of powers of attorney in connection to the

18   loan servicing activities that deprived Plaintiffs of their money.  However, Defendants also admit

19   that the Court has ruled, as Plaintiffs had argued in the USA Commercial Case, that Defendants

20   *had no valid powers of attorney*. (*See* Second Am. Compl. ¶ 66).  But the use of a purported

21   power of attorney that is invalid should itself qualify as exploitation under the statute, so long as

22   the wrongdoer is alleged to have converted or otherwise misused an elder person's money by use

23   of a document purporting to be a power of attorney.  The fact that the power of attorney was also

24   invalid under the law only aggravates such a claim.  The Court will dismiss this claim, with

25   leave to amend to identify those Plaintiffs who were of the requisite age at the time of the alleged

wrongdoing.

### 4.     Breach of Contract, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, and Conversion

Plaintiffs bring the breach claim against Compass and Silar; they bring the tortious bad faith and breach of fiduciary duty claims against Compass, Silar, and their principals; and they bring the conversion claim against all Defendants.  The Blatt Movants argue that the claim should be dismissed as against all movants except Compass Partners, LLC, which acquired the LSAs from the bankruptcy court, and Compass USA SPE, LLC, to whom Compass Partners, LLC assigned the servicing rights.  For the reasons noted above, there is personal jurisdiction over all movants, and movants have been sufficiently implicated in the loan servicing wrongdoing.

### 5.     Civil Conspiracy

Plaintiffs add no additional facts under the civil conspiracy claim but rely on the common allegations.  The allegations are sufficient against all movants.  The Blatt Movants argue that the alleged conspiracy is not pled with particularity under Rule 9(b) and that there is no allegation leading to a reasonable inference that they had knowledge of the object and purpose of the alleged conspiracy.

"An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989) (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 622 (Nev. 1983)). Plaintiffs have pled enough facts reasonably to infer that certain of the Blatt Movants engaged in concerted action intended to accomplish an unlawful objective, i.e., profiting from the LSAs in violation of their terms and other common law duties to Plaintiffs, to Plaintiffs' detriment. Certainly the Compass and Silar entities and their principals have been sufficiently implicated,

except for Compass USA Holding, LLC.  The question is whether Friedman or Repotex have been implicated under the SAC.  As a principal of Compass, Friedman is sufficiently implicated in the alleged conspiracy.  Repotex, however, is only alleged to have purchased a fractional interest in Silar's loan to Compass, which is not enough to implicate it in a conspiracy with respect to the servicing activities.  The Court will dismiss this claim as against Compass USA Holding, LLC, EEG, and Repotex, with leave to amend.

Finally, the Blatt Movants note that Plaintiffs' counsel added twenty-six Plaintiffs via their supplement without seeking leave to amend the SAC.  They ask the Court to strike these Plaintiffs, as well as the Plaintiffs added via the SAC itself, because Plaintiffs did not seek leave to amend the First Amended Complaint.  The Court will grant the motion in this regard.

**B.     The Mezei Motion**

Mezei and Cohen move to dismiss for failure to state a claim.  Both of these Defendants are alleged to have been principals of Compass. (*See* Second Am. Compl. ¶¶ 12, 15).  For this reason, the Court will not dismiss as against them.

**C.     The Lomazow Motion**

Lomazow notes that the SAC includes few factual allegations against him.  Plaintiffs allege that he "is a resident of the State of New York [who] served as legal counsel to Compass in connection with the Loans from 2007–2008." (*See* Second Am. Compl. ¶ 33).  They allege that "Compass's and Silar's wrongful loan servicing enterprise was assisted by the legal advice of Lomazow, who rendered erroneous legal opinions that purported to justify their misconduct." (*See id.* ¶ 84).  Plaintiffs base the federal and state RICO claims against Lomazow entirely upon these two allegations. (*See id.* ¶¶ 172, 183).

"[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  It is a question of fact whether a person, corporate attorney or not, exercises enough control over a

1  corporation to be implicated under § 1962(c). *See Ikuno v. Yip*, 912 F.2d 306, 310 (9th Cir. 1990)

2  ("[W]e hold that a finding of control under § 1962(b) is best determined by the circumstances of

3  each case and does not require formal control such as the holding of majority stock or actual

4  designation as an officer or director. Li was the incorporator of KLCL, negotiated a lease for it,

5  signed its corporate reports in a space designated for officers and directors of the corporation and

6  held himself out as the company's attorney. This evidence at least raises a genuine issue of

7  material fact as to whether Li possessed sufficient control over KLCL to be held liable under §

8  1962(b)." (citation omitted)).   In *Ikuno*, Li was the defendant corporation's attorney, but that

9  was not his only role. He was also its incorporator and a de facto corporate officer. *See id.* It

10  was for this reason that he was potentially liable. But the provision of legal advice, erroneous or

11  not, cannot alone form the basis of a RICO claim. *Baumer v. Pachel*, 8 F.3d 1341, 1344 (9th Cir.

12  1993) ("Pachl at no time held any formal position in the limited partnership. Nor did he play any

13  part in directing the affairs of the enterprise. Pachl's role was limited to providing legal services

14  to the limited partnership and EPA. Whether Pachl rendered his services well or poorly,

15  properly or improperly, is irrelevant to the *Reves* test. We are therefore compelled to conclude

16  that under the *Reves* 'operation or management' test the complaint fails to allege a § 1962(c)

17  cause of action as to Pachl."); *accord Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)

18  (citing *Reves*, 507 U.S. at 179) ("In sum, the pleadings show that Temple and her firm were part

19  of the enterprise but fail to show that she or her firm had 'some part in directing its affairs.' One

20  can be 'part' of an enterprise without having a role in its management and operation. Simply

21  performing services for the enterprise does not rise to the level of direction, whether one is

22  'inside' or 'outside.' Accordingly, neither reasonable inferences, nor triable issues, exist

23  sufficient to subject Temple or her firm to liability under § 1962(c)." (citation omitted)).

24       Here, Plaintiffs allege only that Lomazow was Compass' attorney. Lomazow is not

25  automatically immune from a Compass-related RICO claim simply because he was Compass'

1   attorney, but neither is he automatically implicated by that fact.  Plaintiffs must allege, and later

2   show, that he had a requisite degree of control over Compass' operation or management, and

3   they have not alleged this.  They allege only that he gave Compass incorrect legal advice, not

4   that he controlled Compass or was in any other way involved in Compass' activities.

5         Plaintiffs' thirty-five page response fails to address the *Reves* line of cases, but instead

6   marches a parade of horribles comprising Compass' underlying behavior past the Court, with the

7   comment "That's what ultimately resulted from Lomazow's legal advice." as the drum major.  In

8   other words, Plaintiffs assert the incorrect legal position that providing legal advice is sufficient,

9   without more, to implicate a defendant under § 1962(c).

10        Plaintiffs also argue that they reasonably believe discovery will reveal Lomazow's

11  complicity in Compass' wrongdoing.  But they have no basis for believing this today.  They

12  simply *hope* that discovery will reveal Lomazow's further complicity.  Plaintiffs misunderstand

13  the pleading regime.  Rule 8(a) was instituted in 1938, and the interpretation of that rule

14  governing during the latter half of the Twentieth Century required only that a plaintiff identify a

15  cognizable legal theory—a trivially low standard—in order to survive a motion to dismiss for

16  failure to state a claim and thereby force discovery.  *See Conley*, 355 U.S. at 47.  The Supreme

17  Court recently determined that a better interpretation of Rule 8(a) requires plaintiffs not only to

18  identify a viable legal theory, but also to allege facts which if true would support relief under the

19  theory.  *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  The standard is still

20  low, but the difference is critical.  As a simple example, under the old interpretation of Rule 8(a),

21  a plaintiff whom a defendant had verbally insulted could force discovery by simply alleging

22  "defendant assaulted plaintiff," but under the new rule such a plaintiff cannot proceed to

23  discovery.  Rather, he must allege "defendant intentionally shook his fist in plaintiff's face,

24  causing plaintiff to flinch," or something similar, to survive a motion to dismiss his assault

25  claim.  If he alleges "defendant insulted plaintiff by calling him a rude name" under the heading

1   of "assault," his case will be dismissed under Rule 12(b)(6) without discovery, because the new

2   pleading regime will have forced him to reveal the factual insufficiency of his claim before he

3   has had discovery.

4          So Plaintiffs' argument that discovery will produce enough information to permit them to

5   plead a prima facie case under Rule 8(a) is not helpful.  The current interpretation of Rule 8(a) is

6   specifically designed to prevent a plaintiff from imposing the costs of discovery onto a defendant

7   where the plaintiff cannot already plead sufficient facts to make out a prima facie case.  A

8   plaintiff need not provide evidence supporting those facts, but he must be able to allege them in

9   good faith.  The discovery rules are not a tool for would-be plaintiffs to compel would-be

10  defendants to cooperate with the former's pre-suit investigations of the latter so that they might

11  discover some basis to sue.  The Court dismisses the claims against Lomazow, with leave to

12  amend.

### CONCLUSION

14         IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 77, 116) are

15  GRANTED in part, with leave to amend, and DENIED in part.

16         IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 110) is GRANTED,

17  with leave to amend.

18         IT IS FURTHER ORDERED that the Supplement (ECF No. 42) is STRICKEN.

19  Plaintiffs must introduce any changes to the First Amended Complaint via an amendment.

20  Plaintiffs have fourteen (14) days from the date of this order to amend.

21         IT IS SO ORDERED.

22  Dated this 15th day of February, 2012.

23  _____

24                    ROBERT C. JONES
                      United States District Judge

25