1

LISA A. RASMUSSEN, ESQ.
Nevada Bar No. 007491
LAW OFFICE OF LISA RASMUSSEN
601 South 10th Street, Suite 100
Las Vegas, NV 89101
Telephone: (702) 471-1436
Facsimile: (702) 489-6619
Lisa@LRasmussenLaw.com

WILLIAM A. BREWER III, ESQ.
Texas State Bar No. 02967035
*Admitted Pro Hac Vice*
MICHAEL J. COLLINS, ESQ.
Texas State Bar No. 00785495
*Admitted Pro Hac Vice*
ROBERT M. MILLIMET, ESQ.
Texas State Bar No. 24025538
*Admitted Pro Hac Vice*
BREWER, ATTORNEYS &
COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015
Email: wab@brewerattorneys.com
        mjc@brewerattorneys.com
        rrm@brewerattorneys.com

Attorneys for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

## UNITED STATES DISTRICT COURT

17

### District of Nevada

18

| | |
|---|---|
| LEONARD C. ADAMS, et al., | ) Case No. 3:11-cv-00210-RCJ-VPC |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **AGREED ORDER APPROVING** |
| | ) **SETTLEMENT AGREEMENT** |
| COMPASS PARTNERS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

19

20

21

22

23

24

25        On July 9, 2018, the Court held a hearing with respect to Plaintiffs' Request for a Hearing to

26 Approve Settlement Agreement (the "Motion") [Docket No. 265].  The Court has considered and

27 relied upon the declarations that were submitted with the Motion, the Joinders filed by the Compass

28 Defendants (as defined below) [Docket No. 271] and the Kehl Family Members and John L.

Anderson, Trustee of the Charles B. Anderson and Rita B. Anderson Trust [Docket No. 269], the argument of counsel, and the agreement of the parties as expressed in this Order itself (which is agreed to by the settling parties as to form and content). Based on the foregoing, the Court approves the parties' Settlement (as defined below).

## I.

## INTRODUCTION

1.     The settlement agreement which is the subject of the Motion (the "Settlement") resolves the Causes of Action (as defined below) being asserted by almost all plaintiffs (the "Settling Plaintiffs") in this action (the "210 Case") against the "Compass Defendants" and Mark Olson. The Court has previously dismissed all other defendants [Docket Nos. 124, 143, 173, 174, 197, 218].

2.     The Settlement also resolves the appeal taken to the United States Court of Appeals for the Ninth Circuit by certain Compass Defendants in connection with the related action styled *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.*, Case No. 2:07-cv-00892-RCJ-GWF (the "892 Case").

3.     The "Compass Defendants" means, jointly and severally:  Compass Partners LLC, a Delaware limited liability company; Compass USA SPE, LLC, a Delaware limited liability company; Compass Financial Partners, LLC, a Nevada limited liability company; Compass Financial Partners, LLC, a Delaware limited liability company; Compass FP Corp., a Delaware corporation; Compass USA Holding, LLC, a Delaware limited liability company; Compass USA, LP, a Delaware limited partnership; Compass USA GP, LLC, a Delaware limited liability company; Repotex, Inc., a Delaware corporation; Leonard Mezei; Economic Growth Group, Inc., a New York corporation; Jay Cohen; Ron Friedman; and David Blatt.

4.     Except with respect to the resolution and dismissal with prejudice of the Settling Plaintiffs' Causes of Action against the Compass Defendants and Mark Olson, the Settlement does

not alter, amend, modify, or otherwise affect the Court's Agreed Order Regarding Settlement and Related Relief [BK-S-09-32824-RCJ No. 1915].

## II.

### THE SETTLEMENT IS APPROVED AS FAIR AND REASONABLE

5.     As set forth in more detail below and throughout this Order, the Court finds that the Settlement is fair, reasonable, and adequate, has been reached in good faith by the parties under all potentially-applicable standards (whether under federal law or the law(s) of Nevada, California, Florida, New York, or some other state), and good cause exists for granting the Motion and approving the Settlement.

## III.

### THE SETTLING PLAINTIFFS

6.     The 210 Case involves 934 individual plaintiffs, whose Causes of Actions against the Compass Defendants and Mark Olson are based on vesting positions totaling $187,347,608.10 UPB in the "USACM Loans," which were represented to be fully-secured, short-term commercial real estate loans to independent borrowers and guarantors that were originated by USA Commercial Mortgage Company and its affiliates ("USACM") for the benefit of thousands of persons across the United States ("Direct Lenders") who invested hundreds of millions of dollars to acquire fractionalized "direct lender" beneficial interests ("DL Interests") in the USACM Loans.

7.     The Settling Plaintiffs are 851 individuals, with vesting positions in the USACM Loans totaling $177,759,447.19.  The Settling Plaintiffs include almost 95% (vesting positions) of the plaintiffs in the 210 Case.  In addition, all the plaintiffs (vesting positions) in the 892 Case have approved the Settlement.  The identity of the Settling Plaintiffs has been provided to the Compass Defendants.

8.      The remaining plaintiffs in the 210 Case either have returned a vote against the Settlement (the "Non-Settling Plaintiffs"), or have failed to return a vote for or against the Settlement (the "Non-Voting Plaintiffs").

9.      The Non-Settling Plaintiffs are 5 individuals, with vesting positions in the USACM Loans totaling $362,891.35 UPB in the USACM Loans.  The Non-Settling Plaintiffs constitute approximately 0.2% (vesting positions) of the plaintiffs in the 210 Case.  The identity of the Non-Settling Plaintiffs has been provided to the Compass Defendants.

10.     The Non-Voting Plaintiffs are 78 individuals, with vesting positions in the USACM Loans totaling $9,225,269.56 UPB in the USACM Loans.  The Non-Voting Plaintiffs constitute approximately 5% (vesting positions) of the plaintiffs in the 210 Case.  The identity of the Non-Voting Plaintiffs has been provided to the Compass Defendants.

11.     The Court has reviewed the declarations submitted in connection with the Motion, which attest that there were direct written communications about the Settlement with all plaintiffs in the 892 and 210 Cases, that there were several telephonic conference calls for all those plaintiffs to ask questions and receive answers directly from their lawyers about the Settlement, that all those plaintiffs were asked to return a vote for or against approval of the Settlement, and that the voting process resulted in the identification of the Settling, Non-Settling, and Non-Voting Plaintiffs.

12.     Based upon the foregoing, as well as the representations of plaintiffs' attorneys at the hearing on the Motion, the Court:   (a) finds that each of the Settling Plaintiffs has provided individualized, informed consent to the Settlement; (b) concludes that the Qualified Settlement Trust (the "QST") is authorized to receive in trust for the Settling Plaintiffs all the cash to be paid to the Settling Plaintiffs under the Settlement; and (c) declares that Brewer is authorized to execute releases of claims and other documents to otherwise close and implement the Settlement on behalf of each and all of the Settling Plaintiffs.  Other than making the Assignments (as defined below) of cash and other assets to the QST in trust for the Settling Plaintiffs pursuant to this Order, the Compass

Defendants and their counsel shall have not have any direct or indirect responsibility, duty, obligation, or liability whatsoever to any Settling Plaintiffs or any other person or entity relating to or arising out of such Assignments.

13.     With respect to the Non-Settling and Non-Voting Plaintiffs, any of those plaintiffs who vote to approve the Settlement after the filing of the Motion but prior to the Effective Date of the Settlement (as defined below) shall be deemed automatically a "Settling Plaintiff" under this Order and be entitled to participate in and receive their *pro rata* interest in the Settlement.

14.     Attorneys for the Settling Plaintiffs shall promptly serve a copy of this Order on all Non-Settling and Non-Voting Plaintiffs, and remind those plaintiffs that, if they desire to continue to pursue their Causes of Action against the Compass Defendants and Mark Olson, they must appear through new counsel or in *pro per* at the status conference currently set to occur at the Bruce R. Thompson Federal Courthouse, Courtroom 3, 400 S. Virginia Street, Reno, Nevada, 85901, on August 7, 2018, at 10:00 a.m.

## IV.

## THE "EFFECTIVE DATE" OF THE SETTLEMENT

15.     This Order and the documents to be executed to implement the Settlement set forth all the material terms and conditions of the Settlement (the "Terms"). Each of the Payment (as defined below), the releases, the Assignments, and all other Terms to be exchanged in the Settlement are a material, mutually-concurrent part of an integrated, non-severable package which must be concurrently exchanged in order for any person or entity to be obligated to close the Settlement. If one or more of the Terms (including without limitation those specified in the foregoing sentence) are not implemented or cannot be obtained, then there is no Settlement.

16.     The "Effective Date" for the closing of the Settlement shall be the later of the date of: (a) Final Approval (as defined below); and (b) the concurrent exchange of all of the Terms (including without limitation the making of the Payment by the Compass Defendants under Section

V below).  This Order is intended to and does represent a final, appealable disposition with respect to all relief granted in the Order.  To the extent this Order refers to the "deemed automatic entry" of other orders or documents (such as, for example, dismissals or transfers), the entry of such other orders is intended to be ministerial only to further implement the Settlement Terms which are approved and delineated in detail throughout this Order.  It is also anticipated that the settling parties may enter into one or more instruments further confirming the terms of this Order (such as, for example, releases or assignment documents).  However, it is intended that this Order shall be sufficient to effectuate such releases and assignments or other matters either as a matter of contract (because the Order is agreed to by the settling parties), or as a matter of law through the power of the Court, or both.

17.  Notwithstanding the foregoing, no person or entity shall be under an obligation to close or implement the Settlement until Final Approval has been received and all the Terms of the Settlement can be concurrently exchanged.  "Final Approval" means the entry of a final, non-appealed, and non-appealable order approving the Settlement.  If there has been a timely appeal or appeals from or relating to this Order, "Final Approval" means the entry of a final, non-appealed, and non-appealable order of the United States Court of Appeals for the Ninth Circuit or the United States Supreme Court (as the case may be) which approves this Order.  If there is an appeal from this Order approving the Settlement (or from an appeal or other appellate court proceeding from that appeal), each of the Compass Defendants and the Settling Plaintiffs (but each only as a group) retains the right, at their sole and absolute discretion, not to close the Settlement if any such appeal(s) or other appellate proceeding(s) could affect one or more of the benefits to be received by that party from the Settlement (including without limitation a final disposition of all claims made or unmade).  Notwithstanding the foregoing, however, the Settling Plaintiffs and the Compass Defendants shall use their best efforts and cooperate to close the Settlement despite any such appeal(s).

Case 3:11-cv-00210-RCJ-VPC   Document 274   Filed 07/24/18   Page 7 of 18

18.     In the event of any such appeal(s), each of the Compass Defendants and the Settling Plaintiffs (but each only as a group) shall have fourteen (14) calendar days from the date of each notice of appeal to provide written notice to the other that they are exercising their right not to close the Settlement. In that event, the parties may immediately seek any hearing dates and the entry of any Court orders that are appropriate in the 210 Case.

19.     Upon the Effective Date, the Settling Plaintiffs' Causes of Action against the Compass Defendants and Mark Olson in the 210 Case shall be deemed automatically to be dismissed with prejudice.

20.     Upon the Effective Date, the appeal taken to the United States Court of Appeals for the Ninth Circuit from the 892 Case (which is currently administratively closed without prejudice) shall be deemed automatically to be dismissed with prejudice. The Settling Parties that are parties to the 892 Case shall file any other documents with the Ninth Circuit that are necessary to effectuate dismissal with prejudice. Further, the Settling Parties and those Compass Defendants that are parties to the 892 Case shall be deemed automatically to have sought the vacatur of the judgment entered in the 892 Case against those Compass Defendants. The Compass Defendants that are parties to the 892 Case may file a motion in the appropriate court seeking to vacate the judgment entered in the 892 Case as to them. If the applicable court declines to vacate some or all of the judgment, the Settling Plaintiffs who obtained a judgment against those Compass Defendants in the 892 Case shall promptly file a Notice of Satisfaction of Judgment with the appropriate court.

## V.

## CASH PAYMENTS BY THE COMPASS DEFENDANTS

21.     As soon as practicable and no later than five business days after the later of Final Approval and only upon the concurrent exchange contemplated on the Effective Date, the Compass Defendants shall pay $750,000.00 (the "Payment") to the QST in immediately-available funds for the benefit of the Settling Plaintiffs.

22. Pursuant to the Protective Advance Loans (as defined and discussed further below) to be made by the Lender (as defined below), the Compass Defendants shall earn a 10% origination fee in connection with the Protective Advance Loans. The 10% origination fee shall be held back by the Lender at the outset of the Protective Advance Loans, and shall be contributed to the QST upon the full payoff of the Protective Advance Loans. In the event of a default on one or more advances under the Protective Advance Loans, the Compass Defendants shall contribute to the QST the $300,000 less any amounts not required to satisfy any such default(s). The maximum potential contribution of cash (in addition to the Payment) to be made by the Compass Defendants to the Settling Plaintiffs pursuant to the Settlement based on the 10% origination fee is $300,000. No interest shall accrue on that origination fee.

## VI.

## ASSIGNMENTS OF DL INTERESTS AND CLAIMS

23. As of the Effective Date, the Compass Defendants shall be deemed automatically to have transferred to the QST in trust for the Settling Plaintiffs, without representations or warranties on a "quitclaim basis," the beneficial ownership of any direct lender interests originally purchased and still retained by one or more Compass Defendants.

24. As of the Effective Date, the Compass Defendants shall be deemed automatically to have transferred to the QST in trust for the Settling Plaintiffs, without representations or warranties on a "quitclaim basis," all the Compass Defendants' claims, rights, and interests in (but not any liabilities in connection with) the bankruptcy estates of Asset Resolution LLC and its co-debtors. The Compass Defendants make no representations or warranties regarding the extent, if any, of their claims, rights, and interests in those bankruptcy estates, or the value of any such claims, rights, and interests.

25. As of the Effective Date, the Compass Defendants shall be deemed automatically to have transferred to the QST in trust for the Settling Plaintiffs, without representations or warranties

on a "quitclaim basis," all the Compass Defendants' claims against professionals arising out of the purchase of assets from the bankruptcy estates of USACM and the servicing of the USACM Loans and related collateral. The Compass Defendants make no representations or warranties regarding the extent, if any, such claims exist, or the value of any such claims.

### VII.

### THE THREE MILLION DOLLAR LOAN FACILITY

26.   As part of the Settlement, the Compass Defendants or their designee(s) (the "Lender") have agreed to make one or more secured loans through one or more advances (jointly and severally, the "Protective Advance Loans") for the purposes of preserving or protecting the USACM Loans and/or the related collateral (including without limitation funding tax protests and paying property tax liabilities), as set forth more fully in this Order.

27.   The settling parties have agreed that the total amount of Protective Advance Loans will not exceed $3 million, this maximum amount will be reduced by each Protective Advance Loan which is made, and the Direct Lenders must make all demands for advances under the Protective Advance Loans within 18 months of the closing of the Settlement. Each Protective Advance Loan shall be subject to Court approval on motion, shall be for the benefit of a specific USACM Loan and/or related collateral, and must be approved by the holders of 51% or more of the DL Interests in the applicable USACM Loan and/or related collateral. A Protective Advance Loan shall be made as a "super-priority" first lien loan to either one or more real estate investment trusts, limited partnerships, limited liability companies, or other legal entities formed by the Direct Lenders (jointly and severally, the "Investment Vehicle"). The Protective Advance Loans will be non-recourse to the Direct Lenders, and will be subject to supervision by the Court at all stages of the process.

28.   The specific terms and conditions of each advance made as part of the Protective Advance Loans will be negotiated and entered into by separate mutual agreement(s), which shall contain the provisions set forth below, as well as terms, representations, and warranties customary in

such loan facility agreements.   The parties to the advances will cooperate in the negotiation, formation, and execution of the mutual agreement(s), and the Lender will make the advances as early as such mutual agreement(s) can be finalized.  Each Protective Advance Loan will include at least the following terms and conditions, unless the Lender agrees to more favorable terms to the Direct Lenders (such as, for example, lending up to a higher loan-to-value ratio) in its sole and absolute discretion:

   A. The Protective Advance Loans shall be secured by the assets owned by or pledged to the Investment Vehicle and/or by the USACM Loan and/or the related collateral;

   B. Interest on the Protective Advance Loans will accrue as simple interest at the rate of eight and one-half (8.5%) percent per annum and, together with principal, shall be due no later than three years from the date of the advance(s).  Notwithstanding the foregoing, the due date of the repayment of an advance under the Protective Advance Loans can be extended on terms that are mutually agreeable to the parties to such advance.  The interest shall be funded by withholding the entire three-year term of calculated interest from the principal balance of the amount borrowed for each advance under the Protective Advance Loans.  As a result, there will be no obligation to make an affirmative payment of interest (unless upon default) to the Lender during the three-year term for repayment of each advance under the Protective Advance Loans.  Instead, at the time funds are borrowed by the Direct Lenders, the full amount of interest due for the three-year term of each advance under the Protective Advance Loans shall be calculated and held back by the Lender from the amount borrowed;

   C. The Protective Advance Loans shall have a maximum of 30 percent loan-to-value ratio and other reasonable credit requirements and security terms which would be required by third parties at arms-length for similar loans;

   D. The advances made pursuant to the Protective Advance Loans shall be secured by a first priority perfected security interest (the "Lien") against the assets of the Investment

Vehicle and/or the USACM Loan and/or the related collateral. The Lien shall be approved by the Court, in a form recordable in the state in which the Investment Vehicle is registered, formed, or otherwise present, and/or in those states in which the collateral securing the USACM Loans are located;

E.      At the time of repayment of each advance under the Protective Advance Loans, the amount required to repay that advance in full shall be paid directly to the Lender from only the proceeds received from the disposition of the assets of the Investment Vehicle and/or the USACM Loan and/or the related collateral that received some of the Protective Advance Loans. Each advance under the Protective Advance Loans shall be repaid at the top of the waterfall from such proceeds, and the total principal amount repaid on each advance under the Protective Advance Loans shall always be equal to 90% (unless there is default interest and other fees and expenses, which default interest and other fees and expenses shall be reasonable, customary and consistent with loans and financings of this kind and size as mutually agreed upon by the parties) of the total amount of that advance with the balance representing the 10% origination fee, which shall be paid directly by the Lender to the QST upon the full payoff of the Protective Advance Loans.  In the event of early repayment, the Direct Lenders may hold back from the final payment(s) on the Protective Advance Loans any amounts necessary to adjust for unearned interest which was held back by the Lender from the amount borrowed.  The amount of the monthly interest payment will be calculated as the full amount of the three-year interest reserve divided by 36 months.

F.      All reasonable expenses of the Lender in connection with the Protective Advance Loans shall be paid from the proceeds of the Protective Advance Loans; and

G.      A default on any advance on the Protective Advance Loans shall not affect, and in no event shall excuse, the Lender's obligation to make additional advances on the Protective Advance Loans.

29.     Notwithstanding anything to the contrary, the Compass Defendants may provide assistance with respect to the Settling Plaintiffs' efforts to structure the Investment Vehicle, but the Settling Plaintiffs shall ultimately rely solely and exclusively upon the advice of their own professionals in doing so and the Compass Defendants shall have no role whatsoever in the final decisions and/or in the structuring, underwriting, proposing, offering, and/or issuing of any securities relating thereto.

30.     The Court shall retain *in rem* jurisdiction to hear and rule upon motions concerning the Protective Advance Loans.

## VIII.

## CONCURRENT MUTUAL RELEASES

31.     Upon and as of the Effective Date and subject to the limitations set forth in this section VIII, the Settling Plaintiffs in the 892 and 210 Cases, for themselves, their legal counsel (Brewer, Attorneys & Counselors, the Law Office of Lisa Rasmussen, Kaempfer Crowell, and Lipson, Neilson, Cole, Seltzer & Garin, P.C.), and the QST, on the one hand, and the Compass Defendants, for themselves and their legal counsel (Laxalt & Nomura), on the other, shall be deemed automatically to have acquitted, released, forgiven, cancelled, waived, and forever discharged each other jointly and severally from any and all Causes of Action held by them against the others which directly or indirectly arise in whole or in part out of:  (a) one or more acts or omissions by the released Person (as defined below) or their Affiliates (as defined below) from the beginning of time up to and including the Effective Date; and/or (b) one or more acts or omissions by any Person from the beginning of time up to and including the Effective Date for whose acts or omissions the released Person or their Affiliates could be held subject to liability.  Notwithstanding anything to the contrary, no Person shall be deemed released unless they are also deemed to have provided a release. This provision is referred to herein as the "Release."

32.    "Person" means a natural person, corporation, limited liability company, partnership, limited partnership, trust, estate, or any other legally-recognized entity.  Each of the Persons providing the foregoing mutual Releases shall be deemed to have expressly waived the provisions, rights and benefits of California Civil Code § 1542 or any similar provision in any other jurisdiction. Each of the Persons providing the foregoing Releases shall be deemed to have  represented and warranted  that the releasing Person owns the Causes of Action which are the subject of their Release, has not transferred, pledged, or assigned such Causes of Action in whole or in part, and has authority to deliver the Release.

33.    "Affiliates" means, jointly and severally, all present and former officers, directors, employees, managers, principals, agents, sub-agents, partners, general partners, limited partners, members, investors, parent companies, owners, subsidiaries, stockholders, representatives, trusts, estates, heirs, executors, assigns, successors, predecessors, insurers, or shareholders of the person or entity subject to the release (the "Affiliated Person"), any and all entities that are or were at any point managed by the Affiliated Person, any entity in which the Affiliated Person has a majority or controlling beneficial or legal interest, and any person or entity whose acts or omissions would render the Affiliated Person liable under principles of *respondeat superior*, principal/agent, aiding and abetting, piercing the veil, disregard of corporate form, conspiracy, joint venture, or any other legal, equitable, statutory, regulatory, or other principle of vicarious or secondary liability.

34.    Notwithstanding anything to the contrary, the foregoing Releases do not and shall not be deemed to acquit, release, forgive, cancel, waive, or discharge any Causes of Action against any Persons who are not a party to the Settlement, including the Non-Settling Plaintiffs, the Non-Voting Plaintiffs, Mark Olson, and the other defendants who were previously dismissed from the 210 Case.

35.    For the purposes of this Order, "Causes of Action" means:

A.    All claims, counterclaims, cross-claims, and/or third-party claims, suits, complaints, charges, requests of charges, questionnaires, defenses, referrals, reports, notices, causes

of action, demands, rights, debts, liens, liabilities, obligations, damages, offsets, reimbursements, indemnification, contribution, expenses, compensation, attorneys' fees, loss, detriment, or controversies or any other remedies or relief of any character whatsoever (whether known or unknown, whether now existing or hereafter arising, whether asserted or un-asserted, whether accrued or un-accrued in the assigning or releasing Persons' favor, and whether or not the subject of a tolling agreement) at law, in equity, under statute, regulation, rule, decree, order, judgment, contract, agreement, status or relationship, or any source of duty or obligation of any kind whatsoever.

B. "Causes of Action" also includes, by way of example and not by way of limitation, claims for violations of federal or state racketeering statutes, breaches of the LSAs, liability arising out of the purchase of assets from USACM, violations of the Preliminary Injunction entered in the 892 Case, contempt, sanctions, violations of Nevada or other state statutes or regulations, elder abuse, conspiracy, violations of any criminal statutes or regulations, treble damages, punitive damages, fraudulent inducement, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, constructive fraud, fraud, conspiracy, concert of action, contempt, servicing misconduct, accounting, *respondeat superior*, aiding and abetting, indemnity, contribution, co-venturer liability, accounting, audit, award, conversion, exemplary damages, misappropriation, fraudulent transfers, fraudulent conveyances, negligence, malpractice, gross negligence, reckless misconduct, servicer misconduct, tortious interference, implied or express warranty, intentional misrepresentation, negligent misrepresentation, impairment or damage to collateral, statutory misrepresentation, promissory estoppel, trespass, receipt of property through false pretenses, breach of partnership agreement(s), breach of trust, piercing the veil and/or other forms of disregarding the separateness of a corporation or other entity, joint venture, partnership, trust, libel, slander, defamation, bankruptcy claim or proof of claim, claims under the United States Bankruptcy Code, Preference Claims, breaches or contempt of any order, preliminary injunction, or permanent

injunction, and/or any claim under any other federal or state statute, regulation, rule, or law, or authority.

C. "Causes of Action" also includes by way of example and not limitation, claims, rights, or causes of action that the releasing or Assigning Person might not now know or expect to exist in their respective favor as of the Effective Date, even if knowledge of such might have otherwise materially affected the granting of the Assignment or the Release, and even if the Person may later discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Assigned or Released claims, rights, or causes of action, and even if the Assigned or Released claims, rights, or causes of action come into existence in the future from any act or omission through the Effective Date.

36. In addition to the foregoing Releases, as of the Effective Date, the Compass Defendants shall be deemed automatically to have released, on a "quitclaim basis," all rights and interests they may have in the recovery of base servicing fees, servicer advances, and any other servicing charges or fees arising from or in connection with the USACM Loans from the accounts of the Settling Plaintiffs. The Compass Defendants make no representations or warranties regarding the extent, if any, of their rights and interests in the recovery of such base servicing fees, servicer advances, and any other servicing charges or fees, or the value of any such rights and interests.

## IX.

### WITHDRAWAL OF COUNSEL

37. As of the Effective Date, Brewer, Attorneys & Counselors, the Law Office of Lisa Rasmussen, and all their attorneys, other professionals, and other employees are granted permission to withdraw as counsel of record in the 210 Case for the Non-Settling and Non-Voting Plaintiffs. The Court finds that good cause exists for such withdrawal.

38. As of the Effective Date, Brewer, Attorneys & Counselors, the Law Office of Lisa Rasmussen, and all their attorneys, other professionals, and other employees shall have no

continuing obligations or duties to the Non-Settling and Non-Voting Plaintiffs in connection with the 210 Case. Those Non-Settling Plaintiffs and Non-Voting Plaintiffs shall owe no future payment obligations to Brewer, Attorneys & Counselors or the Law Office of Lisa Rasmussen in connection with the 210 Case pursuant to their current engagement agreements, but remain obligated to pay any and all amounts accrued but not yet paid as of the Effective Date.

## X.

## MISCELLANEOUS

39. The Court acknowledges that the Compass Defendants and the Settling Plaintiffs (jointly and severally, the "Parties") have made the following representations, warranties, and agreements to or with each other, that such representations, warranties, and agreements shall survive the closing of the Settlement and all other performances under this Order, and hereby adopts as part of this Order the following:

A. The Settling Plaintiffs acknowledge that they have asserted contested Causes of Action against the Compass Defendants that are uncertain as to both liability and amount and that could be subject to various potential outcomes. The Parties have agreed to enter into the Settlement in order to put to rest all controversy and to avoid further expense and burdensome, protracted, and costly litigation in connection with the 892 and 210 Cases, without in any way acknowledging any fault or liability. The Compass Defendants have denied and continue to deny all charges of wrongdoing or liability whatsoever asserted or which could have been asserted against them.

B. Notwithstanding anything to the contrary stated therein, nothing in this Order is intended to preclude any Party from suing another Party for breach of the Settlement or violation of this Order.

C. The Parties shall execute and deliver all such documents and to take all such further actions as may be reasonably necessary from time to time to carry out the intent and purpose of the Settlement and to consummate the transactions contemplated in this Order.

D.     Any and all Causes of Action or controversies arising under or relating to the Settlement or this Order, including without limitation a failure to close, whether arising in contract or tort or by statute or otherwise, shall initially be submitted to non-binding mediation before the Hon. Gregg W. Zive or another mediator mutually-agreeable to the Persons engaged in the dispute and, if mediation is unsuccessful, shall be litigated exclusively in this Court (Jones, J.) and, if such Court no longer has jurisdiction, then in any court of competent jurisdiction.

E.     This Order confirms and implements the Settlement submitted to the Court in connection with the Motion.  Each Party has contributed to the drafting of this Order and to any instruments executed in connection with the closing of the Settlement under this Order (jointly and severally, the "Instruments of Closing").  The language used in this Order and any Instruments of Closing shall be deemed to be the language mutually chosen by the Parties to express their intent, and no rule of strict construction shall be applied against any Party.  The Parties have been represented by their own counsel in connection with the negotiation and execution of this Order and the Instruments of Closing, they have received legal advice concerning the terms and conditions of the Settlement and this Order, they fully understand all of the terms and provisions of the Settlement, and they executed the Settlement freely, of their own will, and without any duress of any kind.

F.     This Order, the Settlement, and the Instruments of Closing contain the entire agreement among the Parties and supersede all negotiations, understandings, representations, statements, or agreements with respect to the subject matter hereof.  Such prior negotiations, understandings, representations, statements, or agreements are terminated and are not being and may not be relied upon by any Party.

G.     The Parties reserve the right to seek Court approval to supplement or amend this Order and the Court reserves jurisdiction to do so to the fullest extent permitted by law.

1   Dated: July 24, 2018

2

3                                                        Hon. Robert G. Jones
                                                         United States District Judge

4

5   Agreed as to form and content:

6   Dated: July 23, 2018

7

8   /s/ Robert M. Millimet

9   Michael J. Collins                    Daniel T. Hayward
    Robert M. Millimet                    LAXALT & NOMURA, LTD.
10  BREWER ATTORNEYS & COUNSELORS         9790 Gateway Drive, Suite 200
    1717 Main Street, Suite 5900          Reno, Nevada  89521
11  Dallas, Texas  75201                  Telephone:  (775) 322-1170
12  Telephone: (214) 653-4000             *Attorneys for the Compass Defendants*
    *Attorneys for Plaintiffs*

13

14  Lisa Rasmussen
    LAW OFFICE OF LISA RASMUSSEN
15  601 South 10th Street
    Suite 100
16  Las Vegas, Nevada  89101
    Telephone:  (702) 471-1436
17  *Attorneys for Plaintiffs (except Daniel Newman)*

18  David Clark
    LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
19  9900 Covington Cross Drive
    Suite 120
20  Las Vegas, Nevada  89144
21  Telephone:  (702) 382-5000
    *Attorneys for Plaintiff Daniel Newman*

22

23  Janet L. Chubb, Esq.
    KAEMPFER CROWELL
24  50 West Liberty Street
    Suite 900
25  Reno, Nevada  89501
    Telephone: (702) 398-4740
26  *Attorneys for Certain Plaintiffs in 892 Case*

27

28